Kirk Dillman (SBN 110486)
kdillman@mckoolsmithhennigan.com
M. Storm Byrd (SBN 319387)
sbyrd@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Nicholas T. Matich (to be admitted *pro hac vice*)
nmatich@mckoolsmith.com
MCKOOL SMITH P.C.
1999 K Street, NW, Suite 600
Washington, DC 20006

Mark Lanier (to be admitted *pro hac vice*)
wml@lanierlawfirm.com
Alex J. Brown (to be admitted *pro hac vice*)
alex.brown@lanierlawfirm.com
Zeke DeRose III (to be admitted *pro hac vice*)
THE LANIER LAW FIRM
6810 FM 1960 West
Houston, TX 77069

*Attorneys for Plaintiff*
*The Real USFL, LLC*

*Additional counsel on the inside page*

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REAL USFL, LLC, a New York limited liability company,<br><br>       Plaintiff,<br><br> v.<br><br>FOX SPORTS, INC, a Delaware corporation; THE SPRING LEAGUE, LLC, a Delaware limited liability company; USFL ENTERPRISES, LLC, a Delaware limited liability company,<br><br>       Defendants. | Case No. 2:22-cv-1350-SK<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  March 16, 2022<br>Time:  10:00 a.m.<br>Crtrm:  540<br>The Honorable Steve Kim<br>Trial Date: not set |

Joseph O. Slovacek (to be admitted *pro hac vice*)
slovacek@hooverslovacek.com
Hoover Slovacek LLP
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, TX 77056

Eric B. Halper (to be admitted *pro hac vice*)
ehalper@mckooolsmith.com
John C. Briody (to be admitted *pro hac vice*)
jbriody@mckoolsmith.com
Radu A. Lelutiu (to be admitted *pro hac vice*)
rlelutiu@mckoolsmithlcom.com
Laura Baron (to be admitted *pro hac vice*)
lbaron@mckoolsmith.com
MCKOOL SMITH P.C.
395 Ninth Avenue
New York, NY 10001

Thomas J. Eisweirth (to be admitted *pro hac vice*)
teisweirth@mckoolsmith.com
MCKOOL SMITH P.C.
600 Travis Street
Suite 7000
Houston, TX 77002

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 16, 2022, at 10:00 a.m. in Courtroom 540 of the above-entitled Court, located at 255 East Temple Street, 5th Floor, Los Angeles, California 90012, the Honorable Steve Kim presiding, plaintiff The Real USFL, LLC ("Real USFL") will and hereby moves for a Preliminary Injunction and related relief pursuant to Federal Rules of Civil Procedure Rule 65 against defendants Fox Sports, Inc., The Spring League, LLC, and USFL Enterprises, LLC (collectively, "Defendants") restraining and enjoining Defendants, their agents, servants, employees and attorneys, and all those in active concert or participation with them, pending the entry of final judgment in this action, from:

1. Registering, owning, leasing, selling, trafficking or using the name or words "United States Football League," "USFL," or other marks listed in Exhibit 1 to the Declaration of Kirk D. Dillman (collectively, "USFL IP"), in whole or in part, however spelled, whether capitalized, abbreviated, singular or plural, printed or stylized, whether used alone or in conjunction with any word or words, and whether used in caption, text, orally, or otherwise, or any derivative thereof, or any mark or logo which is confusingly similar to the USFL IP in connection with any business, product marketing campaign or Internet domain name, including the infringing websites www.theusfl.com, or as a trademark, trade name, logo, or service mark;

2. Infringing the USFL IP or otherwise unfairly competing with the Real USFL;

3. Using, reproducing, advertising or promoting any slogan, mark, or name that may be calculated to represent that the products or services of Defendants or any other person are sponsored by, authorized by, or in

some way associated with the Real USFL;

4. Using or reproducing any word, term, name, or symbol, or any combination thereof, on any product or in connection with any service that confuses or falsely represents or misleads, is calculated to confuse, falsely represent, or mislead, or that has the effect of confusing, falsely representing, or misleading, that the products, services, or activities of Defendants or another are in some way connected with the Real USFL, or are sponsored, approved, or licensed by the Real USFL;

5. Inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts;

6. Passing off to the public that Defendants' businesses, goods, or services are those of or authorized by the Real USFL; and

7. Engaging in any other conduct that will cause, or is likely to cause confusion, mistake, deception, or misunderstanding as to the affiliation, connection, or association or origin, sponsorship, or approval of their businesses, goods, or services with or by the Real USFL, or that is likely to dilute the connection between the Real USFL and the USFL IP.

This motion is made on the grounds that immediate and irreparable injury will result to the Real USFL unless and until the activities described above are enjoined pending trial of this action, that the Real USFL has no adequate or reasonable remedy at law, the balance of equities highly favors the Real USFL, and that maintaining the status quo creates no prejudice or other harm to Defendants.

This motion is made based on this Notice of Motion and Motion for Preliminary Injunction, the accompanying Memorandum of Points and Authorities, the declarations of Kirk D. Dillman, Steve Ehrhart, David E. Brown, Paul Reeths, and Ken Dunek, and, the proposed order submitted herewith, the argument of counsel and such other and further argument, evidence and documents as may be

presented at the hearing of this motion.

Dated: March 2, 2022        **MCKOOL SMITH HENNIGAN, P.C.**

By:   */s/ Kirk D. Dillman*
       Kirk D. Dillman
       *Attorneys for Plaintiff The Real*
       *USFL, LLC*

1

# TABLE OF CONTENTS

2

**Page(s)**

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF FACTS .......................................................................2

    A.    The Real USFL ...........................................................................2

    B.    The USFL After 1986 ................................................................3

        1.    Apparel Licensing...........................................................3

        2.    Book Licensing ...............................................................4

        3.    Film Licensing ...............................................................5

    C.    The Provenance of Fox's Claimed USFL Marks...................................6

    D.    Fox Launches its Counterfeit League ...........................................7

    E.    The Original USFL Owners Push Back............................................8

    F.    Fox Sports Intimidates American Classics .........................................10

    G.    The Real USFL Steps In ...............................................................11

    H.    Fox Sports Moves ahead with the Fox USFL ....................................11

LEGAL STANDARD ............................................................................11

ARGUMENT .....................................................................................12

    A.    The Real USFL Is Likely to Succeed on the Merits of Its Claims .....13

        1.    Lanham Act § 1125(a)(1)(A)—Trademark Infringement ........14

            a.    The Real USFL Owns Valid and Legally Protectable Marks....................................................14

            b.    The Real USFL is Likely to Show Actionable Confusion..................................................16

        2.    Lanham Act § 1125(a)(1)(B)—False Advertising...................19

        3.    Lanham Act § 1125(a)(1)(A)—False Association ..................20

McKool Smith Hennigan, P.C.
Los Angeles, CA

i

4.    California Statutory and Common Law Claims .......................21

5.    Fox's Asserted Abandonment Defense is Wrong and Irrelevant21

B.    The Real USFL Will Suffer Irreparable Injury Unless Fox Is Enjoined22

C.    The Balance of Equities Favors the Real USFL .................................23

D.    The Public Interest Favors Entering the Preliminary Injunction ........24

E.    Any Bond Should Be Minimal.............................................................25

CONCLUSION ...............................................................................................26

McKool Smith Hennigan, P.C.
Los Angeles, CA

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Adidas America, Inc. v. Skechers USA, Inc.*,
  890 F.3d 747 (9th Cir. 2018) ................................................................23

5

6

*AECOM Energy & Constr., Inc. v. Ripley*,
  No. 217CV05398RSWLSS, 2017 WL 4326373 (C.D. Cal. Sept. 28, 2017),
  *aff'd sub nom.*, 748 F. App'x 115 (9th Cir. 2018)....................... 12, 13

