DAVID H. BERNSTEIN (CA Bar No. 336551)
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Tel: (415) 738-5700
Fax: (415) 644-5628
Email: dhbernstein@debevoise.com

Attorneys for Defendants
USFL Enterprises, LLC and The Spring League, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REAL USFL, LLC, a New York limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> FOX SPORTS, INC., a Delaware corporation, THE SPRING LEAGUE, LLC, a Delaware limited liability company, and USFL ENTERPRISES, LLC, a limited liability company, <br><br> Defendants. | CASE NO. 22-cv-01350-JFW-MAR <br><br> **DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE** <br><br> Complaint Filed:  February 28, 2022 <br> Complaint Served:  March 2, 2022 <br> Conference of Counsel:  March 10, 2022 |

DECLARATION OF DAVID H. BERNSTEIN RE LOCAL RULE 7-3 CONFERENCE

## DECLARATION OF DAVID H. BERNSTEIN

I, David H. Bernstein, declare as follows:

1.  I am a partner with the law firm Debevoise & Plimpton LLP, attorneys of record for Defendants USFL Enterprises, LLC and The Spring League, LLC (referred to together as "Defendants").  I am Lead Trial Counsel for USFL Enterprises, LLC and The Spring League, LLC in the above-captioned matter.  I am duly admitted to practice law in the State of California and in the United States District Court for the Central District of California.

2.  I submit this declaration in a good faith attempt to comply with Section 5(b) of this Court's Standing Order issued on March 3, 2022, pertaining to the Local Rule 7-3 meet and confer requirements, and this Court's Order issued on March 8, 2022 (Dkt. 44).

3.  The parties held a meet and confer conference on March 4, 2022.  In accordance with the Court's March 8, 2022 order, the parties held a second Joint Pre-Filing Conference (the "Conference") on March 10, 2022.  Because the parties' lead counsel are not located in the same county in the Central District, counsel met via video conference.  The Conference began at approximately 8:00 a.m. PST and ended at approximately 10:38 a.m. PST, lasting approximately 2 hours and 38 minutes.  The participants in the Conference were Nicholas Matich, Laura Baron, Mason Storm Byrd, and Thomas Eiswerth of McKool Smith, and Zeke DeRose, III and Alex Brown of The Lanier Law Firm on behalf of Plaintiff, The Real USFL, LLC; for Defendants USFL Enterprises, LLC and The Spring League, LLC, I participated along with Michael

1

1  Schaper, Jared Kagan, Matthew Petrozziello, and Marissa MacAneney of Debevoise &

2  Plimpton LLP.

3       4.  As I explained to Plaintiff's counsel during the Conference, Defendant Fox

4  Sports, Inc. (a Delaware corporation) is not associated with Defendants and is not a party

5  known to Defendants.  As I further explained, the parties responsible for the conduct

6  alleged in the complaint are The Spring League, LLC, which owns the trademarks at

7  issue, and USFL Enterprises, LLC, the exclusive licensee of those trademarks.  USFL

8  Enterprises, LLC has launched a new football league under the names "United States

9  Football League" and "USFL," and is offering related goods and services.  Plaintiff has

10  apparently sued the Delaware entity called Fox Sports, Inc. on the mistaken belief that it

11  is associated with the Defendants, but it is not.  Defendants subsequently notified

12  Plaintiff that, in addition to not being affiliated with Defendants, Fox Sports Inc. is

13  identified by Delaware Secretary of State documents as having a status of "void, AR's, or

14  Tax Delinquent" since 1999.

15       5.  During the Conference, Plaintiff's counsel discussed Plaintiff's intention to

16  re-file a motion for a preliminary injunction, seeking to enjoin Defendants from using the

17  name "United States Football League" and "USFL" for its new football league (the "New

18  League") and from using various other team names and logos in which Plaintiff claims

19  rights, based on its members' association with the long defunct football league of the

20  1980s (the "Old League").  The teams that played in the Old League are referred to

21  herein as the "Old Teams."

