Kirk Dillman (SBN 110486)
kdillman@mckoolsmithhennigan.com
M. Storm Byrd (SBN 319387)
sbyrd@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Nicholas T. Matich (admitted *pro hac vice*)
nmatich@mckoolsmith.com
MCKOOL SMITH P.C.
1999 K Street, NW, Suite 600
Washington, DC 20006

Mark Lanier (admitted *pro hac vice*)
wml@lanierlawfirm.com
Alex J. Brown (admitted *pro hac vice*)
alex.brown@lanierlawfirm.com
Zeke DeRose III (admitted *pro hac vice*)
THE LANIER LAW FIRM
6810 FM 1960 West
Houston, TX 77069

*Attorneys for Plaintiff*
*The Real USFL, LLC*

*Additional counsel on the inside page*

*McKool Smith Hennigan, P.C.*
*Los Angeles, CA*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REAL USFL, LLC, a New York limited liability company,<br><br>                    Plaintiff,<br><br>   v.<br><br>FOX SPORTS, INC, a Delaware corporation; THE SPRING LEAGUE, LLC, a Delaware limited liability company; USFL ENTERPRISES, LLC, a Delaware limited liability company; FOX CORPORATION, a Delaware corporation; FOX SPORTS 1, LLC, a Delaware limited liability | Case No. 2:22-cv-1350-JFW (MARx)<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      April 18, 2022<br>Time:     1:30 p.m.<br>Crtrm:    7A<br>The Honorable John F. Walter<br>Trial Date: not set |

1  company; FOX SPORTS 2, LLC a
2  Delaware limited liability company;
   FOX SPORTS HOLDINGS, LLC a
3  Delaware limited liability company;
4  FOX SPORTS PRODUCTIONS, LLC
   a Delaware limited liability company;
5  FOXCORP HOLDINGS, LLC a
6  Delaware limited liability company;
   FOX MEDIA LLC, a Delaware
7  limited liability company; FOX
8  SPORTS INTERACTIVE MEDIA,
   LLC a Delaware limited liability
9  company,

10                          Defendants.

11

12  Joseph O. Slovacek (admitted *pro hac vice*)
    slovacek@hooverslovacek.com
13  Hoover Slovacek LLP
    Galleria Tower II
14  5051 Westheimer, Suite 1200
    Houston, TX 77056
15
    Eric B. Halper (admitted *pro hac vice*)
16  ehalper@mckoolsmith.com
    John C. Briody (admitted *pro hac vice*)
17  jbriody@mckoolsmith.com
    Radu A. Lelutiu (admitted *pro hac vice*)
18  rlelutiu@mckoolsmithlcom.com
    Laura Baron (admitted *pro hac vice*)
19  lbaron@mckoolsmith.com
    MCKOOL SMITH P.C.
20  395 Ninth Avenue, 50th Fl.
    New York, NY 10001
21
    Thomas J. Eisweirth (admitted *pro hac vice*)
22  teisweirth@mckoolsmith.com
    MCKOOL SMITH P.C.
23  600 Travis Street
    Suite 7000
24  Houston, TX 77002

25

26

27

28

McKool Smith Hennigan, P.C.
Los Angeles, CA

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on April 18, at 1:30 p.m. in Courtroom 7A of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable John F. Walter presiding, plaintiff The Real USFL, LLC ("Real USFL") will and hereby moves for a Preliminary Injunction and related relief pursuant to Federal Rules of Civil Procedure Rule 65 against defendants Fox Sports, Inc., The Spring League, LLC, USFL Enterprises, LLC, Fox Corporation, Fox Sports 1, LLC, Fox Sports 2, LLC, Fox Sports Holdings, LLC, Fox Sports Productions, LLC, Foxcorp Holdings, LLC, Fox Media, LLC, Fox Sports Interactive Media, LLC (collectively, "Defendants") restraining and enjoining Defendants, their agents, servants, employees and attorneys, and all those in active concert or participation with them, pending the entry of final judgment in this action, from:

1.  Registering, owning, leasing, selling, trafficking or using the name or words "United States Football League," "USFL," or other marks listed in Exhibit 1 to the Declaration of Kirk D. Dillman (collectively, "USFL IP"), in whole or in part, however spelled, whether capitalized, abbreviated, singular or plural, printed or stylized, whether used alone or in conjunction with any word or words, and whether used in caption, text, orally, or otherwise, or any derivative thereof, or any mark or logo which is confusingly similar to the USFL IP in connection with any business, product marketing campaign or Internet domain name, including the infringing websites www.theusfl.com, or as a trademark, trade name, logo, or service mark;

2.  Infringing the USFL IP or otherwise unfairly competing with the Real USFL;

3.  Using, reproducing, advertising or promoting any slogan, mark, or name

that may be calculated to represent that the products or services of Defendants or any other person are sponsored by, authorized by, or in some way associated with the Real USFL;

4. Using or reproducing any word, term, name, or symbol, or any combination thereof, on any product or in connection with any service that confuses or falsely represents or misleads, is calculated to confuse, falsely represent, or mislead, or that has the effect of confusing, falsely representing, or misleading, that the products, services, or activities of Defendants or another are in some way connected with the Real USFL, or are sponsored, approved, or licensed by the Real USFL;

5. Inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts;

6. Passing off to the public that Defendants' businesses, goods, or services are those of or authorized by the Real USFL; and

7. Engaging in any other conduct that will cause, or is likely to cause confusion, mistake, deception, or misunderstanding as to the affiliation, connection, or association or origin, sponsorship, or approval of their businesses, goods, or services with or by the Real USFL, or that is likely to dilute the connection between the Real USFL and the USFL IP.

This motion is made on the grounds that immediate and irreparable injury will result to the Real USFL unless and until the activities described above are enjoined pending trial of this action, that the Real USFL has no adequate or reasonable remedy at law, the balance of equities highly favors the Real USFL, and that maintaining the status quo creates no prejudice or other harm to Defendants.

This motion is made based on this Notice of Motion and Motion for Preliminary Injunction, the accompanying Memorandum of Points and Authorities, the declarations of Jerry Argovitz, David E. Brown, Steve Ehrhart, Kirk D. Dillman,

McKool Smith Hennigan, P.C.
Los Angeles, CA

Anthony Duany, Ken Dunek, Paul Reeths, Stephen Strauss, Tad Taube, and Robert Taubman, the proposed order submitted herewith, the argument of counsel, and such other and further argument, evidence, and documents as may be presented at the hearing of this motion.

This motion is made following the conferences of counsel pursuant to L.R. 7-3, this Court's Standing Order, and this Court's text order (Dkt. No. 44) which occurred on March 10, 2022.

Dated: March 17, 2022        **MCKOOL SMITH HENNIGAN, P.C.**

By: _  /s/ Kirk D. Dillman_
Kirk D. Dillman
*Attorneys for Plaintiff The Real USFL, LLC*

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT...................................................................1

STATEMENT OF FACTS........................................................................3

    A.    The Real USFL ......................................................3

    B.    The USFL After 1986 .............................................3

        1.    Apparel Licensing..........................................4

        2.    Reunions ...................................................4

        3.    Book Licensing.............................................5

        4.    Film Licensing .............................................5

    C.    The Provenance of Fox's Claimed USFL Marks.................6

    D.    Fox Launches its Counterfeit League .........................7

    E.    The Original USFL Owners Push Back.........................8

    F.    Fox Claims to Want a USFL Owner Endorsement then Threatens Litigation .......................................................9

    G.    The Real USFL Steps In .....................................10

    H.    Fox Sports Moves ahead with the Fox USFL...................11

Legal Standard.........................................................................11

ARGUMENT .........................................................................11

    A.    The Real USFL Is Likely to Succeed on the Merits of Its Claims .....13

        1.    Lanham Act § 1125(a)(1)(A)—Trademark Infringement ........14

            a.    The Real USFL Owns Valid and Legally Protectable Marks .................................................14

            b.    The Real USFL is Likely to Show Actionable Confusion................................................16

