David H. Bernstein (State Bar No. 336551)
  dhbernstein@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone:  (212) 909-6696 Fax: (212) 521-7696

Michael Schaper (admitted *pro hac vice*)
  mschaper@debevoise.com
Jared I. Kagan (admitted *pro hac vice*)
  jikagan@debevoise.com
Matthew J. Petrozziello (*pro hac vice* motion pending)
  mjpetrozziello@debevoise.com
Marissa MacAneney (admitted *pro hac vice*)
  mpmacaneney@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone:  (212) 909-6000 Fax: (212) 909-6836

Keith J. Wesley (State Bar No. 229276)
  kwesley@egcfirm.com
Matthew L. Venezia (State Bar No. 313812)
  mvenezia@egcfirm.com
**ELLIS GEORGE CIPOLLONE O'BRIEN ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone:  (310) 274-7100  Fax: (310) 275-5697

Patrick F. Philbin (admitted *pro hac vice*)
  pphilbin@egcfirm.com
Kyle T. West (admitted *pro hac vice*)
  kwest@ecgfirm.com
**ELLIS GEORGE CIPOLLONE O'BRIEN ANNAGUEY LLP**
1155 F Street, NW, Suite 750
Washington, DC 20004
Telephone: (202) 249-6900 Fax: (202) 249-6899

*Attorneys for Defendants The Spring League, LLC*;
*USFL Enterprises, LLC*; *Fox Corporation*; *Fox Sports 1,
LLC*; *Fox Sports 2, LLC*; *Fox Sports Holdings, LLC*;
*Fox Sports Productions, LLC*; *Foxcorp Holdings, LLC*;
*Fox Media LLC*; and *Fox Sports Interactive Media, LLC*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| THE REAL USFL, LLC, a New York limited liability company, | CASE NO. 22-CV-01350-JFW-MAR |
| Plaintiff, | **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | Date:       April 18, 2022 |
| FOX SPORTS, INC., a Delaware corporation; THE SPRING LEAGUE, LLC, a Delaware limited liability company; USFL ENTERPRISES, LLC, a limited liability company; FOX CORPORATION, a Delaware corporation; FOX SPORTS 1, LLC, a Delaware Limited liability company; FOX SPORTS 2, LLC, a Delaware limited liability company; FOX SPORTS PRODUCTIONS, LLC, a Delaware limited liability company; FOXCORP HOLDINGS, LLC, a Delaware limited liability company; FOX MEDIA LLC, a Delaware limited liability company; and FOX SPORTS INTERACTIVE MEDIA, LLC, a Delaware limited liability company, | Time:       1:30 p.m. Crtrm:      7A  The Honorable John F. Walter |
| Defendants. | |

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF AUTHORITIES ......................................................................ii

STATEMENT OF FACTS ......................................................................3

I.    The Failed Old League of the 1980s Abandoned All Trademark Rights ..........3

II.   Defendants Secure Trademark Rights and Form the New League ...................3

III.  Plaintiff Attempts to Disrupt the New League at the Eleventh Hour ...............5

ARGUMENT ......................................................................................7

I.    Plaintiff Is Unlikely to Succeed on Its Trademark Infringement Claims ..........8

    A.    TSL Owns Valid Trademark Rights ...........................................8

    B.    Plaintiff Owns No Trademark Rights ..........................................9

        1.    The Marks Owned by the Old League Were Abandoned ............9

        2.    Plaintiff's Purported "Uses" Did Not Create New Rights ..........11

            (a)    TSL's Rights Are Senior to the American Classics License .....................................................................12

            (b)    American Classics' Ornamental Use Did Not Confer Rights in the Team Marks ...........................................13

            (c)    Ehrhart's Naked Licenses Eviscerated Any Purported Trademark Rights .........................................15

            (d)    The Purported Dunek, Argovitz, Ehrhart, and Reeth Uses Do Not Establish Trademark Rights .......................16

II.   Plaintiff Is Unlikely to Succeed on Its Remaining Claims ...........................17

III.  Plaintiff Will Not Suffer Irreparable Harm Absent an Injunction ..................19

    A.    Plaintiff's Delay Undermines Any Claim of Irreparable Injury. ...........19

    B.    Any Harm to Plaintiff Is Compensable with Money Damages. ............21

IV.   The Balance of Equities Favors Defendants .........................................21

V.    The Public Interest Weighs Against an Injunction .......................................23

CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*578539 B.C., Ltd. v. Kortz*,
    NO. CV 14-04375, 2014 WL 12572679, at *9 (C.D. Cal. Oct., 16, 2014) .........11

*AECOM Energy & Constr., Inc. v. Ripley*,
    No. 217CV05398RSWLSS, 2017 WL 4326373 (C.D. Cal. Sept. 28,
    2017) ...........................................................................11

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*,
    977 F. Supp. 264 (S.D.N.Y. 1997) ...........................................13

*Amazing Spaces, Inc. v. Metro Mini Storage*,
    608 F.3d 225 (5th Cir. 2010) ...............................................13

*Anson v. Weinstein*,
    No. CV 17-8360, 2019 WL 6655260 (C.D. Cal. Mar. 26, 2019) ....................18

*Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*,
    289 F.3d 589 (9th Cir. 2002) ...............................................15

*Barrus v. Sylvania*,
    55 F.3d 468 (9th Cir. 1995) ................................................18

*Batts v. Adams*,
    No. CV 10-8123, 2011 WL 13217923 (C.D. Cal. Feb. 8, 2011) ....................21

*Bobosky v. Adidas AG*,
    843 F. Supp. 2d 1134 (D. Or. 2011) .........................................14

*Cable Educ. Network, Inc. v. Paramount Pictures*,
    No. HM-90-992, 1990 WL 279510 (D. Md. Apr. 12, 1990) .........................23

*Cal. Cedar Prods. v. Pine Mountain Corp.*,
    724 F.2d 827 (9th Cir. 1984) .............................................10, 21

*Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.*,
    CV 20-10220, 2021 WL 2497928 (C.D. Cal. May 19, 2021) ......................19

*Cascade Fin. Corp. v. Issaquah Cmty. Bank*,
    No. C07-1106Z, 2007 WL 2871981 (W.D. Wash. Sept. 27, 2007) ..................10

*Condit v. Star Editorial, Inc.*,
   259 F. Supp. 2d 1046 (E.D. Cal. 2003) .................................................................18

*Cove USA LLC v. No Bad Days Enters., Inc.*,
   No. 20-cv-02314, 2022 WL 423399 (C.D. Cal. Jan. 5, 2022)..............................14

*Credit One Corp. v. Credit One Fin., Inc.*,
   661 F. Supp. 2d 1134 (C.D. Cal. 2009) ..................................................................8

*Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*,
   448 F.3d 1118 (9th Cir. 2006)...............................................................................15

*Desert Prot. Council v. U.S.D.I.*,
   No. 12cv1281, 2012 WL 13175866 (S.D. Cal. Sept. 28, 2012).........................22

*Dreamer Enters., Inc. v. Hankook Trading, Inc.*,
   No. CV 14-4704, 2014 WL 12571418 (C.D. Cal. Aug. 20, 2014)......................21

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
   711 F. Supp. 2d 1074 (C.D. Cal. 2010) ..................................................................9

*Edge Games, Inc. v. Elec. Arts, Inc.*,
   745 F. Supp. 2d 1101 (N.D. Cal. 2010) ................................................................22

*Exxon Corp. v. Humble Exploration Co., Inc.*,
   695 F.2d 96 (5th Cir. 1093).....................................................................................17

*Fighters Inc., LLC v. Elec. Arts, Inc.*,
   No. CV 09-06389, 2009 WL 10699504 (C.D. Cal. Oct. 30, 2009) ....................21

*First Interstate Bancorp v. Stenquist*,
   No. C-89-4106, 1990 WL 300321 (N.D. Cal. July 13, 1990) ............................15

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000)....................................................................19

*Fox Broad. Co., Inc. v. Dish Network, LLC*,
   905 F. Supp. 2d 1088 (C.D. Cal. 2012) ................................................................21

*FreecycleSunnyvale v. Freecycle Network*,
   626 F.3d 509 (9th Cir. 2010).................................................................................15

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015).....................................................................................7