7

8

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ...............................................................11

9

10

*Alliance for the Wild Rockies v. Pena*,
  865 F.3d 1211 (9th Cir. 2017) ...............................................................11

11

12

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ........................................................... 16, 17

13

14

*Cal. Cooler, Inc. v. Loretto Winery, Ltd.*,
  774 F.2d 1451 (9th Cir.1985) ................................................................14

15

16

*Clinton E. Worden & Co. v. California Fig Syrup Co.*,
  187 U.S. 516 (1903)................................................................................15

17

18

*Denbicare U.S.A., Inc. v. Toys R Us, Inc.*,
  84 F.3d 1143 (9th Cir. 1996) .................................................................21

19

20

*Duck Dive v. Heydari*,
  No. CV 13-07791, 2014 WL 1271220 (C.D. Cal. Mar. 27, 2014) ...................23

21

22

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
  946 F.3d 1040 (9th Cir. 2019) ...............................................................13

23

24

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
  741 F. Supp. 2d 1165 (C.D. Cal. 2010) ...............................................24

25

26

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) ...............................................................25

27

28

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
  4 F.3d 819 (9th Cir. 1993) .....................................................................16

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ................................................................. 25

*Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*,
    601 Fed. Appx. 469 (9th Cir. 2015) ......................................................... 22

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006) ................................................................... 14

*Moroccanoil, Inc. v. Moroccan Gold, LLC*,
    590 F. Supp. 2d 1271 (C.D. Cal. 2008) ................................................... 23

*Network Automation, Inc. v. Advanced Sys. Concepts*,
    638 F.3d 1137 (9th Cir. 2011) ........................................................... 17, 18

*Patagonia, Inc. v. Anheuser-Busch, LLC*,
    No. 219CV02702VAPJEMX, 2020 WL 8514835 (C.D. Cal. Sept. 3, 2020) .... 15

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ................................................................. 16

*Rise Basketball Skill Dev., LLC v. K Mart Corp.*,
    No. 16-CV-04895-WHO, 2017 WL 2775030 (N.D. Cal. June 27, 2017) ......... 21

*S. Cal. Darts Ass'n v. Zaffina*,
    762 F.3d 921 (9th Cir. 2014) ............................................................. 13, 14

*Samick Music Corp. v. Gordon*,
    No. SACV 20-395-GW-JDEX, 2020 WL 3210613 (C.D. Cal. Mar. 26,
    2020) ......................................................................................................... 23

*Sengoku Works v. RMC Int'l*,
    96 F.3d 1217 (9th Cir. 1996) ................................................................... 14

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
    No. 14-CV-04050, 2014 WL 6788310 (N.D. Cal. Dec. 2, 2014) ................. 23

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
    758 F.3d 1069 (9th Cir. 2014) ................................................................. 14

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..................................................................................... 11

McKool Smith Hennigan, P.C.
Los Angeles, CA

iv

**STATUTES**

15 U.S.C. § 1064 ................................................................................15

15 U.S.C. § 1116 ................................................................................22

15 U.S.C. § 1125 .................................................................13, 14, 20

California Business and Professions Code § 17200................................................21

**OTHER AUTHORITIES**

Restatement (Third) of Unfair Competition § 30 cmt. a (1995)............................22

Restatement (Third) of Unfair Competition § 32 (1995)......................................15

Rule 65(c) of the Federal Rules of Civil Procedure.............................................25

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

McKool Smith Hennigan, P.C.
Los Angeles, CA

## PRELIMINARY STATEMENT

Last year, Defendants Fox Sports, Inc., The Spring League, LLC, and USFL Enterprises, LLC (collectively "Fox") announced the creation of a purportedly new professional football league named the "USFL" or the "United States Football League" (hereafter, "Fox's League"). Approximately three months ago, Fox announced that the USFL's 2022 season would begin on April 16, 2022, with eight teams: the Michigan Panthers, the New Jersey Generals, the Philadelphia Stars, the Pittsburgh Maulers, the Birmingham Stallions, the Houston Gamblers, the New Orleans Breakers, and the Tampa Bay Bandits.

But Fox's USFL franchise is a counterfeit. The *actual* USFL (the "USFL" or the "League")—with which Fox has no association—was a professional football league that played in the 1980s and was serious competition to the National Football League ("NFL"). The League once fielded teams with now-legendary players like Jim Kelly, Reggie White, Doug Flutie, Steve Young, Herschel Walker, Kelvin Bryant, and many others. It was the subject of one of ESPN's first "30-for-30" sports documentaries and at least three books.[1] It also had—and continues to have—a mass following with stable demand for USFL merchandise. Fox has no claim to this history and no right to capitalize on the goodwill of the league. Much less does Fox have a right to deceive the public into believing that *it* is the original USFL or that Fox's League's teams actually comprised the historic USFL.

Yet, that is precisely what Fox has done. Fox has taken the name and logo of the original league, its team names, and team logos.

| USFL Logo | Fox's League Logo |
|---|---|
|  |  |

---

[1] *See* Jeff Pearlman, *Football for a Buck* (2019); Paul Reeths, *The United States Football League 1982-1986* (2017); Jim Byrne, *The $1 League* (1987).

**USFL Team Logos**



**Fox's League Team Logos**



Plaintiff, The Real USFL, LLC (the "Real USFL") was created by the USFL's former owners and executives to hold the League's intellectual property (the "Real USFL IP") and to protect the USFL's legacy. Among other things, the Real USFL is the assignor of a longstanding contract for distribution of USFL merchandise, which Fox has rendered worthless via a lawyer-driven campaign of intimidation and threats of litigation. The Court should enjoin Fox's further use of the Real USFL IP.

<strong><u>STATEMENT OF FACTS</u></strong>

**A.    The Real USFL**

Nearly four decades ago, an upstart professional football league, called the "United States Football League" ("USFL"), broke into the professional sports market. *See* Declaration of Steve Ehrhart ("Ehrhart Decl."), ¶ 2.  In just three years of operation, from 1983-1985, the USFL built a loyal fan base, drove TV ratings on the then-nascent ESPN network and ABC, and launched the careers of multiple players now in the Pro-Football Hall of Fame, including Reggie White, Jim Kelly, Sam Mills, and Steve Young, as well as other famous players like Doug Flutie and Herschel Walker.  *Id.*  During its heyday, the USFL held numerous registered trademarks for the USFL name and logo ("League Marks"), as well as the League's team names and logos ("Team Marks").  Declaration of Kirk D. Dillman ("Dillman Decl."), Ex. 1.  In 1986, however, the league ceased play, following a pyrrhic antitrust suit against the NFL, in which the league won only nominal damages (but substantial attorneys' fees).

McKool Smith Hennigan, P.C.
Los Angeles, CA

2

Ehrhart Decl. at ¶ 4.  Nevertheless, those associated with the league continue to honor its achievements, with, among other things, reunions, an ESPN documentary, and multiple licenses arrangements for films and books about the league as well as USFL merchandise.  *Id.* at ¶¶ 6–16.