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

6.   Defendants explained to Plaintiff why the preliminary injunction has no prospect for success.  Plaintiff—a new entity that was formed just days before the Complaint was filed—purports to be the assignee of trademark rights from the Old League.  But as the public record makes clear, and as Defendants repeatedly have explained, the Old League's rights were abandoned and extinguished more than 35 years ago when the Old League went defunct, ceased all games, ceased all use of its trademarks, and was dissolved.  Although Plaintiff's principals claimed that they were the successors to those trademark rights and that they have assigned those rights to Plaintiff, the public record proves otherwise.  The United States Patent and Trademark Office ("USTPO") records show that the trademark registrations for The Old League and Old Teams were owned by the Old League.  The Old League's trademarks were never assigned to the Old Teams (which themselves also were dissolved decades ago) and were never assigned to the owners of the Old Teams.  It is thus indisputable that the owners of the Old Teams, who purported to assign the Old League and Old Team trademarks to Plaintiff, had no rights to assign.

7.   In contrast, Defendants are the owners of all of the relevant trademark rights. In 2011, a group named United States Football League LLC ("USFL LLC") tried to restart USFL football.  In furtherance of its plans, it applied to register USFL for football entertainment and apparel, and pursued plans to bring USFL football back to the market. USFL LLC ultimately sold its trademark rights, which were eventually purchased by The Spring League, LLC.  Notably, none of Plaintiff's principals ever objected to, or

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

otherwise challenged, USFL LLC's very public efforts to bring back USFL football, never challenged USFL LLC's sale of USFL apparel, and never opposed USFL LLC's trademark registrations for USFL.

8.   Today, Defendant The Spring League, LLC is the assignee of those trademark registrations, which are incontestable and have priority dating back to March 2011.  In partnership with Defendant USFL Enterprises LLC, The Spring League, LLC is bringing the USFL brand back to the market.  Defendants have invested millions of dollars launching the new football league, and have drafted hundreds of players; hired executives, coaches, trainers, announcers and other staff; advertised extensively; entered into broadcasting agreements; partnered with major businesses; sold tickets; and prepared for kickoff in just five weeks.  Plaintiff's eleventh-hour attempt to extract value from the exciting new football league is frivolous.

9.   As detailed below, the following issues were discussed in detail during the Conference:  (1) the abandonment of all trademark rights previously associated with the Old League; (2) Defendants' ownership of valid and protectable trademark rights, including incontestable federal trademark registrations for the trademark USFL, for use in connection with football games and apparel; (3) the source of Plaintiff's purported trademark rights; (4) Plaintiff's assertion that it will be irreparably harmed if an injunction does not issue and the balance of the parties' respective hardships; and (5) the public's interest in the New League proceeding with its games on schedule.

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

***The Abandonment of All Trademark Rights Associated with a Football League That Ceased Operations in 1986***

10.  The parties discussed the source of Plaintiff's purported trademark rights at length.  Defendants' counsel explained the numerous defects in Plaintiff's claims, beginning with the abandonment of the Old League's trademark rights in the 1980s.

11.  Defendants' counsel asked Plaintiff's counsel to clarify the source of Plaintiff's purported trademark rights.  Plaintiff's counsel repeatedly stated that Plaintiff traces its purported trademark rights back to the Old League in the 1980s.

12.  Plaintiff's counsel acknowledged that the Old League is defunct, and that the Old League (not the Old Teams or any of the Old Teams' principals) owned the trademark rights that Plaintiff now seeks to enforce.  Plaintiff's counsel further conceded that the Old League never assigned its trademark rights to the Old Teams or to the owners of the Old Teams, and also conceded that the Old League and the Old Teams all were dissolved decades ago.

13.  Given the foregoing, Defendants' counsel explained that the Old League abandoned its trademark rights decades ago when it ceased football activities and allowed its trademark registrations to be declared "Dead" by the USTPO.  Thereafter, as a matter of law, any third party was free to pick up the Old League's abandoned trademark rights; it was Defendants, however, not Plaintiff, who secured these trademark rights through USPTO registrations, applications, and uses.

5

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

14.  Plaintiff itself was only formed on February 22, 2022, and the purported assignments of rights to Plaintiff were executed between February 22–28, 2022, in the days leading up to Plaintiff's filing of the Complaint.  Because the trademarks owned by the Old League were abandoned and because the Old League ceased to exist decades ago, no rights existed that could have been assigned to Plaintiff.  The purported assignments that Plaintiff submitted with its first motion for a preliminary injunction stating that the Old Teams owned the Old League's trademark rights are false on their face; moreover, there is no evidence that the signatories to those assignments are the successors to, or otherwise acquired, the Old League's abandoned trademark rights.