        2.    Lanham Act § 1125(a)(1)(B)—False Advertising...................19

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

i

3.      Lanham Act § 1125(a)(1)(A)—False Association ...................21

4.      California Statutory and Common Law Claims .......................21

5.      Fox's Asserted Abandonment Defense is Wrong and Irrelevant 22

B.   The Real USFL Will Suffer Irreparable Injury Unless Fox Is Enjoined 23

C.   The Balance of Equities Favors the Real USFL .................................24

D.   The Public Interest Favors Entering the Preliminary Injunction ........24

E.   Any Bond Should Be Minimal...........................................................25

CONCLUSION ..................................................................................................26

McKool Smith Hennigan, P.C.
Los Angeles, CA

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

## <u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

CASES

*578539 B.C., Ltd. v. Kortz*, No. CV1404375MMMMANX,
   2014 WL 12572679 (C.D. Cal. Oct. 16, 2014) ...........................................22, 23

*Adidas America, Inc. v. Sketchers USA, Inc.*,
   890 F.3d 747 (9th Cir. 2018) ...................................................................24

*AECOM Energy & Constr., Inc. v. Ripley*,
   No. 217CV05398RSWLSS, 2017 WL 4326373 (C.D. Cal. Sept. 28,
   2017), ...................................................................................................passim

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ..................................................................11

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979), .............................................................17, 18

*Amoco Prod. Co. v. Vill. of Gambell, Alaska*,
   480 U.S. 531 (1987)...................................................................................24

*Bobosky v. Adidas AG*,
   843 F. Supp. 2d 1134 (D. Or. 2011) ........................................................15

*Cal. Cooler, Inc. v. Loretto Winery, Ltd.*,
   774 F.2d 1451 (9th Cir.1985) ...................................................................14

*California Cedar Products Co. v. Pine Mountain Corp.*,
   724 F.2d 827 (9th Cir. 1984) ....................................................................23

*Clinton E. Worden & Co. v. California Fig Syrup Co.*,
   187 U.S. 516 (1903).....................................................................................16

*Denbicare U.S.A., Inc. v. Toys R Us, Inc.*,
   84 F.3d 1143 (9th Cir. 1996) ....................................................................21

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
   946 F.3d 1040 (9th Cir. 2019) ..................................................................13

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC,*
    741 F. Supp. 2d 1165 (C.D. Cal. 2010) ............................................................24

*GoTo.com, Inc. v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000) ............................................................25

*In Re Paramount Pictures Corp.,*
    213 U.S.P.Q. (BNA) ¶ 1111 (T.T.A.B. Apr. 9, 1982)........................................15

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,*
    4 F.3d 819 (9th Cir. 1993) ............................................................17

*Johnson v. Couturier,*
    572 F.3d 1067 (9th Cir. 2009) ............................................................25

*Life Alert Emergency Response, Inc. v. LifeWatch, Inc.,*
    601 Fed. Appx. 469 (9th Cir. 2015) ............................................................23

*Macy's Inc. v. Strategic Marks*, LLC, No. 11-CV-06198-EMC,
    2016 WL 374147 (N.D. Cal. Feb. 1, 2016)........................................15

*Miller v. Glenn Miller Prods., Inc.,*
    454 F.3d 975 (9th Cir. 2006) ............................................................14

*Network Automation, Inc. v. Advanced Sys. Concepts,*
    638 F.3d 1137 (9th Cir. 2011) ............................................................17, 18

*Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 219CV02702VAPJEMX,
    2020 WL 8514835 (C.D. Cal. Sept. 3, 2020) ........................................16

*Peter Luger Inc. v. Silver Star Meats Inc.,*
    2002 WL 1870066 (W.D. Pa. May 17, 2002) ............................................22, 23

*Pom Wonderful LLC v. Hubbard,*
    775 F.3d 1118 (9th Cir. 2014) ............................................................17

*Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-CV-04895-WHO,
    2017 WL 2775030 (N.D. Cal. June 27, 2017) ........................................21

*Robi v. Five Platters, Inc.,*
    918 F.2d 1439 (9th Cir. 1990) ............................................................24

*S. Cal. Darts Ass'n v. Zaffina,*
    762 F.3d 921 (9th Cir. 2014) ............................................................14

McKool Smith Hennigan, P.C.
Los Angeles, CA

iv

*Samick Music Corp. v. Gordon*, No. SACV 20-395-GW-JDEX,
    2020 WL 3210613 (C.D. Cal. Mar. 26, 2020) ....................................24

*Sengoku Works Ltd. v. RMC Int'l Ltd.*,
    96 F.3d 1217 (9th Cir. 1996) ...................................................14

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
    758 F.3d 1069 (9th Cir. 2014) .................................................14

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................11

**STATUTES**

15 U.S.C. § 1064(3) ....................................................................16

15 U.S.C. § 1116(a) ....................................................................23

15 U.S.C. § 1125(a)(1)(A) ...................................................13, 14, 21

**OTHER AUTHORITIES**

McCarthy on Trademarks and Unfair Competition § 17:3 ..........................22

McCarthy on Trademarks and Unfair Competition § 18:52 ........................14

Restatement (Third) of Unfair Competition § 30 cmt. a (1995) .................23

Restatement (Third) of Unfair Competition § 32 (1995) .........................16

Rule 65(c) of the Federal Rules of Civil Procedure .............................25

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

## PRELIMINARY STATEMENT

In the 1980s, the members of The Real USFL, LLC ("Real USFL") founded a spring football league called the United States Football League ("USFL" or the "League"). It fielded teams with now-legendary players like Jim Kelly, Reggie White, Doug Flutie, Steve Young, Herschel Walker, Kelvin Bryant, and many others. It also started bidding wars for talent with the dominant National Football League, raised player pay, and introduced game innovations like instant replay. While the league was not a financial success, it changed the game and business of football. In the decades since, the USFL's owners, players, and executives have continued to honor its legacy. Among other things, they have held reunions, licensed an official history and films about the league, and, for more than a decade, have continuously sold official USFL merchandise. Those who built the league never imagined that anyone would try to claim the USFL legacy as their own. But that is what Defendants have done.

Defendants The Spring League, LLC ("TSL"), and USFL Enterprises, LLC, Fox Corporation, Fox Sports 1, LLC, Fox Sports 2, LLC, Fox Sports Holdings, LLC, Fox Sports Productions, LLC, Foxcorp Holdings, LLC, Fox Media, LLC, and Fox Sports Interactive Media, LLC (collectively "Fox," and with TSL, "Defendants") ahve created a new league copying the league name and team names and logos of the 1980s originals. Defendants have even claimed that their league is the "*return*" of the original. Worse still, Defendants have attacked the Real USFL and its members for using the trademarks they created 40 years ago, threatening them with litigation and personal liability. Plaintiff's members created the Real USFL to protect the legacy they built and defend their right to continue using trademarks they created.

**USFL Logo**



**Fox's League Logo**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKool Smith Hennigan, P.C.
Los Angeles, CA

**USFL Team Logos**



**Fox's League Team Logos**



Defendants' actions began in 2011 when a man named Jamie Cuadra tried to form a professional football league under false pretenses. No league ever existed, but Cuadra told investors (and the U.S. Patent and Trademark Office ("USPTO")) that his league was the original USFL with "Hall of Fame players and coaches." That was one of many false claims Cuadra made, and he eventually went to prison for his fraud. Before he was convicted, however, Cuadra's company fooled the USPTO into granting it a registration for a "USFL" trademark. That mark and one Cuadra's company obtained later lingered on the USPTO register. Almost a decade after Cuadra's conviction, Fox's partner, TSL, purchased these ill-gotten registrations and, in June 2021, announced the "relaunch" of the USFL.