*H. Nation v. Pepe Jeans London*,
   No. CV 08-6533, 2008 WL 11338512 (C.D. Cal. Dec. 15, 2008) ....................19

*Halo Mgmt., LLC v. Interland, Inc.*,
   308 F. Supp. 2d 1019 (N.D. Cal. 2003) ...............................................................23

*Hoffman-La Roche Inc. v. Promega Corp.*,
   No. C-93-1748, 1994 WL 761241 (N.D. Cal. June 13, 1994) ..........................21

*HRP Creative Servs. Co., LLC v. FPI-MB Entm't, LLC*,
   616 F. Supp. 2d 481 (D. Del. 2009) ....................................................................25

*iFreedom Direct Corp. v. McCormick*,
   No. SACV 16-470, 2016 WL 9049647 (C.D. Cal. June 15, 2016) ....................20

*Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*,
   407 F.3d 1027 (9th Cir. 2005) .............................................................................18

*Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*,
   No. SACV 11-0313, 2011 WL 2269991 (C.D. Cal. June 9, 2011) ....................20

*Lathigee v. Wynn Operator, LLC*,
   No. 2:11-CV-1243, 2011 WL 6182097 (D. Nev. Dec. 13, 2011) .....................12

*LTTB LLC v. Redbubble, Inc.*,
   840 F. App'x 148 (9th Cir. 2021) ........................................................................13

*Macy's Inc. v. Strategic Marks, LLC*,
   No. 11-CV-06198, 2016 WL 374147 (N.D. Cal. Feb. 1, 2016) .........................14

*Major League Baseball Props., Inc. v. Sed Non Olet Denarius Ltd.*,
   817 F. Supp. 1103 (S.D.N.Y. 1993) .....................................................................16

*Marco Bicego S.P.A. v. Kantis*,
   No. No. 17-cv-00927, 2017 WL 2651985 (N.D. Cal. June 20, 2017)................17

*Martin v. Walt Disney Internet Grp.*,
   No. 09CV1601-MMA, 2010 WL 2634695 (S.D. Cal. June 30, 2010)...............19

*Money Store v. Harriscorp Fin., Inc.*,
   689 F.2d 666 (7th Cir. 1982), *aff'd*, 885 F.2d 369 (7th. Cir. 1989)....................10

*New Kids on the Block v. News Am. Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992)................................................................................16

*Peter Luger Inc. v. Silver Star Meats Inc.*,
  No. Civ.A.01-1557, 2002 WL 1870066 (W.D. Pa. May 17, 2002)...............10, 11

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
  55 F. Supp. 2d 1070 (C.D. Cal. 1999) ........................................................20

*Protect Our Cmtys. Found. v. U.S.D.A.*,
  2011 WL 13356151 (S.D. Cal. Sept. 15, 2011) ...................................25

*Regents of U.C.L.A. v. Am. Broad. Cos., Inc.*,
  747 F.2d 511 (9th Cir. 1984).................................................................24

*Sensoria, LLC v. Kaweske*,
  20-cv-00942, 2021 WL 103020 (D. Colo. Jan. 21, 2021)...................................11

*Sierra Forest Legacy v. Sherman*,
  951 F. Supp. 2d 1100 (E.D. Cal. 2013) .................................................25

*Silverman v. CBS Inc.*,
  870 F.2d 40 (2d Cir. 1989)........................................................................17

*Soc. Techs. LLC v. Apple Inc.*,
  4 F.4th 811 (9th Cir. 2021) ...................................................................16

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ..............................................................17

*Sparrow LLC v. Lora*,
  2014 WL 12573525 (C.D. Cal. Dec. 4, 2014) .......................................19

*Stearns v. Select Comfort Retail Corp.*,
  763 F. Supp. 2d 1128 (N.D. Cal. 2010) .................................................17

*Sterling M. Enters. v. Lee Sandwiches*,
  No. C 05-04477, 2006 WL 228946 (N.D. Cal. Jan. 30, 2006)...........................23

*W. Watersheds Project v. Salazar*,
  692 F.3d 921 (9th Cir. 2012)..................................................................25

*Warner v. Tinder Inc.*,
  105 F. Supp. 3d 1083 (C.D. Cal. 2015) .................................................17

*Warren Pub. Co. v. Spurlock*,
  645 F. Supp. 2d 402 (E.D. Pa. 2009)......................................................16

*Willpat Prods., Inc. v. Sigma III Corp.*,
   227 F. Supp. 354 (S.D.N.Y. 1964) ...................................................17

*Winter v. NRDC*,
   555 U.S. 7 (2008)...............................................................................7

*Zone Champ Ltd. v. BLK Int'l, Inc.*,
   No. CV 10-4375, 2010 WL 11552979 (C.D. Cal. Aug. 5, 2010).........7

**FEDERAL STATUTES**

15 U.S.C. § 1057(c) ...........................................................................8, 12

15 U.S.C. § 1115(b) .................................................................................8

15 U.S.C. § 1116(a) ...............................................................................19

15 U.S.C. § 1125(a) ...............................................................................17

15 U.S.C. § 1127 .......................................................................9, 13, 16

**STATE STATUTES**

California's False Advertising Law........................................................17

California's Unfair Competition Law.....................................................17

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................9

**OTHER AUTHORITIES**

3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:19 (5th ed.)

3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 3:4...........................13

3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:17......................12

Restatement (Third) of Unfair Competition § 30 cmt. a (1995)..............11

1       Plaintiff's motion for a preliminary injunction is nothing but a meritless and

2  cynical effort to extract payments from USFL Enterprises and its parent company Fox

3  by holding hostage the launch of their new professional spring football league (the

4  "New League"). After a long, intense effort, and substantial investment from USFL

5  Enterprises, the New League has over 300 players on eight teams, all of whom are

6  currently in training camp; by the time this motion is heard on April 18, 2022, the

7  teams will already have played their first games.

8       USFL Enterprises acquired rights in the trademarks it is using for the New

9  League so it could deliver football to fans this spring. But, at the eleventh hour, some

10  owners and executives who were connected with the defunct "United States Football

11  League" of the 1980s (the "Old League") formed a shell corporation—falsely calling

12  itself "The Real USFL, LLC"—to bring this lawsuit claiming trademark infringement.

13  There is nothing real about the so-called "Real USFL." It was created solely to seek

14  an injunction against the New League and thereby extract payments from the New

15  League. All four factors this Court considers on a request for a preliminary injunction

16  overwhelmingly favor denying the injunction.

17       ***First***, Plaintiff cannot show a likelihood of success on its claims for trademark

18  infringement. The Spring League ("TSL") is the owner of two federal trademark

19  registrations for "USFL" (including one that that is "incontestable"), and it owns

20  numerous trademark applications for "United States Football League" and for the

21  team names and logos at issue, all of which TSL has licensed to USFL Enterprises for

22  its exclusive use. In contrast, all the Old League's trademark rights were abandoned

23  decades ago, leaving no valid rights to be assigned to Plaintiff. None of the purported

24  activities of Plaintiff's principals gave rise to new trademark rights since that

25  abandonment. Plaintiff's remaining claims for false advertising and tortious

26  interference fail because there is no evidence that Defendants disseminated any false

27  or misleading information, or that Plaintiff had any valid contracts with which

28  Defendants could interfere.

***Second***, Plaintiff cannot show irreparable harm absent an injunction. Plaintiff has identified only limited and easily quantifiable economic injury (*i.e.*, the purported loss of modest licensing revenues) which, even if proven, is compensable by damages. Plaintiff's unreasonable delay in seeking relief further undermines its claim of irreparable harm. Although Plaintiff's principals knew about the New League's plans for ***nine months***, they waited until the New League's launch to seek an injunction, in a transparent attempt to hold the New League hostage and extort a payment from Defendants merely so Defendants could avoid the chaos and disruption of defending this claim during the launch.

***Third***, the balance of equities weighs heavily against an injunction. Players for the New League are now at training camp. By the time this motion is heard, the season will be underway, with fans nationwide enjoying USFL football live or through television broadcast. Enjoining the New League in the midst of its inaugural season would cause irreparable damage to Defendants. By contrast, the only harm Plaintiff alleges is the claimed loss of apparel revenue—revenue that has been only a few thousand dollars a year (and that, in any event, was based on sales that violate TSL's registered USFL trademark).