## B.     The USFL After 1986

Steve Ehrhart is currently Executive Director of the AutoZone Liberty Bowl, a college football bowl game that has been played annually for more than sixty years. *Id.* at ¶ 3.  Mr. Ehrhart's storied career in sports includes roles as president of Major League Baseball's Colorado Rockies, and more recently, a minority owner of the National Basketball League's Memphis Grizzlies.  *Id.*  Before all of that, however, Mr. Ehrhart served in the USFL League Office as Executive Director and later President, General Manager, and part owner of the Memphis Showboats.  *Id.*

After the original USFL ceased play, the league's owners elected Mr. Ehrhart to carry on league business, including conclusion of the USFL's litigation with the NFL and the distribution of millions of dollars in the form of the USFL's attorneys' fees.  *Id.* at ¶ 5.  Since then, Mr. Ehrhart has worked to preserve the league's legacy, by among other things, entering a number of licensing arrangements for the USFL's intellectual property for USFL apparel, books, and other media.  *Id.* at ¶¶ 8–16.  The media licenses have been in force since at least 2008 and the Real USFL's apparel manufacturer has been selling USFL merchandise under a license since 2011.  *Id.* at ¶¶ 9, 12.

### 1.     *Apparel Licensing*

Founded in 1994, American Classics, Inc. ("American Classics") is a leading wholesaler of "classic entertainment" apparel that has sold products under licenses from, among others, Warner Brothers, Sony, Universal Studios, and Disney.  *See* Declaration of David E. Brown ("Brown Decl.") ¶ 1.  It sells directly online and through major retailers such as Old Navy and Kohl's.  *Id.* at ¶ 1.  In July 2011, Mr. Ehrhart entered into a licensing arrangement with American Classics to produce

McKool Smith Hennigan, P.C.
Los Angeles, CA

throwback t-shirts bearing team names and logos of all 18 of the original USFL's teams (the "Apparel License"). *Id.* at ¶ 2; Ehrhart Decl. at ¶ 12. In exchange for a 12% royalty, the Apparel License permitted American Classics to make apparel using the "names, logos, images of the USFL and its member team[s] from 1983, 1984, and 1985." Brown Decl. at ¶ 2. The agreement provided that American Classics would use its "best efforts to offer [USFL apparel] for sale" by September 30, 2011. *Id.*

By August 2011, American Classics had designed the licensed USFL apparel. *Id.* at ¶ 3. After Mr. Ehrhart approved the designs, no later than October 24, 2011, American Classics listed the USFL among the brands it licensed on its website, *Id.* at ¶ 4, and no later than November 4, 2011, an American Classics' retail partner's website listed t-shirts for sale, each bearing USFL marks and/or marks from one of the USFL teams.[2] American Classics' own site offered the same shirts for sale no later than November 9, 2011. *Id.* at ¶ 5. Demand for USFL apparel, through American Classics, has remained steady since 2011, and through fourth quarter 2021, American Classics made regular quarterly royalty payments to "the USFL c/o Steve Ehrhart." *Id.* at ¶ 6; Ehrhart Decl. at ¶ 14. Mr. Ehrhart has deposited each American Classics check into a bank account. Ehrhart Decl. at ¶ 14.

### 2.   *Book Licensing*

Mr. Ehrhart also authorized an official history of the USFL. In July 2009, Paul Reeths, an author and avid fan of the original USFL, contacted Mr. Ehrhart to discuss an anticipated book providing a definitive history of the USFL. Declaration of Paul Reeths ("Reeths Decl."), at ¶ 2. Over the next several years, the parties discussed the contents of the book, *The United States Football League 1982-1986*, each chapter of which was sent to Mr. Ehrhart for approval. *Id.* at ¶¶ 2-3. Prior to the book's April 3, 2017, publication, on July 6, 2016, Mr. Ehrhart provided a written release to use the USFL league and team logos. *Id.*

---

[2] https://web.archive.org/web/20111104072343/http://slingshotshirts.com/pop-culture-t-shirts/usfl-t-shirts.html#expand.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

McKool Smith Hennigan, P.C.
Los Angeles, CA

### 3.     *Film Licensing*

Ken Dunek is a former tight end for the USFL's Philadelphia and Baltimore Stars.  *See* Declaration of Ken Dunek ("Dunek Decl.") ¶ 1.  His USFL jersey is on display in the Pro Football Hall of Fame next to the USFL Championship Trophy.  *See id.*  Now, he is a filmmaker.  *Id.* at ¶¶ 2-9.  In late 2006, he contacted the Stars' former part owner and then-Kansas City Chiefs President, Carl Peterson, regarding his film named *Field Mouse*, a documentary of the life and career of his former Stars' teammate, the Hall of Fame Linebacker Sam Mills.  *Id.* at ¶ 2.  Mr. Peterson suggested that prior to pursuing the film, Mr. Dunek request from Mr. Ehrhart the rights to use the USFL league and team marks.  *Id.*

Mr. Dunek and Mr. Ehrhart exchanged several emails and held multiple phone calls regarding his plans for the film and a potential license for the USFL marks.  *Id.* at ¶ 3.  Eventually they executed a written license granting Mr. Dunek "the rights to use the USFL name, logo, likeness, and game footage video" for the film.  *Id.* at ¶ 4.  In the months and years that followed—through today—Mr. Dunek and his team have made substantial progress to those ends, including securing name and likeness rights for Mr. Mills, obtaining substantial financing, gaining public recognition through a Philadelphia Inquirer article, finalizing the screenplay, discussing and marketing the film with production studios, and identifying potential talent for the film.  *Id.* at ¶ 5.

In July 2010, Mr. Dunek again contacted Mr. Ehrhart regarding a separate USFL film project called *The Team that Time Forgot*.  *Id.* at ¶ 6.  On September 9, 2010, Mr. Ehrhart entered into a written license agreement with Forgotten Stars Productions LLC for the right to use the USFL marks.  *Id.*  Mr. Dunek created a website for the film (theteamthattimeforgotmovie.com), which an archived version of the site shows contained links to multiple relevant articles including a July 22, 2010, article in The Philadelphia Inquirer discussing the film.  *Id.* at ¶ 7.  The website also contained the film's trailer, a copy of which can still be found on the video hosting service, Vimeo.  *Id.* at ¶ 8.  Mr. Dunek and his team have secured seven-figure

McKool Smith Hennigan, P.C.
Los Angeles, CA

financing for the film, have marketed it to major studios including Sony, DreamWorks, and ESPN, and have aired the trailer at public events including Stars team reunions. *Id.* at ¶ 9. Plans to produce the film are ongoing. *Id.*

## C. The Provenance of Fox's Claimed USFL Marks

On March 24, 2011, an entity named United States Football League, LLC (the "2011-USFL") filed an application with the United States Patent and Trademark office ("USPTO") for standard character[3] trademark registration of "USFL." Dillman Decl. at Ex. 2. The USPTO registered the first of the "2011-USFL" marks on June 26, 2012, as Reg. No. 4165542. *Id.* at Ex. 3. The "2011-USFL's" purported first use of its mark in commerce was December 31, 2011—well *after* the sales and licenses described above. *Id.* To Plaintiff's knowledge, the "2011-USFL" has no connection to the original USFL or the Real USFL. Ehrhart Decl. at ¶ 21.

From September 2011 to August 2014, the "2011-USFL" filed registration applications for more "USFL" marks, some of which the USPTO granted. Dillman Decl. at Ex. 2. The USPTO's file histories for the "2011-USFL" registrations show that they were always intended to capture the good will of the USFL, despite the "2011-USFL" lacking any connection with the League. For example, the specimen for Reg. No. 4808689 details the "2011-USFL's" plans to "utilize [the USFL's] historical legacy to bring quick brand identity to football fans." *Id.* at Ex. 4.

On January 31, 2021, the "2011-USFL" assigned its entire interest and "goodwill" in marks to World Record Headquarters, Inc. ("WRH"). *Id.* at Ex. 5. The assignment to WRH was recorded on February 2, 2021. *Id.* Starting in January 2021, WRH filed several standard character applications for registration of "United States Football League" and thirteen of the USFL's original team names. *Id.* at Ex. 2.