15.  Plaintiff's counsel disagreed and asserted that the Old League's trademark rights were never abandoned.  Plaintiff's counsel claimed that the Old League put Mr. Ehrhart in charge of "[Old] League affairs," which Plaintiff alleges includes trademark rights.  Plaintiff's counsel conceded, however, that Plaintiff did not have a document assigning rights from the Old League to Mr. Ehrhart.

16.  Plaintiff's counsel likened the Old League's trademark rights to real property that could "pass down" to a successor of the Old League following dissolution. Defendants' counsel explained that trademark rights are distinct from real property rights because such rights are based on use, and reiterated that the Old League's marks were abandoned as a matter of statutory trademark law.  Defendants' counsel explained that once the Old League went defunct and ceased use, without an intent to resume use, its trademark rights were automatically extinguished, and that, in any event, the law

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

1    presumes abandonment once there is no use for three years.  Plaintiff's counsel conceded

2    that no use of the marks had been made for at least a decade (during the 1990s), which

3    means that the marks were abandoned both as a matter of fact, when the league ceased

4    used without intent to resume use, and by presumption under the law.  However, even

5    though Plaintiff did not allege use of the trademarks during the 1990s or early 2000s, and

6    Plaintiff could not provide any evidence of use during those time periods, Plaintiff's

7    counsel refused to concede that the marks were abandoned.

8        17.  In support of its argument that the trademark rights owned by the Old

9    League were not abandoned, Plaintiff's counsel asserted its reliance on *AECOM Energy

10   & Constr., Inc. v. Ripley*, No. 217CV05398RSWLSS, 2017 WL 4326373, at *4 (C.D.

11   Cal. Sept. 28, 2017), *aff'd sub nom.*, 748 F. App'x 115 (9th Cir. 2018), and asked

12   Defendants' counsel to explain Defendants' position on this case.

13       18.  Defendants' counsel explained that the facts in *AECOM* were different

14   from the facts here.  In *AECOM*, the plaintiff had not abandoned the mark at issue and

15   was still using it in its promotional materials and to promote its corporate history at the

16   time the defendant started using the mark in conjunction with images of plaintiff's

17   construction projects to sell the defendant's own products and services.  Defendants'

18   counsel explained that, unlike in *AECOM*, the Old League abandoned any trademark

19   rights it once had, and that Defendants are not purporting to be Plaintiff or to be the Old

20   League, and in fact, are expressly disclaiming any affiliation with the Old League.  The

21   parties disagreed on the relevance of *AECOM* to this case.

7

19.  Plaintiff's counsel also discussed its reliance on *Peter Luger Inc. v. Silver Star Meats Inc.*, No. CIV.A.01-1557, 2002 WL 1870066, at *15 (W.D. Pa. May 17, 2002), and asked Defendants' counsel to explain Defendants' position on this case.

20.  Defendants' counsel explained that *Peter Luger*, and its controversial concept of "residual good will," is not good law in the Ninth Circuit.  Defendant directed Plaintiff to *California Cedar Prods. v. Pine Mountain Corp.*, 724 F.2d 827, 830 (9th Cir. 1984) which states that "[t]he first party to use an abandoned trademark in a commercially meaningful way after its abandonment, is entitled to exclusive ownership and use of that trademark."  Plaintiff's counsel was not familiar with this case.

21.  Even assuming *Peter Luger* was good law in the Ninth Circuit, as Plaintiff's counsel argued, Defendants' counsel directed Plaintiff to paragraph 39 of *Peter Luger*, which explained that the prior owner of the trademark rights at issue assigned those rights to the plaintiff before it went defunct.  In contrast, the Old League went out of business in 1986 without assigning any of its rights before those rights became abandoned.  The parties continue to disagree over the applicability of *Peter Luger* to this case.

22.  The parties were unable to resolve the issue of whether Plaintiff holds relevant trademark rights dating back to the 1980s.

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

***Defendants' Ownership of Valid and Protectable Trademarks Associated with Its New Football League***

23.  Defendants' counsel explained the basis for, and the strength of, Defendants' trademark rights and why these incontestable rights foreclose Plaintiff's likelihood of success on the merits.

24.  Specifically, Defendants' counsel explained, and Plaintiffs' counsel conceded, that The Spring League, LLC owns incontestable federal trademark registrations in "USFL."   Pursuant to 15 U.S.C. § 1115, incontestable registrations are "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."  This means that The Spring League, LLC is the conclusive owner of this registration, and Plaintiff's competing claims that it is the real owner cannot be accepted or even considered as a matter of law.