The original USFL's Chairman of the Executive committee, Steve Ehrhart, immediately contacted Fox, but Fox rebuffed Mr. Ehrhart. In August 2021, a group of former USFL owners contacted Fox's partner, TSL, through the original USFL's former outside counsel. This too proved futile. But then in November, Fox expanded its campaign of appropriation, by announcing it would use the USFL team names and logos in addition to the league name and logos. In December 2021, after another lawyer for the former owners spoke to Fox's trademark prosecution counsel, it finally appeared that Fox would do the right thing and seek a license from the former owners. But Fox quickly backtracked, and instead escalated the situation.

Two days before Christmas 2021, through litigation counsel, Fox wrote to the

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

Real USFL's merchandise seller threatening it with liability. After being given records showing more than a decade of royalty payments for USFL merchandise, Fox's litigation counsel demanded more and issued new threats. Faced with potential litigation for using their own marks, the members of the Real USFL, formed Plaintiff to protect their rights. Fox does not own USFL's legacy. The Court should put an end to Fox's attempts to claims that it does.

## STATEMENT OF FACTS

### A.    The Real USFL

Nearly four decades ago, the USFL broke into the sports market. *See* Declaration of Steve Ehrhart ("Ehrhart Decl."), ¶ 2. Between 1983 and 1985, the USFL built a loyal fan base, drove TV ratings on the ABC and ESPN networks, and launched the careers of multiple players now in the Pro-Football Hall of Fame, including Reggie White, Jim Kelly, Sam Mills, and Steve Young. *Id.* During its heyday, the USFL held numerous registered trademarks for the USFL name and logo ("League Marks"), as well as the League's team names and logos ("Team Marks"). Declaration of Kirk D. Dillman ("Dillman Decl."), Ex. 1. In 1986, however, following a pyrrhic antitrust suit against the NFL, the League ceased playing. Ehrhart Decl. at ¶ 4. Nevertheless, those associated with the League continue to honor it with, among other things, reunions, an ESPN documentary, and multiple licenses for films and books about the league, as well as USFL merchandise. *Id.* at ¶¶ 6–16.

### B.    The USFL After 1986

Mr. Ehrhart is currently Executive Director of the AutoZone Liberty Bowl, a college football bowl game that has been played annually for more than sixty years. *Id.* at ¶ 3. Mr. Ehrhart's storied career in sports includes roles as president of MLB's Colorado Rockies, and as a minority owner of the NBA's Memphis Grizzlies. *Id.* Of relevance here, Mr. Ehrhart served as the USFL's Executive Director and later as President, General Manager, and part owner of the USFL's Memphis Showboats franchise. *Id.* After the original USFL ceased play, the League's owners elected Mr.

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

3

Ehrhart to carry on League business, including conclusion of the USFL's litigation with the NFL and the distribution of millions of dollars of attorneys' fees the USFL won. *Id.* at ¶ 5. Since then, Mr. Ehrhart has worked to preserve the League's legacy, by among other things, organizing a league reunion in 2007 and entering a number of licensing arrangements for the USFL's intellectual property. *Id.* at ¶¶ 6-16.

### 1.   *Apparel Licensing*

Founded in 1994, American Classics, Inc. ("American Classics") is a leading wholesaler of "classic entertainment" apparel that has sold products under licenses from, among others, Warner Brothers, Sony, Universal Studios, and Disney. *See* Declaration of David E. Brown ("Brown Decl."), ¶ 1. It sells directly online and through major retailers such as Old Navy and Kohl's. *Id.* at ¶ 1. In 2011, American Classics approached Mr. Ehrhart to license the USFL's marks. *Id.* at ¶ 2. In July 2011, the parties entered an agreement providing for a 12% royalty, and giving American Classics the right to make apparel using the "names, logos, images of the USFL and its member team[s] from 1983, 1984, and 1985." *Id.* at ¶ 2.

By August 2011, American Classics had designed the licensed USFL apparel. *Id.* at ¶ 3. That fall, Mr. Ehrhart approved the designs and American Classics began selling its licensed USFL merchandise. *Id.* at ¶¶ 3-5. Demand for USFL apparel, through American Classics, has remained steady since 2011, and through fourth quarter 2021, American Classics made regular quarterly royalty payments to "the USFL c/o Steve Ehrhart." *Id.* at ¶ 6; Ehrhart Decl. at ¶ 14. Mr. Ehrhart has deposited each American Classics check into a USFL bank account. Ehrhart Decl. at ¶ 14.

### 2.   *Reunions*

Mr. Ehrhart and other members of the Real USFL have also organized a number of team and league reunions using the marks. For example, Mr. Ehrhart organized a 25th anniversary reunion for the Showboats and the USFL in 2007. *Id.* at ¶ 6. Jerry Argovitz, owner of the Houston Gamblers, authorized team reunions in 2010, 2015, 2019, featuring among other things, public autograph signings by players

McKool Smith Hennigan, P.C.
Los Angeles, CA

including the team's Hall of Fame quarterback Jim Kelly. Declaration of Jerry Argovitz ("Argovitz Decl."), at ¶ 2. All of these reunions received significant press coverage. *Id.* at Ex. A; Ehrhart Decl. Ex. B.

### 3.   *Book Licensing*

Mr. Ehrhart also authorized an official history of the USFL. In July 2009, Paul Reeths, an author and avid fan of the USFL, contacted Mr. Ehrhart to discuss an anticipated book providing the definitive, authorized history of the USFL. Ehrhart Decl. at ¶ 15; Declaration of Paul Reeths ("Reeths Decl."), at ¶ 2. Over the next several years, the parties discussed the contents of the book, *The United States Football League 1982-1986*, and each chapter of which was sent to Mr. Ehrhart for approval. Reeths Decl. at ¶¶ 2-3. Prior to the book's April 2017, publication, Mr. Ehrhart provided a written release to use the USFL league and team logos. *Id.*

### 4.   *Film Licensing*

Ken Dunek is a former tight end for the USFL's Philadelphia and Baltimore Stars. *See* Declaration of Ken Dunek ("Dunek Decl."), ¶ 1. In late 2006, Dunek contacted the Stars' former part owner and then-Kansas City Chiefs President, Carl Peterson, regarding, a planned documentary Dunek was making of the life of his former Stars' teammate, the Hall of Fame Linebacker Sam Mills. *Id.* at ¶ 2. Mr. Peterson suggested that Mr. Dunek request from Mr. Ehrhart the rights to use the USFL League Marks and Team Marks. *Id.*

Mr. Dunek and Mr. Ehrhart executed a written license granting Mr. Dunek "the rights to use the USFL name, logo, likeness, and game footage video" for the film. *Id.* at ¶ 4. In the months and years that followed—through today—Mr. Dunek and his team have made substantial progress to those ends, including securing name and likeness rights for Mr. Mills, obtaining financing, gaining public recognition through a Philadelphia Inquirer article, finalizing the screenplay, discussing and marketing the film with production studios, and identifying potential talent for the film. *Id.* at ¶ 5.

In July 2010, Mr. Dunek again contacted Mr. Ehrhart regarding a separate

USFL film project called *The Team that Time Forgot*. *Id.* at ¶ 6. In 2010, Mr. Ehrhart signed a license agreement with Dunek's company. *Id.* Mr. Dunek created a website for the film (theteamthattimeforgotmovie.com); an archived version of the site shows links to multiple relevant articles including a July 22, 2010 article in The Philadelphia Inquirer discussing the film. *Id.* at ¶ 7. The website also contained the film's trailer, a copy of which can still be found on the video hosting service, Vimeo. *Id.* at ¶ 8. Mr. Dunek and his team have secured mid six-figure financing for the film, have marketed it to major studios, e.g., Sony, and have aired the trailer at public events including Stars team reunions. *Id.* at ¶ 9. Plans to produce the film are ongoing. *Id.*

## C.   The Provenance of Fox's Claimed USFL Marks

In 2010, Jaimie Cuadra was the CFO of a California seafood company. In his spare time, he was also president and CEO entity called "United States Football League LLC" ("Cuadra's League"). Dillman Decl. Ex. 27. To generate investment, Cuadra claimed that his league *was* the original USFL. For example, presentations to potential investors said that the league had "done it before," (*i.e.*, been an operating league) with "Hall of Fame players and coaches." *Id.* at Ex. 4. The presentations said the league would "utilize [the USFL's] historical legacy to bring quick brand identity to football fans." *Id.* at Ex. 4. In fact, however, Cuadra's league had no such experience or legacy and certainly had no Hall of Fame players or coaches.