***Fourth***, the public interest strongly disfavors injunctive relief. A mid-season injunction against use of the team names and the USFL brand—a brand in which TSL owns incontestable trademark rights dating back to 2011—would force cancellation of much, if not all, of the season; it would be impossible for the New League to develop and implement new names and acquire new equipment and uniforms with the season already underway. That would cause harm to many members of the public who are relying on the New League, including vendors, broadcasters, and millions of fans nationwide. For example, the City of Birmingham, Alabama and its local partners have invested considerable time and money in planning to host the New League and would lose millions of dollars in expected revenue if the New League is enjoined. It would be against the public interest to hobble an enterprise that will

benefit millions, especially given the weakness of Plaintiff's claims and the utter lack of irreparable harm.

## STATEMENT OF FACTS

### I.     The Failed Old League of the 1980s Abandoned All Trademark Rights

From 1983-85, a professional football league branded under the name "United States Football League" played three seasons, and then went defunct. This Old League—which consisted of separately-owned teams (the "Old Teams")—was operated by a New York unincorporated association (the "Association"). After 1985, the Old League and Old Teams never played another football game, and they ceased all sales of league and team merchandise. *See* Declaration of Brian Woods (Mar. 28, 2022) ("Woods Decl.") ¶ 6.

Prior to its demise, the Association owned more than 400 trademark registrations for the names and logos of the Old League and Old Teams (together, the "Association Marks"). All the Association Marks were subsequently cancelled and declared "Dead" by the U.S. Patent and Trademark Office ("USPTO"). The Association never assigned any of its trademark rights to the Old Teams, their owners, or to anyone else, and neither the Association nor the Old Teams or owners applied for any other registration in those marks. *See* Declaration of Keith Wesley (Mar. 28, 2022) ("Wesley Decl.") ¶ 16.

### II.     Defendants Secure Trademark Rights and Form the New League

On June 3, 2021, Defendants USFL Enterprises and TSL announced the creation of a new professional football league under the name "United States Football League" that would kick off its inaugural season in Spring 2022. Declaration of James Hale (Mar. 28, 2022) ("Hale Decl.") ¶ 5. The New League has generated widespread public excitement with continuous national and international media coverage over the past nine months. *See* Woods Decl. ¶ 12. The New League's eight teams are scheduled to play ten regular season games through mid-June 2022, semifinal playoff games on June 25, 2022, and the USFL Championship Game on July 3, 2022. Hale

Decl. ¶ 6.

Prior to announcing the New League, TSL acquired trademark registrations for the trademark "USFL" (the "League Marks") for use in connection with football games and apparel. TSL's registrations for the League Marks have priority dates of March 2011, when the applications were filed by an entity unaffiliated with the Old League. TSL also owns more than 100 trademark applications for the League Marks and for team names and logos (the "Team Marks"). No one associated with the Old League ever objected to or opposed any of these applications and registrations until this lawsuit—not in 2011 when the League Mark for apparel was published for opposition, not in 2012 when the League Mark for football entertainment was published for opposition, and not in 2019 and 2021 when various of the Team Marks were published for opposition. TSL has licensed the League and Team Marks to USFL Enterprises for its exclusive use in running the New League. *See* Wesley Decl. ¶¶ 7, 13; Woods Decl. ¶ 10.

Since June 2021, USFL Enterprises has invested tens of millions of dollars to develop the New League under the League and Team Marks, including through broadcasting, stadium, and apparel deals; conducting advertising campaigns on television, the Internet, and social media; hiring high-profile executives and head coaches; hiring hundreds of players, assistant coaches, trainers, equipment personnel, and other staff; and entering into a variety of business partnerships and relationships with advertisers and local vendors. *See* Hale Decl. ¶¶ 11-21.

USFL Enterprises sells USFL-branded league and team merchandise through the New League's official webstore, www.shopusfl.com. Among other partnerships, the New League has entered into a high-profile, multi-year media deal with NBC to broadcast USFL games (some games also will be broadcast on USFL Enterprises' sister networks, FOX and FS1). Tens of millions of viewers are expected to watch the games in 2022, including the inaugural game on April 16, which will be the first sporting event scheduled to air on competing broadcast networks (FOX and NBC)

since Super Bowl I in 1967. *See id.* ¶¶ 14-15. The New League held its inaugural draft on February 22-23, 2022, drafting 280 players to eight teams and offering them contracts guaranteeing a salary, low-cost housing, and a tuition-free college program; it held a supplemental draft, adding another 80 players, on March 10, 2022. Players reported to training camp on March 22, 2022. *See id.* ¶¶ 19, 24.

In promoting the USFL brand, Defendants have never represented that the New League is affiliated with the defunct Old League or its owners. New League representatives have truthfully stated that they are "bring[ing] back the USFL" brand and that the New League's team names, jerseys, and helmets are likely to elicit nostalgia among older football fans given the New League's inspiration from the long-abandoned names, jerseys, and helmets used by the defunct Old League and Teams. Rather than suggesting an affiliation with the Old League, as Plaintiff claims, Defendants have repeatedly stated that the New League is not affiliated with the Old League or any of its owners, *see* Hale Decl. ¶ 10, and media reports about the New League do not reflect confusion about the New League or its trademarks. *See* Declaration of Christopher Lauzau (Mar. 28, 2022) ¶¶ 5-9. Defendants also have consistently stated in press releases that "[t]he United States Football League (USFL) is a new, independent football league . . . and it is not associated or affiliated with the USFL of the 1980s or its owners." *See* Hale Decl. ¶ 10. Plaintiff offers no survey evidence supporting its claim that consumers confuse the New League as coming from Plaintiff or the owners of the defunct Old League.

**III.    Plaintiff Attempts to Disrupt the New League at the Eleventh Hour**

Plaintiff came into existence on February 22, 2022, six days prior to filing this lawsuit. Wesley Decl. Ex. 17. Plaintiff's principals—individuals who were affiliated with the Old League in the 1980s—have known about the New League's plans since June 2021, yet they waited until after the New League's launch to file this suit. *See* Pl.'s Br. at 7; Woods Decl. ¶¶ 14-20.

On June 3, 2021—the very day that the New League was announced—Steven

Ehrhart, an executive of the Old League, publicly alleged that TSL's trademark rights "didn't come from any legitimate source." Woods Decl. ¶ 14. Thereafter, Ehrhart and attorneys for some of the Old League's owners claimed that the New League's use of the League and Team Marks violated their rights. Declaration of Steven Ehrhart (Mar. 17, 2022) ("Ehrhart Decl.") ¶ 19; Declaration of Lynn Jordan (Mar. 27, 2022) ¶¶ 6-10. TSL responded with surprise given that the Old League abandoned all its trademark rights decades earlier and that TSL owned federal trademark registrations for the League Marks. TSL requested proof of the alleged rights, but the attorneys representing Plaintiff's principals repeatedly declined to provide any proof. Woods Decl. ¶¶ 16-19, Declaration of David H. Bernstein (Mar. 28, 2022) ("Bernstein Decl.") ¶¶ 5-11.

In the meantime, as Plaintiff's principals knew, USFL Enterprises continued to invest in football operations as it got closer to the draft in February 2022, training camp in March 2022, and kickoff in April 2022.

On March 2, 2022, after the New League's players were already drafted, Plaintiff filed a motion for a preliminary injunction; on March 17, Plaintiff filed an amended motion. (ECF Nos. 18, 71). Plaintiff's purported rights hinge on a series of February 2022 assignments from Plaintiff's principals, who claim to have held rights to the Association's abandoned trademarks. *See* Pl.'s Declaration of Kirk Dillman (Mar. 17, 2022) ("Dillman Decl.") Exs. 16-25. In particular, Mr. Ehrhart purports to have conducted business over the past thirty-five years as "United States Football League"—notwithstanding that the Association was defunct—and purports to have licensed trademark rights previously owned by the Association to various individuals. Dillman Decl. Ex. 25.

Mr. Ehrhart asserts that the Old League's owners "elected [him] to carry on the USFL's business," including collection of the USFL's $3.76 damages award against the NFL from its 1986 antitrust lawsuit. Ehrhart Decl. ¶ 5. There is no evidence, though, that the Association assigned any of its trademark rights to Mr. Ehrhart, or to

anyone else, before it ceased operations and abandoned its trademark rights; nor is there any evidence that Mr. Ehrhart was tasked to carry out any duties relating to the Association Marks on behalf of the defunct Old League. Moreover, the vast majority of Old Team owners do not claim to have used the Old League's trademarks in any manner whatsoever since those rights were abandoned and the registrations were canceled more than three decades ago.