On April 1, 2021, WRH assigned its entire interest in its purported USFL IP (including those it acquired from the "2011-USFL") to The Spring League, LLC ("TSL"). *Id.* at Ex. 6. The assignment to TSL was recorded with the USPTO on April

---

[3] A standard character mark applies only to the word and does not include logos.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

McKool Smith Hennigan, P.C.
Los Angeles, CA

12, 2021.  *Id.*  From March 2019 through January 2021, TSL submitted a number of additional applications seeking registration for, among other things, marks identical (or nearly identical) to the Real USFL IP.  *Id.* at Ex. 2.  The USPTO has yet to grant registration to any of TSL's applications.  *Id.*

Beginning October 12 2021, another entity named NSFL Enterprises Co., LLC ("NSFL") submitted several applications seeking registration for marks identical (or nearly identical) to the Real USFL IP.  *Id.*  The USPTO has yet to grant registration to any of NSFL's applications.  *Id.*  On December 6, 2021, NSFL with the USPTO a change of name to USFL Enterprises, LLC ("NSFL II").  *Id.* at Ex. 7.  The assignment to NSFL II was recorded January 4, 2022.  *Id.*

Through the TSL and NSFL II registrations (including the "2011-USFL" and WRH registrations), Fox purports to be the owner of at least 175 federal trademark registrations or applications that are identical or confusingly similar to the Real USFL IP.  *See id.* at Exs. 2-8; Brown Decl. at ¶ 9.

## D.  Fox Launches its Counterfeit League

On June 3, 2021, Fox Sports issued a press release (the "Press Release") announcing a joint venture with Brian Woods, CEO of TSL, "to bring back" "the United States Football League."  Dillman Decl. at Ex. 8.  Seeking to leverage the goodwill of the Real USFL, the Press Release explains that "the USFL originally was an upstart spring football league consisting of 12 teams which featured some of the most exciting and recognizable young football stars in the country."  *Id.*  Celebrating the move as "a landmark day for," Fox Sports, the company's CEO, Eric Shanks, is quoted as saying that "the *return* of this innovative and iconic league is a fantastic addition to" Fox Sports' programming.  *Id.* (emphasis added).

Fox's promotion of the "return" of the USFL was not limited to the Press Release.  For example, in a tweet posted on two verified Fox Twitter pages, Fox announced that "The USFL is back! Catch all the action next year on FOX Sports."[4]

---

[4] https://twitter.com/FOXSports/status/1400436507559620610?s=20&t=Go6oxmS9n7Iu1wmt6R

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

McKool Smith Hennigan, P.C.
Los Angeles, CA

Embedded in the tweet is a video of "@USFLOfficial legendary QB @DougFlutie," a former Heisman Trophy winner who played his professional rookie season with the USFL's New Jersey Generals in 1985.  Mr. Flutie—who can be seen wearing a hat bearing the USFL's Generals logo—opens the video stating "the USFL is back! See you in 2022!"  He continues to reminisce about "our days back in the USFL," naming Reggie White, Jim Kelly, Steve Young, and Herschel Walker among former players in the league.  As Mr. Flutie names each of these individuals, the video displays photographs of the players wearing their old USFL jerseys and/or playing in USFL games that occurred in the 1980's.

The reaction to Fox's USFL announcement was one of universal excitement, not about a *new* football league, but about the *return* of what all believed to be "the USFL" as Fox announced.  For example, numerous news outlets amplified Fox's announcement, and told their audience that the USFL was "returning," or was being "revive[d]," "reincarnate[ed]," "rebooted," "reborn," "reclaim[ed]," and any number of other words to describe Fox's illegal and unauthorized actions.  Dillman Decl. at Ex. 9.  Likewise, many fans on social media expressed their desire to root for a team they knew from the 1980s.  *Id.* at Ex. 10.

**E.    The Original USFL Owners Push Back**

On the same day of Fox's announcement, Mr. Ehrhart is quoted in the Philadelphia Inquirer regarding Fox's illegal attempt to "relaunch" the League.  Ehrhart Decl. at ¶ 17.  Days later, Mr. Ehrhart directly called Fox Sports' Executive Vice President, Larry Jones, to complain of Fox's illegal use of the USFL marks and explain that the USFL had never ceased using the marks.  *Id.* at ¶ 18.  At a July 14, 2021, in-person meeting between the two, Mr. Jones dismissed Mr. Ehrhart's complaints, stating that Fox was not interested in further discussions.  *Id.*

Given Fox's inaction, in August 2021, on behalf of a group of League owners

wzlw; https://twitter.com/FOXSportsPR/status/1400437750688456720?s=20&t=6k6Vgco03z3jbnQWwYM-tg.

McKool Smith Hennigan, P.C.
Los Angeles, CA

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

and executives, Bert Deixler, former USFL attorney, sent a letter to the CEO of TSL, Brian Woods, notifying him that Fox was misappropriating the name, tradenames, and trademarks of the USFL and its teams. *Id.* at ¶ 19; Dillman Decl. at Ex. 13. Mr. Deixler requested that Mr. Woods provide Fox's basis for claiming that it was authorized to relaunch the USFL. *Id.* On September 21, 2021, lawyers for Mr. Woods responded that the original USFL was dead and had abandoned its trademarks. Dillman Decl. at Ex. 14. It also requested information regarding the team owners' rights in any teams and intellectual property rights. *Id.* Mr. Deixler later e-mailed the lawyers for Mr. Woods requesting to speak to them about Fox's actions. *Id.* at Ex. 15.

Sometime following Mr. Deixler's email to Mr. Woods—but no sooner than October 20, 2021—Fox Sports altered the text of the Press Release by removing all references to a "relaunch" of the USFL and the League's history. Specific changes included changing Mr. Woods' quote from stating that he is "extremely passionate about . . . the opportunity to . . . *bring back* the USFL" to "extremely passionate about . . . the opportunity to . . . launch the *new USFL*."[5]

However, this did not end the confusion Fox created. Fox did not delete its posting of Mr. Flutie—which remains on Fox's Twitter feeds—nor did Fox amend the Press Release's URL, which continues to indicate a planned "return[]" of the USFL. *See id.* Fox has instead continued its confusing marketing and has expressly stated that fans continued to associate the "new" league with the original USFL.

It was not until several months *after* the USFL owners letter, on November 22, 2021, that Fox announced that it would not only copy the USFL League name and logo, but would also use team names and logos that were either essentially identical or confusingly similar the Real USFL IP. Far from distancing itself from the historic

---

[5] https://www.foxsports.com/presspass/latest-news/2021/06/03/united-states-football-league-returns-2022 (emphasis added). The misstatements regarding affiliation with the USFL remained live until at least October 20, 2021. https://web.archive.org/web/20211020010358/https://www.foxsports.com/presspass/latest-news/2021/06/03/united-states-football-league-returns-2022.

League, Colin Cowherd, the Fox Sports commentator making the announcement, expressly drew a connection between Fox's League and the USFL's teams, saying, "[s]ome of these [team] names may be familiar to you."[6]  He even invoked the history of the USFL:  "This is a familiar [team] name, the New Jersey Generals.  I think we had a former president that was part of that," referencing Donald Trump's ownership of a 1980s USFL franchise.  More recently, Fox revealed the uniforms for its teams, and not surprisingly, they are nearly identical to the 1980s uniforms. Dillman Decl., at Ex. 11.