25.  Defendants' counsel also cited Defendants' pending trademark applications for a number of team names and logos, filed in 2021.  Defendants' counsel explained that they expect these applications to mature into registration in due course.  Defendants' counsel explained that these trademark rights provide Defendants with the necessary rights to launch the New League.

26.  In response, Plaintiff's counsel asserted that, based on its purported "use" of the trademarks in connection with apparel, book and film licenses, Plaintiff owns common law trademark rights senior to Defendants' marks, which should result in the

9

1   cancellation of Defendants' trademark registrations.  Plaintiff's counsel also accused

2   Defendants of engaging in intentional fraud, and seemingly tried to argue that Defendants

3   held themselves out as the Old League which misrepresents the source of Defendants'

4   goods and services.  Defendants' counsel explained that Plaintiff's purported trademark

5   rights are unsupported and that Defendants have not represented themselves as the Old

6   League to the USPTO, or to anyone else, and in fact, have expressly disclaimed any

7   affiliation with the Old League.  Therefore, Plaintiff's claim for trademark cancellation

8   fails.

9         27.  At Plaintiff's counsel's request, Defendants identified March 2011 as the

10   priority date for their USFL trademark registrations and January and June 2021 as the

11   priority dates for their trademark applications in various team names and logos, should

12   those pending applications mature into registrations.

13   ***Plaintiff's Allegations Fail to Establish Trademark Rights***

14         28.  The parties then discussed Plaintiff's alternative position, that the

15   trademark rights it acquired rights from Mr. Ehrhart were based on new uses of the

16   relevant trademarks by three parties to whom Mr. Ehrhart purported to grant licenses:

17   (*i*) American Classics (an apparel distributor, who allegedly began selling USFL apparel

18   in the fall of 2011); (*ii*) Ken Dunek (a filmmaker, who allegedly licensed the marks from

19   Mr. Ehrhart in 2008 and released a promotional trailer in 2010 but has never released a

20   film); and (*iii*) Paul Reeths (an author who allegedly licensed the marks from Mr. Ehrhart

21   in 2016 and published a single book about the Old League).  In response to Defendants'

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

counsel's express request that Plaintiff identify the goods and services in connection with which Plaintiff claims to own trademark rights, Plaintiff's counsel specifically identified only apparel, books, and films.  Plaintiff's counsel would not take a position on whether Plaintiff owns trademark rights in football games, events, or entertainment.

29.  Defendants' counsel proceeded to explain fatal flaws in Plaintiff's position that its licensing arrangements conferred trademark rights.  Defendants' counsel explained that Plaintiff did not acquire trademark rights in "USFL," "United States Football League," or any team names or logos, because Mr. Ehrhart never possessed any rights to license to third parties in the first place.

30.  With respect to the American Classics' apparel license, Defendants' counsel pointed out that Mr. Ehrhart deleted a provision in the license agreement representing that Mr. Ehrhart owned "all rights necessary to enter into th[e] Agreement," as well as a provision indemnifying American Classics for "judgements arising out of [its] authorized use of any said rights."  Defendants' counsel further explained that, although Mr. Ehrhart claims to have collected revenue paid in connection with that license since 2011 in the name of the "United States Football League," no such entity associated with Mr. Ehrhart existed in 2011 and no such entity exists today.  Defendants' counsel specifically asked Plaintiff how Mr. Ehrhart reported this revenue to the IRS, but Plaintiff's counsel was unaware of the answer, refused to request this information, and stated that the information is irrelevant.  Defendants' counsel explained why it was relevant:  that it would show what entity or person Mr. Ehrhart was claiming was the

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

owner of these rights and was entitled to the licensing revenue.  It would also allow

Defendants to explore how that entity acquired its alleged rights, whether that entity

protected those rights and how (if at all) that entity transferred those rights to Plaintiff.

Despite that explanation, Plaintiff's counsel persisted in the position that this information

is irrelevant and refused to respond to Defendants' counsel's inquiry.