Using its fraudulent investor presentations, Cuadra's League filed applications to register several of its claimed USFL marks with the USPTO. *Id.* at Ex. 2. The USPTO issued registrations on two of Cuadra's applications, Reg. No. 4165542, on June 26, 2012, and Reg. No. 4808689, on September 8, 2015. *Id.* at Exs. 3-4. Meanwhile, however, Cuadra's deceit caught up with him. Federal prosecutors discovered that he was using his position as CFO of the seafood company to embezzle money to cover expenses "associated with [his] … football league." *Id.* at Ex. 27. Cuadra pled guilty to federal wire fraud and tax charges in the Southern District of California and was sentenced to prison. *Id.* at Ex. 28. Aside from self-serving

affidavits filed at the USPTO, there is no evidence that Cuadra's League—which only ever existed in Cuadra's imagination—ever used its marks in commerce.

In spite of Cuadra's conviction, and apparent lack of use, Cuadra's League's marks stayed on the USPTO register. On February 2, 2021, Cuadra's League assigned its interest in its marks to World Record Headquarters, Inc. ("WRH"), which then assigned them to TSL. *Id.* at Ex. 5-6. Defendants have applied for numerous other trademark registrations that copy the Real USFL's marks. *See id.* at Ex. 2. Other than Cuadra's ill-gotten marks, however, none claim a priority date earlier than 2020.

**D.    Fox Launches its Counterfeit League**

On June 3, 2021, Fox issued a press release announcing a joint venture with TSL, "*to bring back*" "the United States Football League." *Id.* at Ex. 8. Seeking to leverage the goodwill of the Real USFL, Fox stated that "the USFL originally was an upstart spring football league consisting of 12 teams which featured some of the most exciting and recognizable young football stars in the country." *Id.* Celebrating the move as "a landmark day for" Fox Sports, Fox executive Eric Shanks, is quoted as saying that "the *return* of this innovative and iconic league is a fantastic addition to" Fox programming. *Id.* (emphasis added).

Fox's promotion of the "return" of the USFL was not limited to the press release. For example, Fox announced on social media that "The USFL is back! Catch all the action next year on FOX Sports."[1] That posting included a video of "@USFLOfficial legendary QB @DougFlutie," a former Heisman Trophy winner who played his professional rookie season with the USFL's New Jersey Generals in 1985. Mr. Flutie—who can be seen wearing a hat bearing the USFL's Generals logo—opens the video stating "the USFL is back! See you in 2022!" He then

---

[1]https://twitter.com/FOXSports/status/1400436507559620610?s=20&t=Go6oxmS9n7Iu1wmt6R wzlw;
https://twitter.com/FOXSportsPR/status/1400437750688456720?s=20&t=6k6Vgco03z3jbn QWwYM-tg.

McKool Smith Hennigan, P.C.
Los Angeles, CA

reminisces about "our days back in the USFL," naming Reggie White, Jim Kelly, Steve Young, and Herschel Walker among others. As Mr. Flutie names these original USFL players, the video displays photographs of the players wearing their old USFL jerseys and/or playing in USFL games in the 1980s.

The reaction to Fox's USFL announcement was one of universal excitement, not about a *new* football league, but about the *return* of what all believed to be "***the*** USFL" as Fox announced. *Id.* at Exs. 9-10. For example, numerous news outlets told their audience that the USFL was "returning," or was being "relaunched," "revive[d]," "reincarnate[ed]," "rebooted," "reborn," "reclaim[ed]," and any number of synonyms. *Id.* at Ex. 9. Likewise, many fans on social media expressed their desire to root for a team they knew from the 1980s. *Id.* at Ex. 10.

**E.    The Original USFL Owners Push Back**

Days after Fox's announcement, Mr. Ehrhart called Fox Sports' Executive Vice President, Larry Jones, to explain that the USFL had never ceased using the marks and in fact was still selling apparel under them. Ehrhart Decl. at ¶ 18. Mr. Ehrhart even FedExed Mr. Jones a copy of the official licensed USFL history. *Id.* During a July 14, 2021, in-person meeting, however, Mr. Jones said that Fox believed it had all the rights and was not interested in talking to the Original USFL owners. *Id.*

In August 2021, Bert Deixler, a former USFL attorney, sent a letter on behalf of a group of USFL owners and executives to TSL's CEO Brian Woods, notifying him that TSL and Fox were unlawfully using the USFL's name, but seeking a resolution that would "provide a basis for [his clients] endorsement" of Fox's league. *Id.* at ¶ 19; Dillman Decl. Ex. 13. In September 2021, Mr. Woods' lawyers responded that the original USFL was dead and had abandoned its trademarks. Dillman Decl. Ex. 14. Later that month, Mr. Deixler asked for a meeting to reach a "modus vivendi." *Id.* at Ex. 15. Fox ignored Mr. Deixler.

Sometime following Mr. Deixler's August letter, Fox Sports altered the text of the Press Release by removing all references to a "relaunch" of the USFL and the

McKool Smith Hennigan, P.C.
Los Angeles, CA

League's history. Among other things, Fox changed Mr. Woods' quote from stating that he is "extremely passionate about . . . the opportunity to . . . *bring back* the USFL" to "extremely passionate about . . . the opportunity to . . . launch the *new USFL*."[2]

However, Fox did not change its other advertising claiming the USFL's legacy. For example, it did not delete its posting of Mr. Flutie—which remains on Fox's Twitter feeds today. Instead, Fox *expanded* its campaign to appropriate the USFL's identity. At the time Mr. Deixler wrote Mr. Woods, Fox had only announced the use of the USFL name and logo. On November 22, 2021, Fox announced that it would appropriate the USFL team names and logos too. The Fox Sports commentator making the announcement, expressly drew a connection between Fox's League and the USFL's teams, saying, "[s]ome of these [team] names may be ***familiar*** to you."[3] He even invoked the history of the original USFL by referencing Donald Trump's ownership of a 1980s USFL franchise. A Fox News article further claimed that Fox had "retained the rights to all of the previous USFL franchises from the mid-1980s" to capitalize on "nostalgia" for the original league. *Id.* at Ex. 26.

## F.    Fox Claims to Want a USFL Endorsement but then Threatens Litigation

Meanwhile, Mr. Deixler referred his clients to a Los Angeles trademark lawyer, Stephen Strauss. On December 9, 2021, Mr. Strauss contacted Lynn Jordan, the attorney of record on USFL trademark registration applications Fox recently filed. Declaration of Stephen Strauss ("Strauss Decl."), at ¶ 3. Mr. Strauss explained that his clients were interested in working with Fox to build the USFL legacy and were primarily looking for respect for their prior accomplishments and investments. *Id.* Ms. Jordan indicated that sounded like a "great idea" and that she would raise the proposal with her client. *Id.*

---

[2]  *Compare*  https://www.foxsports.com/presspass/latest-news/2021/06/03/united-states-football-league-return    s-2022  (emphasis    added).    *with* https://web.archive.org/web/20211020010358/https://www.foxsports .com/presspass/latest-news/2021/06/03/united-states-football-league-returns-2022.
[3]  https://twitter.com/theherd/status/1462859577070796801?lang=en.