Alternatively, Plaintiff claims rights in the Old League's trademarks based on four purported "uses" of those marks following abandonment of all of the Association Marks: (*i*) a commemorative "reunion" for the Memphis Showboats (an Old Team) and the Old League in 2007, and "reunions" for the Houston Gamblers (an Old Team) in 2010, 2015, and 2019; (*ii*) a "written license" from Mr. Ehrhart purporting to authorize Ken Dunek and Forgotten Stars Productions to use the Association Marks in connection with two films that were never released; (*iii*) a 2016 "written release" purporting to authorize Paul Reeths to use the Association Marks for a book that was published in 2017; and (*iv*) a July 2011 "licensing arrangement" purporting to authorize American Classics to use the Association Marks on apparel, executed months after TSL's predecessor in interest applied to register the League Marks in March 2011. *See* Pl. Br. at 3-6. The royalties from the purported apparel license averaged less than $500 per quarter in recent years. Bernstein Decl. ¶ 12. As explained below, none of these "uses" gives Plaintiff enforceable trademark rights, let alone any entitlement to a preliminary injunction.

## ARGUMENT

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008)). The plaintiff bears the burden of persuasion, by a clear showing, that an injunction should be granted. *Zone Champ Ltd. v. BLK Int'l, Inc.*, No. CV 10-4375, 2010 WL 11552979, at *1 (C.D. Cal. Aug. 5, 2010). The plaintiff must show "(1) a likelihood of success on the merits; (2) a likelihood of irreparable

1  harm if a preliminary injunction is not granted; (3) that the balance of equities tips in

2  the plaintiff's favor; and (4) that an injunction is in the public interest." *Id.* (citing

3  *Winter*, 555 U.S. at 20).

4  **I.      Plaintiff Is Unlikely to Succeed on Its Trademark Infringement Claims**

5          Plaintiff cannot show "that it owns a valid mark, that the mark was used

6  without its consent, and that such unauthorized use is likely to cause confusion,

7  mistake, or deception," *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d

8  1134, 1137 (C.D. Cal. 2009), for at least three reasons.

9          ***First***, it is TSL—***not*** Plaintiff—that owns trademark registrations in the League

10 Marks and numerous trademark applications in the Team Marks, all of which it has

11 licensed to USFL Enterprises for its exclusive use. ***Second***, the Association Marks in

12 which Plaintiff claims rights were abandoned decades ago. ***Third***, following the

13 abandonment, Plaintiff's principals did not independently establish any valid

14 trademark rights and had no rights to assign to Plaintiff.

15 **A.      <u>TSL Owns Valid Trademark Rights</u>**

16        TSL owns an incontestable federal trademark registration for USFL for apparel.

17 *See* Wesley Decl. ¶¶ 8, 11. An incontestable registration is "***conclusive*** evidence of

18 the validity of the registered mark . . . , of the registrant's ownership of the mark, and

19 of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C.

20 § 1115(b) (emphasis added). That means that TSL—not Plaintiff—is the ***conclusive***

21 owner of the USFL mark for apparel. TSL also owns a registration for USFL for use

22 in connection with football entertainment, which was applied for in March 2011.

23 Wesley Decl. ¶ 8. TSL's rights in the USFL League Marks therefore date back to

24 March 2011. 15 U.S.C. § 1057(c).

25        TSL also applied to register the Team Marks, and a number of those

26 applications already have been allowed by the USPTO. *See* Wesley Decl. ¶ 7. TSL's

27 registered trademarks and allowed applications all were published for opposition in

28 the *Office Gazette of the USPTO*. Neither Plaintiff nor any of the individuals who

1  purport to have assigned their rights to Plaintiff ever opposed those applications. *Id.*

2  ¶ 9.

3      Plaintiff baldly asserts that TSL's "purported 'USFL' marks are unenforceable"

4  and its "registrations are subject to cancelation for fraud," (Pl. Br. at 16), but Plaintiff

5  submits no supporting evidence. Instead, Plaintiff relies on unrelated criminal charges

6  against Jamie Cuadra, the CEO of TSL's predecessor in interest, concerning his

7  actions as the CFO of a seafood company that had nothing to do with the trademark

8  applications. Plaintiff provides no evidence that Mr. Cuadra fraudulently held himself

9  out as the Old League to the USPTO, to investors, or to anyone else. Plaintiff cannot

10  succeed on this motion in overcoming the conclusive evidence of validity and

11  ownership that attaches to TSL's incontestable trademark registration (for apparel)

12  and the presumption of validity that attaches to TSL's second USFL registration (for

13  football entertainment), particularly given that it is Plaintiff's burden to prove fraud

14  (and allege it with specificity pursuant to FRCP 9(b)). *EcoDisc Tech. AG v. DVD*

15  *Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010).

16      **B.   Plaintiff Owns No Trademark Rights**

17          *1.   The Marks Owned by the Old League Were Abandoned*

18      Neither Plaintiff, its principals, nor the Old Teams with which Plaintiff's

19  principals were associated, ever owned the trademark rights related to the Old League

20  or the Old Teams. As USPTO's records reflect, those trademark registrations all were

21  owned by the Association. Wesley Decl. ¶ 16. Accordingly, the purported

22  assignments from Plaintiff's principals to Plaintiff—in the days immediately before

23  Plaintiff filed the Complaint in this action—are facially invalid because they rest on

24  the demonstrably false statements that the Old Teams owned the Old League's

25  trademark rights. *See* Dillman Decl. Exs.16-25.

26      When the Association ceased operations in 1986, the Old League stopped

27  playing games, stopped selling merchandise, and stopped using the Association

28  Marks. The hundreds of Association Marks were subsequently canceled for nonuse,

1  and the Association's trademark rights were legally abandoned. Wesley Decl. ¶¶ 14,

2  16; Pl. Br. at 14 ("registration for the USFL marks made in the 1980s lapsed"); *see* 15

3  U.S.C. § 1127 (trademark is abandoned when use has been discontinued with intent

4  not to resume such use; three consecutive years of nonuse is "prima facie evidence of

5  abandonment"). Accordingly, Mr. Ehrhart and the former owners of the Old Teams

6  had no rights they could assign to Plaintiff more than thirty-five years later. *See* 3

7  MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY") § 18:19 (5th

8  ed.) ("An abandoned trademark is not capable of assignment."); *see also Money Store*

9  *v. Harriscorp Fin., Inc.*, 689 F.2d 666, 675 (7th Cir. 1982) (same), *aff'd*, 885 F.2d 369

10  (7th. Cir. 1989). Plaintiff's counsel conceded that no trademark rights were assigned

11  to Mr. Ehrhart, to the Old Teams, to the Old Team's owners, or to anyone else before

12  the Old League and the Old Teams shut down and the Association Marks were

13  abandoned. Bernstein 7-3 Decl. ¶ 12 (ECF 56).

14       Once a trademark is abandoned—as the Association Marks were—it is free for

15  anyone to adopt, and the prior owner cannot exclude others from using the trademark.

16  *Cascade Fin. Corp. v. Issaquah Cmty. Bank*, No. C07-1106Z, 2007 WL 2871981, at

17  *7 (W.D. Wash. Sept. 27, 2007). Accordingly, Plaintiff is simply wrong that the

18  Association's abandonment is "irrelevant." Pl. Br. at 22.

19       Plaintiff cites *Peter Luger Inc. v. Silver Star Meats Inc.*, No. Civ.A.01-1557,

20  2002 WL 1870066, at *2 (W.D. Pa. May 17, 2002), for the proposition that the

21  purportedly misleading use of an abandoned mark is actionable, Pl. Br. at 22-23, but

22  that case is inapposite. First, *Peter Luger* and its controversial concept of "residual

23  good will" is not good law in the Ninth Circuit; rather, the Ninth Circuit has

24  recognized that "[t]he first party to use an abandoned trademark in a commercially

25  meaningful way after its abandonment, is entitled to exclusive ownership and use of

26  that trademark." *Cal. Cedar Prods. v. Pine Mountain Corp.*, 724 F.2d 827, 830 (9th

27  Cir. 1984). Second, *Peter Luger* is distinguishable on the facts because the original

28  trademark owner in *Peter Luger* assigned the trademarks before going out of business.