Fox has admitted that these announcements have caused confusion among fans. For example, Mr. Woods was quoted in the Detroit News as recently as February 7, 2022, saying "What we found after we made our initial announcement . . . [is that] [f]ans are pulling out their old memorabilia [from the original league], whether it be game programs or ticket stubs. These teams were once in those [same] markets [where Fox is launching].  There's certainly a connection. (It's like) we're starting on second base [with our marketing]. ***This is a known brand***."  *Id.* at Ex. 12 (emphasis added).

## F.    Fox Sports Intimidates American Classics

In November 2021, in conjunction with its announcement about its team names, Fox began heavily (and improperly) marketing USFL team merchandise, in direct competition with the Real USFL's licensee, American Classics.  Two days before Christmas 2021, outside counsel for Fox—David Bernstein of Debevoise & Plimpton—sent a cease and desist letter to American Classics claiming that his client holds exclusive rights in the names of the USFL teams.  In the midst of the Omicron COVID surge, Mr. Bernstein threatened litigation, demanded that American Classics cease selling its licensed USFL products immediately and respond to his letter within eight business days, *i.e.*, by New Year's eve.  Brown Decl. at ¶ 7.  American Classics' president David Brown replied to Mr. Bernstein that his is a reputable company that only does business in licensed goods.  *Id.* at ¶¶ 8, 10.  He also informed Mr. Bernstein

McKool Smith Hennigan, P.C.
Los Angeles, CA

---

[6] https://twitter.com/theherd/status/1462859577070796801?lang=en.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

of the licenses signed by Mr. Ehrhart, and even provided Mr. Bernstein records of American Classics' royalty payments.  *Id.*  Mr. Bernstein's threats nevertheless had their intended effect: to avoid expensive litigation, American Classics stopped selling USFL merchandise, but expressly reserved all of his legal rights.  *Id.* at ¶ 10.

## G.    The Real USFL Steps In

Confused by Fox's actions, several members of the public contacted the original USFL owners.  Ehrhart Decl. at ¶ 17.  Fearing that Fox's deception would damage their personal reputation and the USFL's legacy, several former owners and executives formed the Real USFL to hold and enforce their rights.  *Id.* at ¶ 20.  The Real USFL has been assigned all relevant rights from the former owners and/or heirs of the Birmingham Stallions, Philadelphia/Baltimore Stars, Michigan Panthers, Houston Gamblers, New Orleans Breakers, Jacksonville Bulls, Oklahoma/Arizona Outlaws, Tampa Bay Bandits, and Memphis Showboats.  Dillman Decl. at Exs. 16-25.

## H.    Fox Sports Moves ahead with the Fox USFL

In spite of its full knowledge of the Real USFL's continuous use of the USFL marks well before Fox's use, Fox continues marketing its "relaunch" of the league.  Fox's USFL has not yet started.  It will open player training camps on March 21, 2022 and its inaugural game is scheduled for April 16, 2022.[7]

## LEGAL STANDARD

Preliminary injunctive relief is appropriate where the movant can show (1) a likelihood of success on the merits, (2) irreparable harm absent preliminary relief, (3) that the balance of equities tips in his or her favor, and (4) that an injunction is in the public interest.  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Ninth Circuit balances these factors using a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under the

---

[7] https://www.foxsports.com/stories/usfl/usfl-everything-you-need-to-know.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

sliding scale, "a preliminary injunction may still issue if [one factor] … tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (cleaned up).

## **ARGUMENT**

Fox has willfully infringed the Real USFL's marks and is deliberately trading on a false and misleading association between Fox's League and the USFL. The Court should enjoin Fox's misrepresentations and falsehoods to protect the Real USFL's interest in its marks, history, and goodwill and protect the public from Fox's deception.

The Ninth Circuit recently affirmed a preliminary injunction enjoining similar misconduct based on similar claims in *AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*[8] In *AECOM*, the plaintiff had acquired a famous and historically significant construction company, Morris Knudsen. That company built, among other things, the Hoover Dam. The defendant, believing the Morris Knudsen marks to have been abandoned after Morris Knudsen's acquisition by AECOM, took up the marks and began holding itself out as the historic company. In fact, however, AECOM continued using the Morris Knudsen marks after acquiring the company, albeit less prominently than when Morris Knudsen was a separate entity.

With regard to the plaintiff's false advertising claim, the Ninth Circuit affirmed the district court's finding of likelihood of success on the merits: "Here, Defendants have held themselves out to the public as Morrison Knudsen through use of the MK marks and Morrison Knudsen's corporate history. *Such statements are literally false; Defendants are neither the original Morrison Knudsen nor its successor.*" *AECOM*, 748 F. App'x at 119 (emphasis added).

With regard to the *AECOM* plaintiff's trademark claim, the Ninth Circuit, rejected defendant's abandonment defense and affirmed the district court's finding of

---

[8] *AECOM Energy & Constr., Inc. v. Ripley,* No. 217CV05398RSWLSS, 2017 WL 4326373, at *1 (C.D. Cal. Sept. 28, 2017), *aff'd sub nom.*, 748 F. App'x 115 (9th Cir. 2018).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

McKool Smith Hennigan, P.C.
Los Angeles, CA

likelihood of success on the merits: "[The plaintiff] has shown a likelihood of confusion. Defendants have appropriated the same MK marks and Morrison Knudsen corporate history that [plaintiff] uses, and Defendants have used these marks and history in the same market—the construction market—in which [plaintiff] operates. We reject Defendant's abandonment defense." *Id.* at 119 (citations omitted).

Finally, in affirming the preliminary injunction, the Ninth Circuit agreed with the district court's finding regarding the balance of equities. "As to the balance of equities," the Ninth Circuit said "the balance favors [plaintiff]. If an injunction issues, Defendants will merely be required to cease their illegal activities; but if an injunction does not issue, [plaintiff] will lose control over the MK brand for which it paid substantial consideration. Finally, we agree with the district court that an injunction serves the public interest in preventing consumer confusion." *Id.* at 119–20.

The Real USFL seeks the *same* relief as the plaintiff in *AECOM*, based on the *same* causes of action, in the face of conduct that is the *same* in all relevant respects. Both the fake MK and Fox held themselves out as historically significant businesses with which they had no actual connection. Both did so to benefit from their deception and both actually deceived the public. At bottom, Fox is perpetrating a fraud on the public that the Court should enjoin, just as the Ninth Circuit did in *AECOM*.

## A.    The Real USFL Is Likely to Succeed on the Merits of Its Claims

The Lanham Act prohibits the use in commerce of:

any word, term, name, symbol, or device, . . . or false or misleading representation of fact, which . . . (A) is likely to cause confusion . . . as to the origin, sponsorship, or approval of [the user's] . . . goods, services, or commercial activities . . . or (B) . . . misrepresents the nature . . . of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(A). "[A]lthough much of the Lanham Act addresses the registration, use, and infringement of trademarks[,] . . . § 1125(a) [of the Act] . . . goes beyond trademark protection." *Enigma Software Grp. USA, LLC v. Malwarebytes,*

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

13

*Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019).  Among other things, § 1125(a) prohibits (1) "infringement of unregistered marks," (2) false claims of association, and (3) false advertising.  *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 926 (9th Cir. 2014); *AECOM*, 748 F. App'x at 115.  Each of these causes of action "are distinct and require the application of separate tests." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014).  The Real USFL is likely to succeed on at least these three causes of action and its related state law claims.

### 1.    *Lanham Act § 1125(a)(1)(A)—Trademark Infringement*

"[T]o prevail on a suit under [a §1125(a) on a trademark infringement theory] . . . a plaintiff must prove two basic elements: (1) it has a valid, protectable trademark, and (2) [the defendant's] use of the mark is likely to cause confusion" among consumers.  *S. Cal. Darts Ass'n*, 762 F.3d at 929.  The mark does not need to be federally registered to be protectable. *Id.* at 926.