31.  Defendants' counsel also explained that, under relevant trademark law,

American Classics' sale of apparel with screen printings of abandoned logos and team

names from a long defunct football league constitute merely "ornamental use," which

does not confer trademark rights.  Plaintiff's counsel disagreed but provided no authority

for its position that the ornamental display of a large retro logo on the front of a shirt is a

trademark use.  Plaintiff's counsel instead tried to turn the tables and ask how

Defendants' use of logos on its shirts were trademark uses, but Defendants' counsel noted

that they have not claimed any trademark rights based on their uses to date.  Rather,

Defendants' trademark rights in the team names arise from their pending 2021 trademark

applications.  Trademark rights in connection with apparel are created by using marks on

neck labels, on hang tags or on the breast portion or pocket of a shirt.  *See generally*

TMEP § 1202.03(a) ("[A] small, neat, and discrete word or design feature (e.g., small

design of animal over pocket or breast portion of shirt) may be likely to create the

commercial impression of a trademark, whereas a larger rendition of the same matter

emblazoned across the front of a garment (or a tote bag, or the like) may be perceived

merely as a decorative or ornamental feature of the goods.").  Defendants' counsel

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

1    expressly asked whether Plaintiff's alleged licensee ever used team names or logos in any

2    of those ways; Plaintiff's counsel said he was not aware of any such use, but refused to

3    say one way or the other whether Plaintiff was claiming to have made such use.

4          32.   The parties next discussed Plaintiff's assertion of rights stemming from

5    book licensing.  Defendants' counsel asked Plaintiff to identify priority dates for

6    Plaintiff's purported trademark rights in books; Plaintiff's counsel stated that it was

7    unsure of the date.  Defendants' counsel asserted that a license is not required to write a

8    book about the Old League (or about any sports league for that matter) and that the use of

9    a trademark on a single book cannot give rise to trademark rights.  Plaintiff's counsel

10   responded he did not necessarily agree and that, since discussions about the book began

11   years prior, Plaintiff may assert an earlier priority date than the release date of the book in

12   2016.  Defendants' counsel explained that pre-publication discussions do not constitute

13   "use in commerce" that gives rise to trademark rights and, in any event, Defendants'

14   incontestable trademark registrations have priority over any purported rights stemming

15   from such license.  Plaintiff's counsel disagreed and continued to assert that the book

16   gave rise to trademark rights.

17         33.   The parties next discussed Plaintiff's purported rights arising from film

18   licensing.  When Defendants' counsel asked about Plaintiff's priority date for Plaintiff's

19   purported trademark rights in film, Plaintiff relied on the license from Mr. Ehrhart to Mr.

20   Dunek on "Sports Consultants, Inc." letterhead in April 2008.

21

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

34.   Defendants' counsel explained that, similar to the book, the license to Mr. Dunek is irrelevant because no trademark license is required to make a film about the subject of the trademark.  Further, the license was a "naked license" because it lacks any quality control measures, which invalidates any claimed rights.  Plaintiff's counsel conceded that the written license did not include any quality control measures and argued instead that the working relationship between Mr. Ehrhart and Mr. Dunek constituted a quality control system.  Defendant's counsel further explained that because the film was never released, the purported licensed marks were not used in commerce in a manner that can give rise to trademark rights.  Additionally, Defendants' incontestable registrations have priority over any purported rights stemming from such license.

35.   Plaintiff's counsel also claimed priority based on the one-time release of a 232-second promotional trailer in 2010 for the nonexistent film, but pointed to no evidence that the trailer was used in commerce and no evidence that the use of the trailer in 2010 continued in any way.  Even if the 2010 trailer was a trademark use, the fact that Plaintiff's purported licensee has not released anything in the twelve years since signing the agreement would constitute abandonment.

36.   Plaintiff's counsel also conceded that Plaintiff received no revenue at all from the book or film license.  Further, Plaintiff's alleged apparel licensee has provided royalty statements showing a total of $5,451.45 in royalty payments were made to Mr. Ehrhart from January 2019 to September 2021.  As discussed below, Plaintiff claims that its loss of this revenue (because American Classics has discontinued its sales once it

1   learned of The Spring League's trademark registrations) is harm it is suffering by virtue

2   of Defendants' launch of its New League, but the loss of that licensing revenue is hardly

3   irreparable harm that justifies entry of a preliminary injunction.

4        37.   Plaintiff claims Defendants are hijacking the history of the Old League and

5   appropriating the identity of the Old League and that this will harm Plaintiff even though

6   Plaintiff's counsel admitted that Plaintiff does not have a football league, no football

7   league associated with the Old League has existed for decades, and Plaintiff has no plans

8   to develop a football league in the future.