MᶜKᴏᴏʟ Sᴍɪᴛʜ Hᴇɴɴɪɢᴀɴ, P.C.
Lᴏs Aɴɢᴇʟᴇs, CA

9

Mr. Strauss never heard from Ms. Jordan again. Instead, on December 14, 2021, Fox's litigation counsel, David Bernstein, responded demanding that Mr. Strauss's clients produce evidence of their rights, even though Mr. Ehrhart had already told Fox about the American Classics license. *Id.* at ¶ 4. Three days later, on December 17, 2021, Mr. Strauss replied asking why Mr. Bernstein had changed the tone of the communications and requested a meeting between the parties. *Id.* at ¶ 5.

Then, two days before Christmas 2021, Mr. Bernstein sent a cease and desist letter to American Classics falsely claiming that Fox holds exclusive rights in the names of the USFL teams. Brown Decl. at ¶ 7. In the midst of the Omicron COVID surge and the Christmas retail rush, he threatened litigation, demanded that American Classics cease selling licensed USFL products immediately, and respond to his letter by New Year's Eve. *Id.* American Classics' president David Brown replied that his is a reputable company that only did business in licensed goods. *Id.* at ¶¶ 8, 10. He also informed Fox of the licenses signed by Mr. Ehrhart (of which Fox was already aware), and provided records of American Classics' royalty payments. *Id.*

Despite this documentation, Fox continued to saber-rattle. On January 4, 2022, Mr. Bernstein accused American Classics and Mr. Ehrhart of "counterfeiting." *Id.* at ¶ 9. Ultimately, American Classics stopped selling USFL merchandise to avoid litigation. *Id.* at ¶ 10. Another manufacturer the Real USFL approached has declined to work with Plaintiff because of Fox's false claims. Ehrhart Decl. at ¶ 22.

## G.    The Real USFL Steps In

As a result of Fox's actions, the members of the Real USFL received numerous inquiries from friends, associates, and the public about whether they were involved in Fox's league. Argovitz Decl. at ¶ 3; Declaration of Anthony Duany, at ¶ 2; Declaration of Robert Taubman, at ¶ 2; Declaration of Tad Taube, at ¶ 2. Fearing litigation and that Fox's deception would damage the USFL's legacy and their personal reputations, the former owners formed the Real USFL to hold and enforce their rights. Ehrhart Decl. at ¶ 20. The Real USFL was assigned all relevant rights by

10

1   the former owners and/or heirs of original USFL teams. Dillman Decl. Exs. 16-25.

2   **H.   Defendants Move Ahead with the Fox USFL**

3       Fox's campaign of confusion has continued with new force since its litigation

4   threats in December. For example, Mr. Woods was quoted in the Detroit News on

5   February 7, 2022, saying "What we found after we made our initial announcement . . .

6   [is that] [f]ans are pulling out their old memorabilia [from the original league],

7   whether it be game programs or ticket stubs. *These teams* were once in those [same]

8   markets [where Fox is launching]. There's certainly *a connection*. (It's like) we're

9   starting on second base [with our marketing]. ***This is a known brand***." *Id.* at Ex. 12

10  (emphasis added). Another Fox executive, Ed Hartman, said on February 9, "We

11  think we've got a big tailwind given that the USFL [brand] has so much equity value

12  in it."[4] Moreover, Fox has announced its team uniforms—which are copied from the

13  original USFL's—and continued selling team merchandise. *See Id.* at Ex. 11. Fox's

14  goods do not distinguish between Fox's league and the original. *Id.* at Ex. 29.

15      Fox's USFL has not yet started. It will open player training camps on March

16  21, 2022 and its inaugural game is scheduled for April 16, 2022.[5]

17  <u>**LEGAL STANDARD**</u>

18      Preliminary injunctive relief is appropriate where the movant can show (1) a

19  likelihood of success on the merits, (2) irreparable harm absent preliminary relief, (3)

20  that the balance of equities tips in his or her favor, and (4) that an injunction is in the

21  public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The

22  Ninth Circuit balances these factors using a "sliding scale" approach, where "a

23  stronger showing of one element may offset a weaker showing of another." *Alliance*

24  *for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

25  <u>**ARGUMENT**</u>

26      Defendants have willfully infringed the Real USFL's marks and are

27  _____

28  [4] https://www.youtube.com/watch?v=rh-ah2S58EQ&t=2068s
    [5] https://www.foxsports.com/stories/usfl/usfl-everything-you-need-to-know.

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

deliberately trading on a false association between Fox's league and the original USFL. The Court should enjoin Defendants' misrepresentations and falsehoods to protect the Real USFL's interest in its marks, history, and goodwill and protect the public from Defendants' deception.

The Ninth Circuit recently affirmed a preliminary injunction enjoining similar misconduct based on similar claims in *AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115 (9th Cir. 2018).[6] In *AECOM*, the plaintiff had acquired a famous and historically significant construction company, Morris Knudsen. *AECOM*, 2017 WL 4326373, at *1. That company built, among other things, the Hoover Dam. *Id.* the defendant, believing the Morris Knudsen marks abandoned after Morris Knudsen's acquisition by AECOM, took up the marks and began holding itself out as the historic company. *Id.* at *1, 4. In fact, however, AECOM continued using the Morris Knudsen marks after acquiring the company, albeit less prominently than when Morris Knudsen was a separate entity. *Id.* *4.

With regard to the plaintiff's false advertising claim, the Ninth Circuit affirmed the district court's finding of likelihood of success on the merits: "Here, Defendants have held themselves out to the public as Morrison Knudsen through use of the MK marks and Morrison Knudsen's corporate history. *Such statements are literally false; Defendants are neither the original Morrison Knudsen nor its successor.*" *AECOM, 748 F. App'x at 119* (emphasis added).

With regard to the *AECOM* plaintiff's trademark claim, the Ninth Circuit, rejected defendant's abandonment defense and affirmed the district court's finding of likelihood of success on the merits: "[The plaintiff] has shown a likelihood of confusion. Defendants have appropriated the same MK marks and Morrison Knudsen corporate history that [plaintiff] uses, and Defendants have used these marks and history in the same market—the construction market—in which [plaintiff] operates.

---

[6] The District Court opinion is: *AECOM Energy & Constr., Inc. v. Ripley,* No. 217CV05398RSWLSS, 2017 WL 4326373, at *1 (C.D. Cal. Sept. 28, 2017).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

We reject Defendant's abandonment defense[.]" *Id.* at 118 (citations omitted).

Finally, in affirming the preliminary injunction, the Ninth Circuit agreed with the district court's finding regarding the balance of equities. The Ninth Circuit said "the balance favors [plaintiff]. If an injunction issues, Defendants will merely be required to cease their illegal activities; but if an injunction does not issue, [plaintiff] will lose control over the MK brand for which it paid substantial consideration. Finally, we agree with the district court that an injunction serves the public interest in preventing consumer confusion." *Id.* at 119–20.

The Real USFL seeks the *same* relief as the plaintiff in *AECOM*, based on the *same* causes of action, in the face of conduct that is the *same* in all relevant respects. Both the fake MK and Fox held themselves out as historically significant businesses with which they had no actual connection. Both did so to benefit from their deception and both actually deceived the public. At bottom, Fox is perpetrating a fraud on the public that the Court should enjoin, just as the Ninth Circuit did in *AECOM*.

## A.    The Real USFL Is Likely to Succeed on the Merits of Its Claims

The Lanham Act prohibits the use in commerce of:

any word, … symbol, or device, . . . or false or misleading representation of fact, which . . . (A) is likely to cause confusion . . . as to the origin, sponsorship, or approval of [the user's] goods, services, or commercial activities . . . or (B) . . . misrepresents the nature . . . of [the user's] … goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(A). "[A]lthough much of the Lanham Act addresses the registration, use, and infringement of trademarks[,] . . . § 1125(a) [of the Act] . . . goes beyond trademark protection." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019). Among other things, § 1125(a) prohibits (1) "infringement of unregistered marks," (2) false claims of association, and (3) false advertising. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 926 (9th Cir. 2014); *AECOM*, 748 F. App'x at 118. Each of these causes of action "are distinct and require

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

McKool Smith Hennigan, P.C.
Los Angeles, CA

the application of separate tests." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014). The Real USFL is likely to succeed on at least these three causes of action and its related state law claims.