1  The plaintiff in that case, which had purchased the marks before they were

2  abandoned, was transitioning its consumers to its new brand while seeking to retain

3  the old name's goodwill. The court held that any "residual goodwill" purchased by

4  the plaintiff through the marks that were still in use could be carried through to the

5  new brand. *Peter Luger,* 2002 WL 1870066, at *2-4, *14-15. In contrast, the

6  Association never assigned its marks to Plaintiff's principals, and the Old League

7  abandoned its marks by ceasing all use.

8       Plaintiff's reliance (Pl. Br. at 12-13) on *AECOM Energy & Constr., Inc. v.*

9  *Ripley,* No. 217CV05398RSWLSS, 2017 WL 4326373, at *1, 4 (C.D. Cal. Sept. 28,

10  2017), *aff'd sub nom.*, 748 F. App'x 115 (9th Cir. 2018), also is misplaced. The

11  *AECOM* plaintiff did not abandon the mark and was still using it in promotional

12  materials when defendant also began using it. *Id.* at *4. Unlike as in *AECOM*, the Old

13  League abandoned and ceased using any trademark rights it once had decades ago.  In

14  addition, unlike the *AECOM* defendant, the New League expressly disclaims any

15  affiliation with the owners of the Old League.

16       Plaintiff also relies on *578539 B.C., Ltd. v. Kortz* for the proposition that an

17  adopter of an abandoned trademark must take steps to avoid confusion with a former

18  owner. Pl.'s Br. at 22-23 (citing NO. CV 14-04375, 2014 WL 12572679, at *9 (C.D.

19  Cal. Oct., 16, 2014)). But *Kortz* also is inapplicable; it emphasized that failure to take

20  such steps generally "subjects [the adopter] to liability *to the former owner*." 2014

21  WL 12572679, at *9 (emphasis in original) (quoting Restatement (Third) of Unfair

22  Competition § 30 cmt. a (1995)). Because neither Plaintiff nor its principals ever

23  owned rights in the Association Marks, Plaintiff has no claim for purported confusion

24  with those marks. *See Sensoria, LLC v. Kaweske*, 20-cv-00942, 2021 WL 103020, at

25  14-15 (D. Colo. Jan. 21, 2021) (dismissing Lanham Act claims purportedly brought

26  on behalf of void corporation).

27          2.   <u>Plaintiff's Purported "Uses" Did Not Create New Rights</u>

28       In apparent recognition that the abandoned Association Marks cannot support

its claims, Plaintiff argues in the alternative that various "uses" by third parties, under purported licenses from Mr. Ehrhart, established trademark rights that Mr. Ehrhart assigned to Plaintiff. Pl. Br. at 3. But that argument ignores that Mr. Ehrhart owned no trademark rights that he could license in the first place. Indeed, Mr. Ehrhart "deleted" from the license with American Classics a representation that the alleged licensor, the United States Football League, "is duly organized" and "is the owner of the rights being granted to Licensee"; he also deleted a provision indemnifying American Classics for any claims related to the trademarks allegedly granted under the license. Ehrhart Decl., Ex. H. Because Mr. Ehrhart had no rights to license, the purported licenses are invalid. *Lathigee v. Wynn Operator, LLC*, No. 2:11-CV-1243, 2011 WL 6182097, at *1 (D. Nev. Dec. 13, 2011) ("If [the party] had no rights to the trademark, then no rights could have transferred from it to [the other party]").

The purported licenses, and alleged uses under those licenses, fail to establish trademark rights for additional, independent reasons, discussed below.

### (a)   TSL's Rights Are Senior to the American Classics License

TSL's rights in the League Mark date to March 2011, when TSL's predecessor in interest—an entity unaffiliated with the Old League—filed an application to register the mark. Wesley Decl. ¶¶ 7, 10. *See* 15 U.S.C. § 1057(c); *see also Brookfield Commc'ns, Inc.*, 174 F.3d 1036, 1051 n. 13 (9th Cir. 1999); MCCARTHY § 16:17. Mr. Ehrhart's agreement with American Classics lists its effective date as July 1, 2011, Ehrhart Decl., Ex. 8, and American Classics concedes that it did not begin selling apparel until at least August 2011. Declaration of David Brown (Mar. 17, 2022) ¶ 3. Plaintiff cannot rely on the agreement and sales to support its argument that "Mr. Ehrhart had at least as much right as Defendants to take up the marks," Pl. Br. at 22, because, once the registration for the League Mark issued in June 2012, the League Mark was deemed to be in constructive use by TSL's predecessor prior to any sale by American Classics of USFL shirts. That means that any sale by American Classics

violated the registered League Mark, which prevents Mr. Ehrhart from acquiring any rights through American Classics' infringing use. *See* 15 U.S.C. 1057(c) (application to use mark constitutes "constructive use of the mark, conferring a right of priority" over subsequent uses).

**(b)**   **American Classics' Ornamental Use Did Not Confer Rights in the Team Marks**

Plaintiff relies on the American Classics license to claim common law trademark rights in the names and logos of the Old Teams, Pl.'s Br. at 4, but that argument also is unavailing. As the Ninth Circuit has recognized, use of a "primarily aesthetic" design on t-shirts does not confer trademark rights in the design. *LTTB LLC v. Redbubble, Inc.*, 840 F. App'x 148, 152 (9th Cir. 2021).

For an ornamental design to give rise to trademark rights, it must be "used . . . to indicate the source of the goods." 15 U.S.C. § 1127; McCarthy § 3:4 ("If customers perceive a design solely and only as attractive ornamentation, then the design is not a trademark."). Plaintiff has provided no evidence that consumers purchased the American Classics t-shirts because they thought Plaintiff (or its principals) produced them or endorsed them, rather than because consumers liked the design or wanted t-shirts bearing nostalgic, retro sports symbols. *See LTTB*, 840 F. App'x at 151 (affirming judgment for defendant where plaintiff "presented no evidence that consumers buy the goods because the design associates the goods with the [plaintiff] rather than because they want goods bearing" the design). Plaintiff has produced no survey evidence showing that the logos of abandoned trademarks for defunct sports teams had any source-identifying significance to consumers. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 249 (5th Cir. 2010) ("[I]n a borderline case where it is not at all obvious that [a] designation has been used as a mark, survey evidence may be necessary to prove trademark perception.") (citation omitted)); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 977 F. Supp. 264, 267-68 (S.D.N.Y. 1997) (cancelling trademark registration for "decorative and

1   ornamental" design for shoes in part because registrant "failed to supply adequately
2   persuasive evidence, such as consumer surveys, that consumers associate the [design]
3   with a single source").

4        This failure of proof is unsurprising. When American Classics allegedly started
5   selling t-shirts bearing the retro names and logos of the Old League and Old Teams in
6   August 2011, the Old League and Old Teams had been defunct for a quarter of a
7   century. *See* Woods Decl. ¶ 6; Wesley Decl. ¶¶ 14–16. In the preceding 25 years,
8   neither Plaintiff nor Mr. Ehrhart had revived the Old League, nor had the teams
9   depicted on the American Classics shirts played a single football game. American
10  Classics' use of the Association Marks could not have been source-identifying
11  because there simply was no existing source for the marks to identify. *See Cove USA*
12  *LLC v. No Bad Days Enters., Inc.*, No. 20-cv-02314, 2022 WL 423399, at *3 (C.D.
13  Cal. Jan. 5, 2022) (denying motion for preliminary injunction where there was no
14  evidence that consumers purchased shirts because they identify plaintiff as the source
15  rather than because they found phrase on the shirts aesthetically pleasing).