### a.    **The Real USFL Owns Valid and Legally Protectable Marks**

"[A] trademark is a common law property right that exists independently of statutory provisions for registration." *Cal. Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2d 1451, 1454 (9th Cir.1985).  Therefore, while federal registration of a trademark confers advantages, registration alone "does not create a mark or confer ownership; only use in the marketplace can establish a mark." *Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975, 979 (9th Cir. 2006).  "It is axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku Works v. RMC Int'l,* 96 F.3d 1217, 1219 (9th Cir. 1996).  If the owner of an unregistered mark establishes an earlier first use in commerce, then the registration of a confusingly similar mark may be invalidated. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).  Here, registration for the USFL marks made in the 1980s lapsed, but the Real USFL's licensees have been using them in commerce continuously well before any use creditable to Fox.  A licensee's "use [of the marks] inures to the benefit of the licensor . . . , fortify[ing] the legal and commercial strength of the licensed mark."

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

McCarthy on Trademarks and Unfair Competition § 18:52.

***The Real USFL's Superior Claim to the Team Marks is Indisputable:*** With regard to the Real USFL Team Marks (*e.g.*, team names and logos), Fox has no claim of priority earlier than 2019, the date on which TSL began applying to register marks for the USFL teams.  But, by that point, American Classics had been selling apparel under those same marks for *at least eight years*.  Fox cannot seriously dispute these facts and thus cannot dispute the Real USFL's superior claim to the team marks.

***The Real USFL has Priority for the League Marks:*** With regard to the League marks (*e.g.*, "USFL" and the USFL logo), Fox can claim priority to—at the earliest—March 24, 2011, based on the application date for Reg. No. 4165542.  The Real USFL's priority claim is superior for at least two reasons.  First, starting at least in 2008, Mr. Dunek was using the League marks under license. That is well before Fox's claimed priority date.  Moreover, American Classics was making t-shirt sales months before Fox's earliest claimed use of its USFL mark in commerce on the last day of 2011, pursuant to Reg. No. 4165542.

Second, Fox is not entitled to its March 2011 priority date (or any priority at all), because all of Fox's purported "USFL" marks are unenforceable and its registrations are subject to cancelation under section 15 U.S.C. § 1064(3).  Thus, the Real USFL possesses superior right to the mark even if the Real USFL's first use in commerce was after Fox's claimed priority date.

Section 1064(3) provides that a registration may be canceled "if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used." To succeed on a claim for cancellation under § 1064(3) "a party must show 'blatant misuse of the subject mark by [registrant] in a manner calculated to trade on the goodwill and reputation of [the other party].'" *Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 219CV02702VAPJEMX, 2020 WL 8514835, at *12 (C.D. Cal. Sept. 3, 2020) (alterations in original).  Likewise, at common law, a trademark can be declared

McKool Smith Hennigan, P.C.
Los Angeles, CA

McKool Smith Hennigan, P.C.
Los Angeles, CA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

unenforceable if the use of the "mark is deceptive . . . or if the owner . . . has engaged in other substantial misconduct directly related to the owner's assertion of rights in the trademark." Restatement (Third) of Unfair Competition § 32 (1995); *Clinton E. Worden & Co. v. California Fig Syrup Co.*, 187 U.S. 516, 528 (1903) (when a mark is used to deceive "the right to the exclusive use of it cannot be maintained").

Here the Real USFL can easily make those showings because Fox has been misrepresenting itself to consumers as the heir to the original USFL. Fox's Press Release, its video of Mr. Flutie, and its subsequent statements—not to mention its selection of names and logos for its league and teams that are essentially identical to (or at least confusingly similar to) the original USFL's—are all calculated to trick the public into believing that Fox's League *is* the USFL. Indeed, the prosecution history of Fox's marks shows that the marks were *always* intended for that purpose. *Supra* at 6-7. Since Fox has no connection with the historic league, it is using its marks to make "statements [that] are literally false." *AECOM*, 748 F. App'x at 119. There could hardly be a clearer case for a declaration of unenforceability and cancelation.

### b.    The Real USFL is Likely to Show Actionable Confusion

Actionable confusion exists "when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 825 (9th Cir. 1993) (internal quotation marks omitted). Courts determine a likelihood of confusion by reference to eight illustrative factors described in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). These factors are "best understood as simply providing helpful guide posts," and should be evaluated in light of all facts and circumstances. *See Pom Wonderful LLC v. Hubbard,* 775 F.3d 1118, 1125 (9th Cir. 2014). The factors include: (1) strength of the mark; (2) similarity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and the degree of care likely to be exercised by the purchasers; (7) defendant's intent in selecting the

mark; and (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.2d at 348-49. These factors clearly favor the Real USFL. Indeed, Fox cannot seriously dispute most of them. Fox is using the *same* marks, to sell the *same* type of goods, through the *same* marketing channels (*e.g.*, the internet), and explicitly said it was trying to capture the goodwill that belongs to the Real USFL. The result was predictable: overwhelming confusion among consumers. It is difficult to imagine a more straightforward showing of likelihood of confusion.

**_The Marks are Identical or Highly Similar:_** "The more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1150 (9th Cir. 2011). Here, some of Fox's marks are *literally identical* to the Real USFL's, and *none* of them are substantially different from the Real USFL's marks. *Supra* at 1-2, 6-10.

**_The Real USFL's Marks are Strong_**: "[S]trength [of a trademark] is based on 'actual marketplace recognition.'" *Network Automation*, 638 F.3d at 1149. Fox cannot seriously dispute that the Real USFL's marks are recognized in the marketplace. Brian Woods, TSL's CEO, acknowledged that the USFL marks are a "known brand." Dillman Decl. at Ex. 12. Moreover, Fox's deliberate decision to copy the marks and take the Real USFL's goodwill, as well as the reaction of original USFL fans (all discussed further below), show beyond all doubt that the Real USFL marks were well recognized in the market.

**_The Goods are Similar and Sold in the Same Channels of Commerce:_** Using similar marks on similar goods and in "[c]onvergent marketing channels increase[s] the likelihood of confusion." *Sleekcraft*, 599 F.2d at 350-53. There can be no serious dispute that the Real USFL's merchandise and Fox's merchandise compete. They are of the same type—sports fan apparel—and are sold throughout the United States via the internet. Indeed, TSL's CEO himself said sports fans are associating their "old memorabilia" with Fox's new league. Dillman Decl. at Ex. 12.

**_Fox Intended to Take the Real USFL's Goodwill:_** "When [an] alleged

McKool Smith Hennigan, P.C.
Los Angeles, CA

17

infringer knowingly adopts a mark similar to another's, courts presume that . . . the public will be deceived." *Sleekcraft*, 599 F.2d 341, 354 (9th Cir. 1979). There can be no doubt that Fox's intent was to appropriate the Real USFL's goodwill and fan base. Fox could have chosen any name for its league or teams, but it chose to use the USFL's. Fox could have designed new logos for its league and teams, but it copied the USFL's. Indeed, Fox initially made no attempt to distinguish its league from the original. Rather, Fox did—and continues to do—the *opposite*, claiming that its league was a "return" and "relaunch" of the original with "familiar" team names. *Supra* at 7-10. Fox even went so far as to hire one of the USFL's former players to promote the league by reminiscing about his time in the original league. Even after including a disclaimer on its press release, Fox's admits that fans continue to be confused and that its marketing was "starting on second base" as a result. *Id.*

**<u>*The Evidence of Actual Confusion is Overwhelming:*</u>** "[T]he most important factor" in support of likelihood of confusion is evidence of *actual* confusion in the marketplace. *Network Automation*, 638 F.3d at 1147. The evidence of actual confusion is overwhelming. First, TSL's CEO himself *admitted* that there is confusion, as he said "[t]here's certainly a connection" in the minds of consumers between the USFL and Fox's League. "[It's like] we're starting on second base. This is a known brand." Dillman Decl. at Ex. 12.