9        38.   There is a fundamental disagreement over validity and ownership of the

10   relevant trademarks.  Throughout this discussion, each party was firm in its contentions,

11   and the parties were unable to reach agreement to narrow the issues.

12   ***Plaintiff's False Advertising and False Association Claims***

13        39.   Separate from the trademark claims, Plaintiff has asserted claims for false

14   advertising and false association.  Plaintiff's counsel asserted that the issue of

15   abandonment with regard to trademarks is irrelevant to such claims.

16        40.   Plaintiff claims that Defendants are falsely associating the New League

17   with the Old League and appropriating the Old League identity to confuse consumers into

18   believing that Plaintiff is the source of Defendants' new football league.  Defendants'

19   counsel explained that such a claim was baseless.  First, Plaintiff's standing to bring such

20   claims faces serious challenges as Plaintiff has not demonstrated that it has an interest in

21

1    the marks.  Second, Plaintiff has not and cannot demonstrate that it is likely to be injured

2    as a result of any false statement made by Defendants.

3          41.  Plaintiff, relying on statements by Defendants and by the media which

4    indicate that the USFL is returning or is "back," asserted that consumers are confused and

5    such confusion is likely to injure Plaintiff.  At Plaintiff's counsel's request, Defendants'

6    counsel explained that Defendants' use of the USFL marks and team marks do not

7    constitute false advertising and that Plaintiff's claim of confusion is based on its

8    conflation of the Old League brand with the Old League entity.  The New League cannot

9    be confused with the Old League because the Old League has not existed as an entity for

10   decades.  Plaintiff does not allege, and has provided no evidence, that consumers will

11   confuse the New League with, or associate the New League with, Mr. Ehrhart or

12   Plaintiff's principals.  Defendants' counsel explained that Defendants are bringing back

13   the USFL brand as part of the New League and that there is no actionable confusion with

14   *Plaintiff* or any purported rights owned by Plaintiff.

15         42.  Plaintiff's counsel relied on allegations that fans of the Old League have

16   started to bring out their football jerseys that were once associated with the Old League,

17   and exclaiming excitement about the new football league.  However, Defendants' counsel

18   explained that these instances are simply fans excited about the *brand* coming back, not

19   confusion as to whether the new football league is coming from the owners of the Old

20   League.

21

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

*Plaintiff's Claim That It Will Be Irreparably Harmed If an Injunction Does Not Issue*

43.  Defendants' counsel next explained that Plaintiff is unable to show it will suffer irreparable harm without an injunction.  When Defendants' counsel asked Plaintiff's counsel to identify the harms Plaintiff would suffer, Plaintiff's counsel cited loss of licensing revenue through apparel sales and loss of potential new licenses. Defendants' counsel explained that those harms can be remedied through monetary damages and do not constitute irreparable harm.  Defendants' counsel noted that any purported harm to Plaintiff's rights to license apparel can easily be quantified based on the terms of the license agreements and prior sales, which averaged less than $500 per quarter in royalties.

44.  Defendants' counsel also explained that any case for irreparable harm is belied by Plaintiff's dilatory approach to seeking injunctive relief.  Defendants' counsel explained that Plaintiff waited until the eleventh hour to seek relief in an attempt to cause maximum disruption on the eve of the launch of Defendants' new football league. Defendants announced their planned launch of a new football league in June 2021, and Mr. Ehrhart concedes that he knew about Defendants' announcement on June 3, 2021, more than nine months before Plaintiff filed its motion for a preliminary injunction. Plaintiff's members did not form Plaintiff until February 22, 2022 and waited until the eve of the New League's launch before it filed a complaint and sought injunctive relief.

45.  Plaintiff's counsel conceded that Plaintiff is seeking injunctive relief nine months after the announcement of the New League, and four months following the

17

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

1  announcement of the new team names.  Plaintiff's counsel argued that Plaintiff's dilatory

2  behavior was excused, citing a phone call Mr. Ehrhart allegedly made to Fox Corporation

3  shortly after the June 2021 announcement of the New League, as a result of which Mr.