### 1.   *Lanham Act § 1125(a)(1)(A)—Trademark Infringement*

"[T]o prevail on a suit under [§1125(a) on a trademark infringement theory] . . . a plaintiff must prove two basic elements: (1) it has a valid, protectable trademark, and (2) [the defendant's] use of the mark is likely to cause confusion" among consumers. *S. Cal. Darts Ass'n*, 762 F.3d at 929. The mark does not need to be federally registered to be protectable. *Id.* at 926.

### a.   The Real USFL Owns Valid and Legally Protectable Marks

"[A] trademark is a common law property right that exists independently of statutory provisions for registration." *Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1454 (9th Cir.1985). Therefore, while federal registration of a trademark confers advantages, registration alone "does not create a mark or confer ownership; only use in the marketplace can establish a mark." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 979 (9th Cir. 2006). "It is axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC Int'l Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). If the owner of an unregistered mark establishes an earlier first use in commerce, then the registration of a confusingly similar mark may be invalidated. *Id.* at 1219. Here, registration for the USFL marks made in the 1980s lapsed, but the Real USFL's members and licensees have been using them in commerce continuously well before any use creditable to Defendants. A licensee's "use [of the marks] inures to the benefit of the licensor[.]" McCarthy on Trademarks and Unfair Competition § 18:52.

***The Real USFL's Superior Claim to the Team Marks is Indisputable:*** With regard to the Real USFL Team Marks (*e.g.*, team names and logos), Defendants have no claim of priority earlier than 2020, the date on which TSL began applying to register marks for the USFL teams. But, by that point, American Classics had been

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

selling apparel under those same marks for *at least eight years*. Defendants cannot seriously dispute these facts and thus cannot dispute the Real USFL's superior claim to the Team Marks.

Defendants have claimed that Mr. Ehrhart had no right to license American Classics, but that is false and irrelevant. Mr. Ehrhart acted on the authority of the league's former owners and expressly in the name of the USFL. Indeed, Mr. Ehrhart didn't approach American Classics. American Classics, a company built on trademark licenses, *approached Mr. Ehrhart*, because it believed he had authority to license. The Real USFL's other licensees and former owners also believed this. In all events, even if Mr. Ehrhart was acting personally, he had at least as much right to the Team Marks—indeed he had more right—and started using them first. Any personal rights Mr. Ehrhart had were assigned to the Real USFL.

Defendants have also asserted that American Classic's printing of logos on a t-shirt use was an ornamental design, not a trademark use. That is wrong. Large logos on t-shirts are *usually* source indicating, especially in athletic wear. *See e.g.*, *Macy's Inc. v. Strategic Marks*, LLC, No. 11-CV-06198-EMC, 2016 WL 374147, at *5 (N.D. Cal. Feb. 1, 2016)*; *Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1144 (D. Or. 2011); *In Re Paramount Pictures Corp.*, 213 U.S.P.Q. (BNA) ¶ 1111, * 2, 6 (T.T.A.B. Apr. 9, 1982). Indeed, the evidence of use submitted for Cuadra's "USFL" registrations included a large logo printed on a t-shirt. Dillman Decl. Ex. 4. Moreover, the fact that American Classics believed it needed a license and sold the USFL shirts as "licensed"—a fact that Defendants claim was false advertising—underscores that the logos on American Classics' shirts were source identifying. *See* Brown Decl. at ¶ 2.

***The Real USFL has Priority for the League Marks:*** With regard to the League marks (*e.g.*, "USFL" and the USFL logo), Defendants can claim priority to—at the earliest—March 24, 2011, based on the application date for Cuadra's marks. *See e.g.*, Dillman Decl. Ex. 3. The Real USFL's priority claim is superior for at least two reasons. First, the Real USFL's members and licensees were making use of the marks

McKool Smith Hennigan, P.C.
Los Angeles, CA

in film and organizing reunions well before 2011.

Second, Defendants are not entitled to the March 2011 priority date (or any priority at all), because all of Defendants' purported "USFL" marks are unenforceable and their registrations are subject to cancelation for fraud. *See* 15 U.S.C. § 1064(3). Thus, the Real USFL possesses superior right to the mark even if the Real USFL's first use in commerce was after Fox's claimed priority date.

Section 1064(3) provides that a registration may be canceled if the owner uses the mark "to misrepresent the source of the goods or services on or in connection with which the mark is used." To succeed on a claim for cancellation under § 1064(3) "a party must show 'blatant misuse of the subject mark by [registrant] in a manner calculated to trade on the goodwill and reputation of'" someone else. *Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 219CV02702VAPJEMX, 2020 WL 8514835, at *12 (C.D. Cal. Sept. 3, 2020) (alterations in original). The same rule applies for common law marks. *Clinton E. Worden & Co. v. California Fig Syrup Co.*, 187 U.S. 516, 528 (1903) (when a mark is used to deceive "the right to the exclusive use of it cannot be maintained"); Restatement (Third) of Unfair Competition § 32 (1995) (same).

Here, Defendants' marks should be canceled, because the file histories for the registrations contain express statements from the original applicant (*i.e.* Cuadra's League) that it was representing itself as the original USFL with "Hall of Fame players and coaches." Dillman Decl. Ex. 4. Since purchasing the registrations, Fox has pursued the same deception. Fox's press release, its video of Mr. Flutie, and its subsequent statements—not to mention its copying USFL team names and logos— were all calculated to trick the public into believing that Fox's League *is* the USFL. By Fox's own admission, the ruse has worked. Fans "are pulling out their old memorabilia," because they think Fox's league is the original USFL. *Id.* at Ex. 12 This is an open and shut case for a declaration of unenforceability and cancelation.

### b.    The Real USFL is Likely to Show Actionable Confusion

Actionable confusion exists "when consumers are likely to assume that a

McKool Smith Hennigan, P.C.
Los Angeles, CA

16

product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 825 (9th Cir. 1993) (internal quotation marks omitted). Courts determine a likelihood of confusion by reference to eight illustrative factors described in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). These factors are best understood as simply providing helpful guide posts, and should be evaluated in light of all facts and circumstances. *See Pom Wonderful LLC v. Hubbard,* 775 F.3d 1118, 1125 (9th Cir. 2014). The factors include: (1) strength of the mark; (2) similarity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and the degree of care likely to be exercised by the purchasers; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.2d at 348-49. Under this test, Defendants cannot seriously dispute confusion. Defendants are using the *same* marks, to sell the *same* type of goods, through the *same* marketing channels (*e.g.*, the internet), and explicitly said they were trying to capture the goodwill that belongs to the Real USFL. The result was predictable: overwhelming confusion among consumers.

     ***The Marks are Identical or Highly Similar:*** "[T]he more similar the marks … the greater the likelihood of confusion." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1150 (9th Cir. 2011). *None* of Defendants' marks are substantially different from the Real USFL's marks. *Supra* at 1-2, 6-11.

     ***The Real USFL's Marks are Strong***: "[S]trength [of a trademark] is based on 'actual marketplace recognition.'" *Network Automation*, 638 F.3d at 1149. Defendants cannot seriously dispute that the Real USFL's marks are recognized in the marketplace. TSL's CEO, acknowledged that the USFL marks are a "known brand." Dillman Decl. Ex. 12. Moreover, Defendants deliberate decision to copy the marks and take the Real USFL's goodwill, as well as the reaction of original USFL

McKool Smith Hennigan, P.C.
Los Angeles, CA

17

fans, show that the Real USFL marks were well recognized in the market.