16       The cases Plaintiff cites are inapposite. Unlike the uses in *Macy's* and *Bobosky*,
17  there is no evidence that American Classics used the "TM" or "®" symbols to identify
18  the Association as the source of its shirts. *See Macy's Inc. v. Strategic Marks, LLC*,
19  No. 11-CV-06198, 2016 WL 374147, at *5 (N.D. Cal. Feb. 1, 2016); *Bobosky v.*
20  *Adidas AG*, 843 F. Supp. 2d 1134, 1146 (D. Or. 2011). *Macy's* is particularly
21  irrelevant because, unlike in this case, "a claim of abandonment [wa]s not asserted"
22  there. *Macy's*, 2016 WL 374147, at *5. And, in contrast to the posture of *Macy's*,
23  Plaintiff is seeking to establish common law trademark rights through use, not to
24  enforce marks it registered or sought to register with the USPTO. *Id.* These cases do
25  not support Plaintiff's broad assertion that large logos printed on t-shirts are "usually"
26  source-identifying. Pl. Br. at 15. *See Bobosky*, 843 F. Supp. at 1145 ("[T]he larger the
27  display relative to the size of the goods, the more likely it is that consumers will ***not***
28  view the ornamental matter as a mark.") (emphasis added; quotation omitted).

**(c)** **Ehrhart's Naked Licenses Eviscerated Any Purported Trademark Rights**

Even if Mr. Ehrhart owned rights that he could license (he did not), those rights were abandoned because the purported licenses included no "quality control" provisions governing use of the marks. One agreement, written on the letterhead of Mr. Ehrhart's company Sports Consultants, Inc. (which has no relationship to the defunct Old League), purported to grant "the rights to use the USFL name, logo, likeness, and game footage video for an upcoming documentary about the league." Ehrhart Decl., Ex. E. Another agreement purported to give Forgotten Stars Productions a "license for the use of the Name, Symbol and Logo for the USFL 'Logo.'" Ehrhart Decl., Ex. G. Neither included quality control.

Agreements that lack any quality controls are "naked licenses," constituting abandonment of the claimed trademarks. *See FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010) ("The absence of an agreement with provisions restricting or monitoring the quality of goods or services produced under a trademark supports a finding of naked licensing."); *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 596 (9th Cir. 2002) (winemaker engaged in naked licensing where agreement lacked quality control provision); *First Interstate Bancorp v. Stenquist*, No. C-89-4106, 1990 WL 300321, at *3 (N.D. Cal. July 13, 1990) (When a trademark owner "engages in naked licensing, without any control over the quality of goods produced by the licensee, such a practice is inherently deceptive and constitutes abandonment of any rights to the trademark by the licensor."). Mr. Dunek's occasional emails to Mr. Ehrhart, which provided updates on the unfinished film projects, do not constitute the "ongoing monitoring" of the nature and quality of Mr. Dunek's goods that would be necessary to defeat a naked licensing challenge. *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1132 (9th Cir. 2006); *see* Ehrhart Decl., Exs. D, F.

**(d)** **The Purported Dunek, Argovitz, Ehrhart, and Reeth Uses Do Not Establish Trademark Rights**

The "uses" Dunek and Forgotten Stars Productions claim are not uses in commerce that can give rise to common law trademark rights. "Use in commerce" requires the "bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. "A mark cannot serve a source-identifying function if the public has never seen the mark and thus is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner." *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 817-18 (9th Cir. 2021) (quoting *Brookfield Commc'ns*, 174 F.3d at 1051) (internal quotation marks omitted). As Plaintiff concedes, neither contemplated film has been publicly released. Pl.'s Br. at 5-6. The release of one film's trailer, on which Plaintiff relies, is nothing more than pre-release publicity insufficient to create trademark rights. *Willpat Prods., Inc. v. Sigma III Corp.*, 227 F. Supp. 354, 355-57 (S.D.N.Y. 1964) (pre-release publicity insufficient to create trademark rights in movie title).

The alleged "reunions," which are described as sporadic retrospective events where former players and fans could celebrate the Old League and an Old Team, Pl. Br. at 4-5, similarly are not "uses" of the relevant marks "in commerce." *See Major League Baseball Props., Inc. v. Sed Non Olet Denarius Ltd.*, 817 F. Supp. 1103, 1114, 1128-29 (S.D.N.Y. 1993) (use of team name to honor former players and hold annual old timer's games "do not constitute trademark uses"), *vacated by settlement*, 859 F. Supp. 80, 80-81 (S.D.N.Y. 1994); *see also Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d 402, 435 (E.D. Pa. 2009) (sales of defunct magazine's memorabilia at conventions did not constitute use of trademark sufficient to "avoid abandonment of the mark").

Lastly, Mr. Ehrhart's purported license to Paul Reeths to "use the USFL league and team logos" in a book, *see* Pl.'s Br. at 5, is not a trademark use, and similarly fails to establish rights. *See generally New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) ("nominative use of a mark . . . lies outside the

strictures of trademark law" because such use "does not implicate the source-identification function that is the purpose of trademark"); *cf. Silverman v. CBS Inc.*, 870 F.2d 40, 47-48 (2d Cir. 1989) (sporadic licensing for documentary and educational programs were "essentially non-commercial uses" that could not "rebut abandonment").

## II.  Plaintiff Is Unlikely to Succeed on Its Remaining Claims

Plaintiff is unlikely to succeed on its claims sounding in false advertising (Claims 2-5). Where a primary claim for trademark infringement fails because of abandonment, secondary claims that a defendant "engaged in false designation or representation of origin" for those trademarks should meet the same fate. *Exxon Corp. v. Humble Exploration Co., Inc.*, 695 F.2d 96, 103-04 (5th Cir. 1093).

Moreover, claims sounding in false advertising require statements that are false or likely to mislead consumers. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (false advertising under 15 U.S.C. § 1125(a)); *Marco Bicego S.P.A. v. Kantis*, No. No. 17-cv-00927, 2017 WL 2651985, at *3 (N.D. Cal. June 20, 2017) (false association under 15 U.S.C. § 1125(a)); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1149 (N.D. Cal. 2010) (prohibited advertising under California's Unfair Competition Law); *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1091 (C.D. Cal. 2015) (false advertising under California's False Advertising Law).[1]

Plaintiff provides no evidence that Defendants disseminated any false or misleading information. The many news articles and social media posts submitted by Plaintiff do not contain ***any*** statement by Defendants that the New League is the same as the Old League, or that it is associated with former owners of the Old Teams or with Plaintiff. To the contrary, the articles Plaintiff cites prominently state that the

---

[1] Plaintiff's eighth and ninth claims, for trademark cancellation and declaratory judgment, are requests for particular forms of relief rather than standalone claims on which Plaintiff seeks an injunction.

1   New League "is **not** affiliated with previous ownership." Dillman Decl. Ex. 12, p. 4)

2   (emphasis added). Plaintiff also cites truthful statements that the USFL brand—**not**

3   the Old League—would "return" and "relaunch" in 2022, and a truthful statement

4   from a New League executive that he was "passionate about . . . bring[ing] back the

5   USFL." Pl. Br. at 8-9. Rather than implying any association between the New League

6   and the Old League or its owners, these statements accurately refer to the nostalgia

7   among older football fans for the names, jerseys, and helmets selected by the New

8   League, given their inspiration from the long-abandoned names, jerseys, and helmets

9   used by the defunct Old League in the 1980s. *See* Woods Decl. ¶ 13. In the words of a

10  New League executive, the family of USFL marks owned by the New League is a

11  "known brand." *See* Pl. Br. at 11. To the extent Plaintiff relies on statements made by

12  third parties unrelated to Defendants (*see* Dillman Decl. Exs. 9, 10), those statements

13  are not actionable. *See, e.g.*, *Anson v. Weinstein*, No. CV 17-8360, 2019 WL 6655260,

14  at *6 (C.D. Cal. Mar. 26, 2019) (dismissing false advertising claims based on

15  statements made by third parties).

16      Putting aside Plaintiff's failure to satisfy the elements of its claims, Plaintiff

17  also lacks standing to bring false advertising and association claims. Plaintiff does not

18  offer any goods or services and does not compete with the New League, so it will not

19  suffer the type of "competitive injury" necessary to confer standing. *Jack Russell*

20  *Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir.

21  2005) (dismissing false advertising claim for lack of standing because parties did not

22  compete); *accord Barrus v. Sylvania*, 55 F.3d 468, 469-70 (9th Cir. 1995). Plaintiff

23  does not have standing to bring a false association claim because it cannot show that

24  Defendants caused any "injury to commercial interests." *See Condit v. Star Editorial,*

25  *Inc.*, 259 F. Supp. 2d 1046, 1050 (E.D. Cal. 2003).