Second, ever since Fox's June 3, 2021 announcement, the sports media—and general media—have been filled with coverage discussing the supposed connection between Fox's league and the original USFL—including on Fox's own sports network. *See supra* at 7-10; *see also* Dillman Decl. at Ex. 9.

Finally, since sports writers were confused, it is not surprising that there has been widespread confusion among football fans. For example, in response to Fox's announcement, fans across social media have expressed their excitement at rooting for their favorite teams from the original USFL. *See supra* at 7-10; *see also* Dillman Decl. at Ex. 10. Sadly, Fox has deceived these fans; the teams that they will be

McKool Smith Hennigan, P.C.
Los Angeles, CA

18

cheering have *nothing* to do with the USFL they remember.

### 2.   *Lanham Act § 1125(a)(1)(B)—False Advertising*

To succeed on a false advertising claim under § 1125(a), a Plaintiff must show "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement . . . ." *AECOM*, 748 F. App'x at 118.  The Real USFL is likely to succeed on all of these elements.

*__Fox Made False Statements about its Products in Interstate Commerce (Elements 1 & 4)__*:  Falsely claiming to have a connection with a historical business is actionable as false advertising under the Lanham Act. *AECOM,* 748 F. App'x at 119.  Here, Fox repeatedly has made false statements connecting itself with the original USFL.  For example, Fox's Press Release said that the USFL will "officially return" under Fox's auspices, and that it was "bring[ing] back the USFL" as part of a "relaunch" of the league.  *Supra* at 7-9; Dillman Decl. at Ex. 8.  All of these (and numerous similar statements) were false, because Fox had no connection with the USFL, as it now admits in its updated Press Release: "[T]he new USFL is not associated or affiliated with th[e] [original] league or its owners." *Supra* at 9 n.5.  Fox also put these statements in interstate commerce by publishing them on its website and using them to sell its merchandise nationwide.  Nevertheless, Fox's marketing continues to suggest association with the old league.  *Supra* at 7-10.

*__Fox's Statements Actually Deceived its Audience (Element 2):__*  As discussed above, Fox's advertisements have a tendency to deceive, based on, among other things the similarities of the marks it uses to those of the USFL.  *See supra* at 7-10*.*  Moreover, Fox *intended* its statements to deceive, *id.*, and Fox's statements plainly *have* deceived its audience, as demonstrated by the persistent belief among sports

writers and fans (notwithstanding Fox's belated, inadequate, insincere, and still duplicitous clarifications) that Fox's league is connected to the original.  *Id.*  Fox continues to tout the connection to the old league.

> ### Fox's Deception is Material and Likely to Influence Purchasing Decisions (Element 3):

Fox itself believes that fans are more likely to purchase goods and services associated with a historic league than one Fox invented less than a year ago. Nothing else could explain Fox's decision to adopt the former USFL's identity, when it could have used any league name or team names and designed its own logos. Moreover, TSL's CEO himself said that "Fans are pulling out their old memorabilia" from the original league, because they associate it with the new league.  *Supra* at 8-10.  Meanwhile, Fox is trying to sell them new and confusingly similar memorabilia.

> ### Fox's False Statements Have Destroyed the Real USFL's Apparel Business (Element 5):

Fox's false statements have destroyed the Real USFL's apparel business.  Its licensee has ceased selling licensed goods, out of fear of litigation from Fox.  Furthermore, large segments of the consuming public now believe that Fox, rather than the Real USFL, is the legitimate source of official USFL merchandise, making it impossible for the Real USFL to resume its business.

### 3.    *Lanham Act § 1125(a)(1)(A)—False Association*

"To succeed on its false association claim under 15 U.S.C. § 1125(a)(1)(A), [a plaintiff] must prove that Defendants "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of [its] goods or services."  *AECOM*, 748 F. App'x at 118 (alterations in original).  Fox's conduct easily meets all of those elements.  Exactly as the defendant in *AECOM*, Fox has made misleading representations and descriptions about its goods to suggest an association with the original USFL (elements 1 & 2).  *Supra* 19.  Moreover, Fox's statements are not only likely to cause confusion (element 3), they actually have confused broad swaths of the relevant market and destroyed the Real USFL's

McKool Smith Hennigan, P.C.
Los Angeles, CA

commercial relationship with American Classics.  *Supra* 7-10.

### 4. *California Statutory and Common Law Claims*

California "state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act" *Denbicare U.S.A., Inc. v. Toys R Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir. 1996) (internal citations and quotations omitted).  However, California law also protects "'wrongful exploitation of trade names and common law trademarks that [are] not otherwise entitled to legal protection' and is therefore broader in scope" than the Lanham Act.  *Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-CV-04895-WHO, 2017 WL 2775030, at *3 (N.D. Cal. June 27, 2017).  As explained above, the Real USFL is likely to succeed on its claims under the Lanham Act.  It follows, therefore, that it is even more likely to succeed on broader state law causes of action as well.

### 5. *Fox's Asserted Abandonment Defense is Wrong and Irrelevant*

As part of its efforts to intimidate Real USFL and American Classics, Fox's lawyers have claimed that after the USFL stopped play in 1986, the league abandoned its marks.  Even if that were true—the Real USFL does not concede that it is—it is irrelevant to the instant motion.

<u>First</u>, trademark ownership is not an element of either a false advertising or false association claim under § 1125(a).  Indeed, in *AECOM*, which dealt with nearly identical circumstances as this case, the Ninth Circuit treated the plaintiff's trademark claim as a "false association claim"—with different elements from a trademark claim.

<u>Second</u>, the Real USFL would prevail on its trademark claim even if the League abandoned its mark in 1986, because, at a minimum, the Real USFL's licensees resumed using the marks before Fox started using them.  "[I]f a challenger's [*i.e.*, Fox's] date of first use is later than the resumed use of the party alleged to have abandoned the trademark [*i.e.*, the USFL], then the issue of possible abandonment is irrelevant to the question of priority."  McCarthy on Trademarks and Unfair

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

1   Competition § 17:3.  Here, under the Apparel License, American Classics, was selling

2   USFL-branded apparel in the Fall of 2011, and the Real USFL's media licensees were

3   using the Real USFL IP even earlier.  Fox cannot claim use of the team marks until

4   2019 or the "USFL" mark till the *last day* of 2011.  Accordingly, whatever happened

5   between 1986 and 2011 does not matter.  The Real USFL has priority over Fox.

6          Third, misleading use of an abandoned mark is still actionable by the former

7   user.  Even when a mark is abandoned, "if the abandoned designation retains its

8   original trademark significance"—*i.e.*, consumers associate the mark with a former

9   user—subsequent "use of the designation by another is likely to be perceived by

10  prospective purchasers as an indication of association with the former user."

11  Restatement (Third) of Unfair Competition § 30 cmt. a (1995).  Therefore, "use of an

12  abandoned designation in a manner likely to deceive or mislead a significant number

13  of prospective purchasers may subject the user to liability to the former owner."  *Id.*

14  For example, in *Peter Luger Inc. v. Silver Star Meats Inc.*, the court assumed that the

15  plaintiff had abandoned its former mark, but nonetheless enjoined the defendants use

16  of confusingly similar marks.  No. CIV.A.01-1557, 2002 WL 1870066, at *2 (W.D.