4  Ehrhart had expected that the parties would pursue a settlement without litigation.  There

5  were no meaningful or productive settlement discussions in the interim, and Plaintiff's

6  delay undermines any claim of irreparable harm.  Defendants' counsel also explained

7  that, throughout Defendants' correspondence with Plaintiff's principals during those nine

8  months, Plaintiff's principals repeatedly refused to provide any evidence of their

9  purported trademark rights, despite Defendants' multiple requests.

10  46.  The parties were unable to resolve the issue of whether Plaintiff will suffer

11  irreparable harm absent a preliminary injunction.

12  ***The Balance of Equities Associated with a Preliminary Injunction***

13  47.  Plaintiff's counsel asserted that Plaintiff's purported rights trump any

14  investment Defendants have made in the New League and that Plaintiff's licensing

15  arrangement with American Classics is in jeopardy, so the balance of equities favor

16  Plaintiff.

17  48.  Defendants' counsel reiterated the extensive investment Defendants have

18  made in the New League.

19  49.  Defendants have invested millions of dollars to develop the New League

20  under its trademarks, including by entering into broadcasting, stadium, and apparel deals;

21  conducting a national advertising campaign on television, the Internet, and social media;

18

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

1    hiring high-profile league executives and head coaches; hiring hundreds of assistant

2    coaches, trainers, equipment staff, and other staff; and entering into a variety of business

3    partnerships and relationships with advertisers.

4        50.  Among other business partnerships, Defendants have entered into a high-

5    profile, multi-year media deal with NBC to broadcast USFL games (some games also

6    will be broadcast on FOX).  Tens of millions of viewers are expected to tune in for New

7    League games in 2022, including the inaugural game on April 16, which is just five

8    weeks away and is the first sporting event scheduled to air on competing broadcast

9    networks (FOX and NBC) since Super Bowl I in 1967.

10       51.  Defendants also held the New League's inaugural draft on February 22–23,

11   2022, drafting 280 players to the New League's eight teams and offering them contracts

12   guaranteeing a salary, low-cost housing, and a tuition-free college program; a

13   supplemental draft was held on March 10, 2022.  Players are scheduled to report to

14   training camp in just seven days, on March 21, 2022.

15       52.  The parties remained firm in their contentions and were unable to narrow

16   the issue of the balance of equities.

17

18

19

20

21

19

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

***The Public's Interest in The League Proceeding***

53.  Plaintiff's counsel asserted that the public interest favors a preliminary injunction because Plaintiff has demonstrated a likelihood of confusion and shown that Defendants have "deceived thousands of fans across the country."

54.  Defendants' counsel reiterated that Plaintiff has not demonstrated a likelihood of confusion and that denying an injunction is squarely in the public interest.

55.  If Defendants are enjoined and are unable to hold the 2022 USFL season, the city of Birmingham, Alabama (where most games are scheduled to be played) will lose significant economic revenue; the New League's players' lives would be profoundly disrupted because their salaries and bonuses are predicated on the players being on active rosters, participating in training camp, and winning games; and people would lose their employment, including players, stadium workers, and team staff.

56.  In addition, NBC, which has made a significant financial investment in obtaining broadcasting rights to United States Football League games, would be harmed as it would lose advertising revenue and would be forced to modify its prime-time television schedules across its various networks, just weeks or even days before the games are scheduled for broadcast.

57.  Moreover, consumers who have purchased tickets to USFL games or USFL-branded apparel, or are planning to watch USFL football on television would be harmed; the new league's business partners, including Ticketmaster, concessions

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE

vendors, mascot vendors, and apparel distributors, all of whom have invested significant money and planning into the upcoming season, would be harmed.

58.  In response, Plaintiff's counsel reiterated its position that any use by Defendants of the USFL or team marks is confusing and therefore against the public interest.

59.  The parties were unable to resolve the potential public interest impact of a preliminary injunction.

***Issues Resolved and Issues Remaining***

60.  Although the parties clarified their respective positions, they were unable to come to agreement or narrow any of the claims or defenses.  Plaintiff plans to re-file its motion for a preliminary injunction, as the issues discussed were not resolved at the Conference.  So long as Plaintiff maintains its positions discussed during the Conference, Defendants do not believe that these issues can be resolved by further conference.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 14th day of March 2022, at Kapalua, Hawaii.


                */s/ David H. Bernstein*
                David H. Bernstein

DECLARATION OF DAVID H. BERNSTEIN REGARDING LOCAL RULE 7-3 CONFERENCE