***The Goods are Similar and Sold in the Same Channels of Commerce:*** Using similar marks on similar goods and in "[c]onvergent marketing channels increase[s] the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. The Real USFL's merchandise and Fox's merchandise are of the same type—sports fan apparel—and are sold throughout the United States via the internet. TSL's CEO himself said sports fans are associating their "old memorabilia" with Fox's league. Dillman Decl. Ex. 12. Fox's apparel gives no indication that it is from a "new" league. *Id.* at Ex. 29.

***Defendants Intended to Take the Real USFL's Goodwill:*** "When [an] alleged infringer knowingly adopts a mark similar to another's, [courts] presume that . . . the public will be deceived." *Sleekcraft*, 599 F.2d at 354. There can be no doubt that Defendants' intent was to appropriate the Real USFL's goodwill and fan base. Defendants could have chosen any name, but it chose to copy the USFL's names and logos. Indeed, Defendants initially made no attempt to distinguish its league from the original. Rather, Defendants did—and continues to do—the *opposite*, claiming that its league was a "return" and "relaunch" of the original with "familiar" team names and that it owned the rights to the "USFL franchises from the mid-1980s." *Supra* at 7-11. Fox even went so far as to hire one of the USFL's former players to promote the league by reminiscing about his time in the original. Even after including a disclaimer on its press release, Fox admits that fans continue to be confused and that its marketing had a "tailwind." *Id.*

***The Evidence of Actual Confusion is Overwhelming:*** "[T]he most important factor" in support of likelihood of confusion is evidence of *actual* confusion in the marketplace. *Network Automation*, 638 F.3d at 1147. The evidence of actual confusion is overwhelming. **First**, TSL's CEO *admitted* that there is confusion, saying "[t]here's certainly a connection" in the minds of consumers between the USFL and Fox's league. "[It's like] we're starting on second base. This is a known brand." Dillman Decl. Ex. 12. **Second**, ever since Fox's June 3, 2021 announcement,

McKool Smith Hennigan, P.C.
Los Angeles, CA

the sports media—and general media—have been filled with coverage discussing the supposed connection between Fox's league and the original USFL—including on Fox's own networks. *See supra* at 7-11; *see also* Dillman Decl. Ex. 9. **Finally**, since sports writers were confused, it is not surprising that there has been widespread confusion among football fans. For example, in response to Fox's announcement, fans across social media have expressed their excitement at rooting for their favorite teams from the original USFL. *See supra* at 7-11; *see also* Dillman Decl. Ex. 10. Sadly, Fox has deceived these fans; the teams that they will be cheering have *nothing* to do with the USFL they remember.

### 2. *Lanham Act § 1125(a)(1)(B)—False Advertising*

To succeed on a false advertising claim under § 1125(a), a Plaintiff must show "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product [or commercial activities]; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement . . . ." *AECOM*, 748 F. App'x at 118. The Real USFL is likely to succeed on all of these elements.

***Defendants Made False Statements about its Products in Interstate Commerce (Elements 1 & 4)***: Falsely claiming to have a connection with a historic business is actionable as false advertising. *AECOM,* 748 F. App'x at 119. Here, Defendants repeatedly has made false statements in interstate commerce connecting themselves with the original USFL. For example, Fox's press release (distributed online) said that the USFL will "officially return" under Fox's auspices, and that it was "bring[ing] back the USFL" as part of a "relaunch" of the league. *Supra* at 7-11; Dillman Decl. Ex. 8. Fox has also expressly claimed to have rights for "the previous USFL franchises from the mid-1980s," franchises which the Real USFL members owned. Dillman Decl. Ex. 26. These (and numerous similar statements) were false.

Fox had no connection with the USFL.

***Defendants Statements Actually Deceived its Audience (Element 2):*** As discussed above, Defendants' advertisements have deceived the public, as demonstrated by the persistent belief among sports writers and fans that Fox's league is connected to the original and Fox's own admissions that fans perceive a connection between Fox's league and the original USFL. *Supra* 7-8, 11.

***Defendants Deception is Material and Likely to Influence Purchasing Decisions (Element 3):*** Fox itself believes that fans are more likely to purchase goods and services associated with a historic league than one Defendants invented less than a year ago. Nothing else could explain the decision to adopt the USFL's identity, when it could have used any league name or team names and designed its own logos. Moreover, TSL's CEO himself said that "Fans are pulling out their old memorabilia" from the original league, because they associate it with the new league. *Supra* at 11. Meanwhile, Fox is trying to sell them new and confusingly similar memorabilia.

***Defendants' False Statements Have Appropriated the Legacy of the Original USFL and Destroyed the Real USFL's Apparel Business (Element 5):*** The Real USFL can't control or protect the legacy of the original league or sell USFL merchandise, because the consuming public now believes that Defendants, rather than the Real USFL, are the heir to the original League's legacy. Fox's Defendants' false statements have destroyed the Real USFL's apparel business, because its licensee ceased sales due to Defendants' false claims. No other manufacturer will do business with the Real USFL so long as they believe Defendants are the official source of original USFL merchandise. Indeed, an alternative manufacturer has said it cannot do business with the Real USFL. Even according to Defendants' executive, their false advertising has caused consumers interested in official USFL merchandise to look to Fox rather than the Real USFL. TSL's CEO said that fans associate their "old memorabilia"—which the Real USFL was selling—with Fox's league. Dillman Decl. Ex. 12. Lastly, the public now associates Fox's league with the Real USFL's members

20

personally, because it claims to have the rights to the franchises the Real USFL members owned and with which they were publicly associated. Dillman Decl. at 26.

### 3.   *Lanham Act § 1125(a)(1)(A)—False Association*

"To succeed on its false association claim under 15 U.S.C. § 1125(a)(1)(A), [a plaintiff] must prove that Defendants '(1) use[d] in commerce (2) any … false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of [its] goods or services [or commercial activities].'" *AECOM*, 748 F. App'x at 118 (alterations in original). Defendants' conduct easily meets all of those elements. Exactly as the defendants in *AECOM*, Defendants have made misleading representations and descriptions about its goods to suggest an association with the original USFL and the members of the Real USFL personally (elements 1 & 2). *Supra* 20. Moreover, Defendants' statements have convinced broad swaths of the market to believe that Fox's league is the USFL and exclusive source of original USFL merchandise (element 3). That prevents the Real USFL from building the legacy of their League and causes consumers looking for genuine USFL merchandise to purchase from Defendants, rather than the Real USFL. Indeed, potential business partners, including American Classics, will not work with the Real USFL because of the confusion Defendants have caused. Moreover, Defendants have caused the public to falsely associate Fox's league with Real USFL members personally. *Supra* 7-11.

### 4.   *California Statutory and Common Law Claims*

California state unfair competition claims "are 'substantially congruent' to claims made under the Lanham Act." *Denbicare U.S.A., Inc. v. Toys R Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir. 1996) *abrogated on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013). However, California law is "broader in scope" than the Lanham Act. *Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-CV-04895-WHO, 2017 WL 2775030, at *3 (N.D. Cal. June 27, 2017). As explained above, the Real USFL is likely to succeed on its claims under the Lanham

McKool Smith Hennigan, P.C.
Los Angeles, CA

1   Act. Therefore, that it is even more likely to succeed on state claims as well.

2          **5.**     ***Fox's Asserted Abandonment Defense is Wrong and Irrelevant***

3          As part of its efforts to intimidate Real USFL and American Classics,

4   Defendants' lawyers have claimed that after the USFL stopped play in 1986, the

5   league abandoned its marks. Even if that were true—it isn't—it is irrelevant to the

6   instant motion.

7          <u>First</u>, trademark ownership is not an element of either a false advertising or

8   false association claim under § 1125(a). Indeed, in *AECOM*, which dealt with nearly

9   identical circumstances as this case, the Ninth Circuit treated the plaintiff's trademark

10  claim as a "false association claim"—with different elements from a trademark claim.