26      Plaintiff's claim for tortious interference with contract or business relations

27  (Claim 7) fares no better because Plaintiff cannot show the existence of valid

28  contracts. *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 532 (N.D. Cal. 2000). As

discussed above, Mr. Ehrhart never owned trademark rights in the Association Marks for the Old League or the Old Teams; indeed, he himself disclaimed ownership of the marks in the very licensing agreement he signed. Any agreement purporting to license such rights was facially invalid.

The tortious interference claim also fails because cease and desist letters do constitute the "wrongful act" legally necessary to interfere with prospective business relations. *Sparrow LLC v. Lora*, 2014 WL 12573525, at *4 (C.D. Cal. Dec. 4, 2014) (cease and desist letters could not support tortious interference claim due to protected speech status); *H. Nation v. Pepe Jeans London*, No. CV 08-6533, 2008 WL 11338512, at *1 (C.D. Cal. Dec. 15, 2008) (striking tortious interference claim because "sending such letters is protected activity"). Moreover, Plaintiff does not provide any evidence of, let alone allege, a single prospective opportunity it lost as a result of any purported interference. Vague references to "arrangements with other companies," (Compl. at ¶ 115), are insufficient. *See Martin v. Walt Disney Internet Grp.*, No. 09CV1601-MMA, 2010 WL 2634695, at *10 (S.D. Cal. June 30, 2010) (dismissing interference claim because "Plaintiff does not identify a specific economic opportunity or advantage that she lost").

## III. Plaintiff Will Not Suffer Irreparable Harm Absent an Injunction

Plaintiff's motion should independently be denied because Plaintiff fails to submit evidence of irreparable harm. Its conclusory assertion of irreparable harm is wholly rebutted by: (*i*) Plaintiff's delay in seeking injunctive relief, and (*ii*) the adequacy of money damages.[2]

### A.  Plaintiff's Delay Undermines Any Claim of Irreparable Injury.

Plaintiff's delay of nine months in seeking injunctive relief "demonstrates the

---

[2] "Because Plaintiff fails to demonstrate a likelihood of success on the merits, the rebuttable presumption of irreparable harm pursuant to 15 U.S.C. § 1116(a) does not apply." *Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.*, CV 20-10220, 2021 WL 2497928, at *7 (C.D. Cal. May 19, 2021). But even if there were a presumption, it is rebutted given the delay and adequacy of money damages.

1   lack of any irreparable harm." *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55

2   F. Supp. 2d 1070, 1090 (C.D. Cal. 1999) (five-month delay militated against

3   injunction). The New League announced its planned launch of the USFL brand in

4   June 2021. Pl. Br. at 7. Mr. Ehrhart publicly challenged the New League's right to use

5   its marks that same day. Over the following months, TSL engaged with Mr. Ehrhart

6   and other individuals who purported to own trademark rights, and repeatedly

7   requested details regarding those purported rights given that the Association Marks all

8   were abandoned more than three decades earlier. Pl. Br. at 8-10. Mr. Ehrhart and his

9   partners never provided any substantiation for their bald assertion of rights. Woods

10  Decl. ¶¶ 16-19, Bernstein Decl. ¶¶ 5-11. That failure, and Plaintiff's long delay in

11  bringing this motion, is inconsistent with Plaintiff's sudden contention of irreparable

12  harm absent an injunction.

13      Indeed, despite advance knowledge of USFL Enterprise's plan to launch the

14  New League, no one moved to enjoin use of the League Marks and the Team Marks

15  until the New League's launch. Plaintiff's principals waited nine months to form

16  Plaintiff, and did so only in the days immediately before commencing litigation, with

17  assignments that are facially invalid. This delay dispels any claim of irreparable harm.

18  *Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*, No. SACV 11-0313, 2011 WL

19  2269991, at *3 (C.D. Cal. June 9, 2011) (denying injunctive relief where plaintiff

20  delayed eight months); *iFreedom Direct Corp. v. McCormick*, No. SACV 16-470,

21  2016 WL 9049647, at *4 (C.D. Cal. June 15, 2016) (approximately ten-month delay

22  contravened claim for irreparable harm).

23      Plaintiff's principals' episodic correspondence with Defendants provides no

24  excuse for Plaintiff's delay. *See Kerr*, 2011 WL 2269991, at *3 (pre-suit discussions

25  with defendant did not mitigate delay in seeking injunction); *iFreedom*, 2016 WL

26  9049647, at *4 (cease and desist letter and party communications did not excuse

27  delay). That is especially true where, as here, TSL firmly and consistently asserted its

28  trademark rights. Pl. Br. at 8-10.

### B.   Any Harm to Plaintiff Is Compensable with Money Damages.

Far from being irreparable, any alleged harm to Plaintiff could be fully remedied by money damages. *Batts v. Adams*, No. CV 10-8123, 2011 WL 13217923, at *8 (C.D. Cal. Feb. 8, 2011) ("Irreparable injury does not exist where monetary damages would provide an adequate remedy."); *see also Fighters Inc., LLC v. Elec. Arts, Inc.*, No. CV 09-06389, 2009 WL 10699504, at *10 (C.D. Cal. Oct. 30, 2009) (no irreparable harm in trademark infringement action where money damages would adequately compensate plaintiff). Plaintiff's Amended Complaint repeatedly describes what it purportedly stands to lose: "economic gain" (Compl. at ¶¶ 82, 89, 93, 97, 104, 110, 124). Such a loss is a compensable, not irreparable. *See Dreamer Enters., Inc. v. Hankook Trading, Inc.*, No. CV 14-4704, 2014 WL 12571418, at *2 (C.D. Cal. Aug. 20, 2014) (denying injunction where plaintiff failed to show that money damages would not compensate for lost sales).

Indeed, the only lost business opportunity Plaintiff claims is the loss of modest American Classics royalties—harm that can easily be quantified based on the terms of the license agreement and prior sales. *See Hoffman-La Roche Inc. v. Promega Corp.*, No. C-93-1748, 1994 WL 761241, at *8 (N.D. Cal. June 13, 1994) (alleged interference with licensing products was a "purely economic injur[y], easily calculable and fully compensable through subsequent monetary damages"); *Fox Broad. Co., Inc. v. Dish Network, LLC*, 905 F. Supp. 2d 1088, 1110 (C.D. Cal. 2012) (licensing agreement values rendered harm "calculable in money damages"), *aff'd*, 747 F.3d 1060 (9th Cir. 2014).

### IV.   The Balance of Equities Favors Defendants

An injunction also should be denied because Plaintiff's alleged harms are immaterial compared to the draconian hardships an injunction would impose upon Defendants. *See Cal. Cedar Prods.*, 724 F.2d at 831 (party's "major investment" in product "sharply" outweighed another party's minimal sales activity).

On one side of the ledger, Plaintiff purports to enforce trademarks that it

allegedly acquired just last month, and that were never registered, not maintained, not used in a manner that conferred trademark rights, and that no one even claimed to own until USFL Enterprises and TSL announced the establishment of the New League. Plaintiff is not engaged in a football league of any kind, and it asserts only that it will lose licensing revenue absent an injunction. That is not a compelling case for injunctive relief.

On the other side of the ledger, Defendants face severe, irreparable hardships. USFL Enterprises is using an incontestable trademark for USFL and has pending applications for the League Marks and Team Marks. On that basis, USFL Enterprises has invested tens of millions of dollars and countless hours of employee time to launch the New League under the USFL brand. That investment includes (*i*) acquiring intellectual property rights from others who had rights in USFL assets; (*ii*) negotiating television broadcast and stadium agreements; (*iii*) hiring coaches and players; (*iv*) entering into agreements for ticketing and apparel sales; and (*v*) spending millions of dollars on advertising. Hale Decl. ¶¶ 11-21. The culmination of that immense effort is just days away. Hundreds of players already are in training camp; by the time this motion is heard, *the first games will have already been played.* Because Plaintiff strategically waited until the last possible minute to seek relief, an injunction now would likely be a fatal blow to the entire season and would endanger the survival of the New League. *See id.* ¶¶ 22-29; *Edge Games, Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d 1101, 1118 (N.D. Cal. 2010) (rejecting injunction as "plainly inequitable and highly prejudicial" because plaintiff delayed seeking relief while defendant "invested millions of dollars into building and promoting" franchise); *Desert Prot. Council v. U.S.D.I.*, No. 12cv1281, 2012 WL 13175866, at *5 (S.D. Cal. Sept. 28, 2012) (equities favored defendant where plaintiff waited to seek relief until project broke ground and defendant invested millions of dollars).