17  Pa. May 17, 2002).  The court said "any newcomer acts outside legal boundaries when

18  it intentionally adopts the same name . . . implying that it is somehow a successor

19  product. . . . Whether [the plaintiff] abandoned the name or not, that [abandonment]

20  did not confer a right upon the defendants to" use the mark and deceive the public.

21  *Id.*  That is precisely what Fox did—it deliberately associated itself with the old league

22  in order to benefit from consumer confusion and the USFL's good will.  Accordingly,

23  whether the USFL abandoned the marks or not, Fox's use of the marks is illegal

24  **B.     The Real USFL Will Suffer Irreparable Injury Unless Fox Is Enjoined**

25          Under the Lanham Act, a plaintiff seeking preliminary injunction that

26  demonstrates a likelihood of success on the merits is entitled to a rebuttable

27  presumption of irreparable injury.  15 U.S.C. § 1116(a).  As demonstrated above, the

28  Real USFL has made that showing.

McKool Smith Hennigan, P.C.
Los Angeles, CA

1    Courts also have regularly found irreparable injury when a trademark plaintiff

2    has shown actual confusion, as the Real USFL has done here.[9]   In fact, Fox has

3    *admitted* that its consumers confuse its league with the Real USFL—even *after* it

4    made its "clarification" in its press release.   Indeed, Fox's business plan for its

5    counterfeit USFL league appears to be built on confusion.

6        Moreover, courts widely agree that evidence of "loss of control over business

7    reputation and damage to goodwill [can] constitute irreparable harm."   *Adidas*

8    *America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018).   Here, the

9    Real USFL seeks to control, protect, and enrich the legacy of the historic league and

10   continue its apparel business.   However, Fox's continued use of the marks deprives

11   the Real USFL of that control and its business by allowing Fox to deceive the public

12   into believing that its USFL is the original USFL.

**C.     The Balance of Equities Favors the Real USFL.**

14       "A court considering injunctive relief must 'balance the competing claims of

15   injury and must consider the effect on each party of the granting or withholding of the

16   requested relief.'"   *Samick Music Corp. v. Gordon*, No. SACV 20-395-GW-JDEX,

17   2020 WL 3210613, at *11 (C.D. Cal. Mar. 26, 2020) (quoting *Amoco Prod. Co. v.*

18   *Vill. of Gambell, Alaska*, 480 U.S. 531, 542 (1987)).

19       "When considering the balance of equities, courts will not shy away from

20   issuing preliminary injunctive relief, where to do so would be to aid a second comer

21   who has sought to trade upon the efforts and good will of the first comer."

22   *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1281 (C.D. Cal.

23   2008).   Here, Fox has no legitimate interest in avoiding an injunction.   The only

24   "interest" at stake for Fox in the present motion is its right to continue marketing the

25   league under the USFL's "known brand" which Fox did not build and for which it

26

27   [9] *See Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 Fed. Appx. 469 (9th Cir. 2015)
     (finding irreparable harm based on evidence of actual confusion); *United Tactical Sys., LLC v. Real*
28   *Action Paintball, Inc.*, No. 14-CV-04050, 2014 WL 6788310 (N.D. Cal. Dec. 2, 2014) (same); *Duck*
     *Dive v. Heydari*, No. CV 13-07791, 2014 WL 1271220, at *1 (C.D. Cal. Mar. 27, 2014) (same).

McKool Smith Hennigan, P.C.
Los Angeles, CA

23

McKool Smith Hennigan, P.C.
Los Angeles, CA

1   paid nothing.  Dillman Decl. at Ex. 12.  Fox is not an innocent infringer and it can

2   capitalize on its investments in its league and move forward with its planned games—

3   it simply needs to use its own name.

4        Moreover, "[a] defendant who knowingly engages in infringing activity cannot

5   complain of the harm that will befall it when properly forced to desist from its

6   infringing activities."  *Samick Music Corp.*, WL 3210613, at *11.  For example,

7   in *Robi v. Five Platters, Inc.*, the Ninth Circuit affirmed cancelation of a mark

8   because, the owner "purposely misrepresented themselves" as the first user of the

9   mark.  918 F.2d 1439, 1444 (9th Cir. 1990).  This case is no different.

10       Fox's investments were with full knowledge that it was infringing the rights of

11  others.  Indeed, in the days and weeks following Fox's announcement, Mr. Ehrhart

12  raised his concerns directly to Fox Sport's Executive Vice President on two separate

13  occasions, including a face-to-face meeting.  Ehrhart Decl. at ¶ 18.  Then in August

14  2021, members of the Real USFL again raised concerns with Fox, through the USFL's

15  former attorney.  *Id.* at ¶ 19.  Fox dismissed the concerns, and despite changing the

16  Press Release, Fox exacerbated the situation by, among other things, announcing that

17  it would be using original USFL team names and logos as well.  *Supra* at 8-10.  Fox

18  even connected its teams with the old teams while announcing the new team names.

19  *Id.*  The result has been continued confusion in the media and among fans.  *Id.*

20       To make matters worse, Fox's attorneys sought to intimidate Real USFL's

21  licensee and threatened Mr. Ehrhart with personal liability—knowing all along that

22  these threats were frivolous.  Equity does not favor a blatant infringer, much less one

23  that seeks to bully its way out of trouble.  Nothing less than an injunction barring the

24  use of the Real USFL's marks and history will remedy the damage Fox has caused.

25  **D.**    **The Public Interest Favors Entering the Preliminary Injunction**

26       Courts have long recognized that enforcing the Lanham Act serves important

27  public policies and "[t]he public interest favors a preliminary injunction where, as

28  here, the plaintiff has shown a likelihood of confusion."  *Fiji Water Co., LLC v. Fiji*

*Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1183 (C.D. Cal. 2010). Here, no less than the ordinary case, an injunction is in the public interest. In *AECOM*, the Ninth Circuit affirmed the finding that "an injunction serves the public interest" by "discourage[ing] the deceptive practices in which Defendants engaged here." 748 Fed. Appx. at 120. Fox is actively promoting its league under false pretenses to enrich itself and has deceived thousands of fans across the country about the nature of its products and services. Stopping Fox's misconduct is squarely in the public interest.

**E.      Any Bond Should Be Minimal**

Rule 65(c) of the Federal Rules of Civil Procedure requires that the Real USFL post a bond before the issuance of a preliminary injunction, "in such sum as the court deems proper," for the payment of any costs or damages [Fox Sports] may incur from a potentially "wrongful" injunction. *See* Fed. R. Civ. P. 65(c). But the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). Moreover, when a large company infringes a smaller company's trademark, the court should limit bond to avoid the "risk [of] denying [the smaller company] access to judicial review." *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000).

Here, Defendants will not be harmed by a preliminary injunction because Defendants will not be restrained from using non-infringing marks to promote their businesses. The potential harm is especially minimal here where Fox's league has not yet played any games. Moreover, because the Real USFL's likelihood of succeeding on the merits at trial is high, the likelihood of a "wrongful" injunction is correspondingly low. If the Court requires a bond at all, it should be in the amount of no more than $1,000.00.

McKool Smith Hennigan, P.C.
Los Angeles, CA

McKool Smith Hennigan, P.C.
Los Angeles, CA

## <u>CONCLUSION</u>

For the foregoing reasons, the Real USFL respectfully requests that the Court immediately cease Defendants' fraudulent and intentionally deceitful conduct and grant the Real USFL's motion for a preliminary injunction.

DATED: March 2, 2022          **MCKOOL SMITH HENNIGAN, P.C.**

By: */s/ Kirk D. Dillman*
       Kirk D. Dillman
       *Attorneys for Plaintiff The Real USFL, LLC*