11         <u>Second</u>, the Real USFL would prevail on its trademark claim even if the League

12  abandoned its marks in 1986, because, at a minimum, the Real USFL's licensees and

13  members resumed using the marks before Fox started using them. "[I]f a challenger's

14  [*i.e.*, Defendants'] date of first use is later than the resumed use of the party alleged

15  to have abandoned the trademark [*i.e.*, the USFL], then the issue of possible

16  abandonment is irrelevant to the question of priority." <u>McCarthy on Trademarks and</u>

17  <u>Unfair Competition § 17:3</u>. Here, under the license, American Classics, was selling

18  USFL and team-branded apparel in the Fall of 2011 and Mr. Ehrhart was advertising

19  USFL reunions even earlier. Therefore, whatever happened between 1986 and 2011

20  does not matter. The Real USFL has priority over Defendants.

21         <u>Third</u>, ***even if the marks were abandoned by the original USFL, and even if***

22  ***Mr. Ehrhart had no authority to act on its behalf, Mr. Ehrhart had at least as much***

23  ***right as Defendants to take up the marks.*** Indeed, given his actual work for the

24  original USFL, he had more. He assigned any personal rights to the Real USFL.

25  ***Defendants do not even claim to have used the Team Marks before Mr. Ehrhart.***

26         <u>Fourth</u>, even when a mark is abandoned, "[p]arties that adopt an abandoned

27  mark must take steps to avoid a likelihood of confusion arising from an association

28  with the former owner." *578539 B.C., Ltd. v. Kortz*, No. CV1404375MMMMANX,

McKool Smith Hennigan, P.C.
Los Angeles, CA

22

McKool Smith Hennigan, P.C.
Los Angeles, CA

2014 WL 12572679, at *9 (C.D. Cal. Oct. 16, 2014). For example, in *Peter Luger Inc. v. Silver Star Meats Inc.*, the court assumed that the plaintiff had abandoned its former mark, but nonetheless enjoined the defendant's use of confusingly similar marks. No. CIV.A.01-1557, 2002 WL 1870066, at *2 (W.D. Pa. May 17, 2002). The court said "any newcomer acts outside legal boundaries when it intentionally adopts the same name . . . implying that it is somehow a successor product. . . . Whether [the plaintiff] abandoned the name or not, that [abandonment] did not confer a right upon the defendants to" use the mark and deceive the public. *Id.* That is precisely what Defendants did—they deliberately associated themselves with the old league in order to benefit from consumer confusion and the USFL's good will. Accordingly, whether the USFL abandoned the marks or not, Defendants' use of the marks is illegal. That illegal use harmed the Real USFL by diverting customers and scaring off potential partners like American Classics.

Although, Defendants claim the need to avoid confusion when using an abandoned mark is legally "controversial," it isn't. It sounds in the common sense policy of requiring commercial actors to be honest about who they are—and who they are not. The legal principle has been adopted by the Restatement and discussed favorably by a court in this district, which harmonized that principal with the case Fox cites, *California Cedar Products Co. v. Pine Mountain Corp.*, 724 F.2d 827, 830-31 (9th Cir. 1984). *See* Restatement (Third) of Unfair Competition § 30 cmt. a (1995); *578539 B.C., Ltd.*, 2014 WL 12572679.

**B.   The Real USFL Will Suffer Irreparable Injury Absent an Injunction**

Under the Lanham Act, a plaintiff seeking preliminary injunction that demonstrates a likelihood of success on the merits is entitled to a rebuttable presumption of irreparable injury. 15 U.S.C. § 1116(a). As demonstrated above, the Real USFL has made that showing.

Courts also have regularly found irreparable injury when a trademark plaintiff has shown actual confusion, as the Real USFL has done here. *See e.g., Life Alert*

23

*Emergency Response, Inc. v. LifeWatch, Inc.*, 601 Fed. Appx. 469 (9th Cir. 2015). In fact, Defendants have *admitted* that its consumers confuse its league with the Real USFL—even *after* it made its "clarification" in its press release.

Moreover, courts widely agree that evidence of "loss of control over business reputation and damage to goodwill [can] constitute irreparable harm." *Adidas America, Inc. v. Sketchers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018). Here, the Real USFL's members have spent decades protecting and enriching the legacy of the historic league. However, Defendants' litigation threats and continued use of the marks deprives them of the ability to do that.

**C.    The Balance of Equities Favors the Real USFL**

"A court considering injunctive relief must balance the competing claims of injury[.]" *Samick Music Corp. v. Gordon*, No. SACV 20-395-GW-JDEX, 2020 WL 3210613, at *11 (C.D. Cal. Mar. 26, 2020) (quoting *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542 (1987)). However, "[a] defendant who knowingly engages in infringing activity cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Id (quotation omitted)*.

Here, there is little doubt that an injunction is appropriate, because Defendants have "purposely misrepresented" themselves to the public. *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990). The only "interest" at stake for Defendants in the present motion is its right to continue marketing the league under the USFL's "known brand" which Defendants did not build and for which they paid nothing. Dillman Decl. Ex. 12. Defendants are not innocent infringers and can capitalize on their investments in their league and move forward with their planned games—they simply needs to use their own name and logos.

An immediate injunction is appropriate, but in the alternative, the Real USFL asks the Court to stay the order for 30 days to allow Defendants to rename the league.

**D.    The Public Interest Favors Entering the Preliminary Injunction**

Courts have long recognized that enforcing the Lanham Act serves important

McKool Smith Hennigan, P.C.
Los Angeles, CA

24

public policies and "[t]he public interest favors a preliminary injunction where, as here, the plaintiff has shown a likelihood of confusion." *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1183 (C.D. Cal. 2010). Here, no less than the ordinary case, an injunction is in the public interest. In *AECOM*, the Ninth Circuit affirmed the finding that "an injunction serves the public interest" by "discourage[ing] the deceptive practices in which Defendants engaged here." 748 Fed. Appx. at 120. Defendants are actively promoting their league under false pretenses to enrich itself and deceive thousands of fans across the country. Stopping Defendants' misconduct is squarely in the public interest.[7]

**E.      Any Bond Should Be Minimal**

Rule 65(c) of the Federal Rules of Civil Procedure requires that the Real USFL post a bond before the issuance of a preliminary injunction, in such sum as the court deems proper. *See* Fed. R. Civ. P. 65(c). But the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). Moreover, when a large company infringes a smaller company's trademark, the court should limit bond to avoid the "risk [of] denying [the smaller company] access to judicial review[.]" *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000).

Here, Defendants will not be harmed by a preliminary injunction because Defendants will not be restrained from using non-infringing marks to promote their businesses. The potential harm is especially minimal here where Fox's league has not yet played any games. Moreover, because the Real USFL's likelihood of succeeding on the merits at trial is high, the likelihood of a "wrongful" injunction is correspondingly low. If the Court requires a bond at all, it should be minimal.

---

[7] To the extent Fox claims that third-parties such as its contractors and employees will be harmed, Fox can mitigate that harm by living up to its contracts—or simply continuing its league under a new name.

McKool Smith Hennigan, P.C.
Los Angeles, CA

## <u>CONCLUSION</u>

For the foregoing reasons, the Real USFL respectfully requests that the Court grant the Real USFL's motion for a preliminary injunction.

DATED: March 17, 2022

**MCKOOL SMITH HENNIGAN, P.C.**

By: */s/ Kirk D. Dillman*
Kirk D. Dillman
*Attorneys for Plaintiff The Real USFL, LLC*

MᴄKᴏᴏʟ Sᴍɪᴛʜ Hᴇɴɴɪɢᴀɴ, P.C.
Lᴏs Aɴɢᴇʟᴇs, CA

4855-9651-6622

26