This case is similar to *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1039 (N.D. Cal. 2003). In *Halo*, the plaintiff issued naked licenses without

formal quality control measures (similar to the licenses that Mr. Ehrhart purported to grant in this case) and attempted to enforce trademark rights that "it ha[d] not maintained consistently and that it ha[d] not developed attentively." *Id.* The court held that the plaintiff's claimed loss of poorly-protected marks was heavily outweighed by the prospective loss of defendant's "substantial business expenditures" in using the marks. *Id.* That reasoning applies with even greater force here given that Plaintiff waited months to seek relief that will jeopardize the New League's season and Defendants' substantial business expenditures. *See Sterling M. Enters. v. Lee Sandwiches*, No. C 05-04477, 2006 WL 228946, at *5 (N.D. Cal. Jan. 30, 2006) (denying injunction to stop restaurant opening because defendant would "lose whatever cost it has incurred in planning . . . as well as any revenue attributable to that restaurant"); *Cable Educ. Network, Inc. v. Paramount Pictures*, No. HM-90-992, 1990 WL 279510, at *2 (D. Md. Apr. 12, 1990) (equities favored defendant against injunction days before television show launch due to "considerable" hardships an injunction would cause).

## V.      The Public Interest Weighs Against an Injunction

The injunction also should be denied because it would harm the public interest in numerous ways:

- If the 2022 USFL season is derailed, numerous businesses in the city of Birmingham, Alabama (host to most of the scheduled games) will lose significant revenue. Declaration of James A. Stephens (Mar. 25, 2022) ("Stephens Decl.") ¶¶ 8, 13; Declaration of James Thomas Waggoner Jr. (Mar. 25, 2022) ("Waggoner Decl.") ¶¶ 15-16; Gene Marshall Hallman Jr. (Mar. 25, 2022) ("Hallman Decl.") ¶ 6, 8, 9; Hale Decl. ¶¶ 31-32, 34, 36; Declaration of Tad Snider (Mar. 25, 2022) ("Snider Decl.") ¶¶ 7-13; Declaration of Lindsey Noah McAdory (Mar. 28, 2022) ("McAdory Decl.") ¶¶ 6-7.

- An injunction would jeopardize players' pay, which depends on the players being on active rosters, participating in training camp, and winning games. Hale

1    Decl. ¶ 33.

2    • If games are not played, more than 500 people would face uncertainty regarding

3      their employment, including players, stadium workers, team staff, and

4      employees of the League's business partners. *Id.* ¶ 34; McAdory Decl. ¶ 7;

5      Hallman Decl. ¶ 8.

6    • An injunction would harm NBC, which has made a significant investment in

7      broadcasting rights for USFL games. Advertisers purchased time from NBC on

8      the assumption that the New League's games would be broadcast under the

9      League Marks. NBC also would be forced to scramble to modify its prime-time

10     television schedules across its various networks, just weeks or even days before

11     the games are scheduled for broadcast. *Id.* ¶ 29; Declaration of Jon Miller (Mar.

12     26, 2022) ¶ 7-15.

13   • An injunction would similarly disrupt the advertisers on the FOX and FS1

14     networks and the FOX and FS1 television spring schedule. Hale Decl. ¶ 31.

15   • An injunction would harm millions of consumers who plan to watch USFL

16     football in person, on TV, and on the Internet. Hale Decl. ¶¶ 14, 35. It would

17     render tickets worthless and would leave the public with no USFL games to

18     watch. *See Regents of U.C.L.A. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 521 (9th

19     Cir. 1984) (recognizing public interest in nationwide broadcast of popular

20     football game).

21   • An injunction would harm the League's business partners, including

22     Ticketmaster, concessions vendors, mascot vendors, and apparel distributors, all

23     of whom have invested time and money into the upcoming season, in addition to

24     other community stakeholders. Woods Decl. ¶ 19; Hale Decl. ¶¶ 31, 36;

25     Stephens Decl. ¶¶ 5, 9, 12-14; Waggoner Decl. ¶¶ 5-17; Hallman Decl. ¶ 5-9;

26     Snider Dec. ¶¶ 7-13; McAdory Decl. ¶¶ 6-11.

27     The court's analysis of the public interest in *HRP Creative Servs. Co., LLC v.*

28   *FPI-MB Entm't, LLC*, 616 F. Supp. 2d 481, 491 (D. Del. 2009), is instructive. In

*HRP*, the plaintiff had no imminent or concrete plans to use certain trademarks yet opposed the defendant's plan to open an amusement park using those marks. *Id.* The court denied an injunction because it would frustrate the public interest (families would be unable to visit the park as planned and employees' jobs would be put at risk). *Id.* Similar considerations here (*e.g.*, preventing the public from viewing or attending games and placing extensive plans at risk) overwhelmingly disfavor an injunction. *See W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) (injunction denied on public interest considerations, including potential loss of jobs); *Protect Our Cmtys. Found. v. U.S.D.A.*, 2011 WL 13356151, at *12 (S.D. Cal. Sept. 15, 2011) (denying injunction because "[m]aintaining jobs is in the public interest."); *Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1115 (E.D. Cal. 2013) ("public interest in providing economic benefits to [industry] and communities" is "compelling").

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for a preliminary injunction.

Dated: March 28, 2022

**DEBEVOISE & PLIMPTON LLP**

**ELLIS GEORGE CIPOLLONE O'BRIEN ANNAGUEY LLP**

David H. Bernstein

By:  */s/ David H. Bernstein*
        David H. Bernstein

*Attorneys for Defendants*
*The Spring League, LLC*; USFL *Enterprises, LLC*; *Fox Corporation*; *Fox Sports 1, LLC*; *Fox Sports 2, LLC*; *Fox Sports Holdings, LLC*; *Fox Sports Productions, LLC*; *Foxcorp Holdings, LLC*; *Fox Media LLC*; and *Fox Sports Interactive Media, LLC.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-26-

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March, 2022, I electronically filed the foregoing   with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**SERVICE LIST**
***The Real USFL, LLC v. Fox Ports,***
***Inc. et al.***
**Case No. 2:22-cv-01350-JFW-MAR**

Kirk Dillman (State Bar No. 110486)

kdillman@mckoolsmithhennigan.com
M. Storm Byrd (State Bar No. 319387)
 sbyrd@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Nicholas T. Matich (admitted pro hac vice)
 nmatich@mckoolsmith.com
MCKOOL SMITH P.C.
1999 K Street, NW, Suite 600
Washington. DC 20006

Mark Lanier (admitted pro hac vice)
 wml@lanierlawfirm.com
Alex J. Brown (admitted pro hac vice)
alex.brown@lanierlawfirm.com
 Zeke DeRose III (admitted pro hac vice)
THE LANIER LAW FIRM
6810 FM 1960 West
Houston. TX 77069

Joseph O. Slovacek (admitted pro hac vice )
 slovacek@hooverslovacek.com
HOOVER SLOVACEK LLP
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, TX 77056

2018716.1

-27-

Case No. 22-cv-01350-JFW-MAR

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1

2

Eric B. Halper (admitted pro hac vice)
  ehalper@mckooolsmith.com
John C. Briody (admitted pro hac vice)
  jbriody@mckoolsmith.com
Radu A. Lelutiu (admitted pro hac vice)
  rlelutiu@mckoolsmithlcom.com
Laura Baron (admitted pro hac vice)
  lbaron@mckoolsmith.com
MCKOOL SMITH P.C.
395 Ninth Avenue
New York, NY 10001

3

4

5

6

7

8

9

10

11

12

Thomas J. Eisweirth (admitted pro hac vice)
  teisweirth@mckoolsmith.com
MCKOOL SMITH P.C.
600 Travis Street, Suite 7000
Houston, TX 77002

13

14

Attorneys for Plaintiff
The Real USFL LLC

15

16

17

18

19

20

21

22

23

24

*/s/David Bernstein*
David Bernstein

25

26

27

28