Kirk Dillman (SBN 110486)
kdillman@mckoolsmithhennigan.com
M. Storm Byrd (SBN 319387)
sbyrd@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Nicholas T. Matich (admitted *pro hac vice*)
nmatich@mckoolsmith.com
MCKOOL SMITH P.C.
1999 K Street, NW, Suite 600
Washington, DC 20006

Mark Lanier (admitted *pro hac vice*)
wml@lanierlawfirm.com
Alex J. Brown (admitted *pro hac vice*)
alex.brown@lanierlawfirm.com
Zeke DeRose III (admitted *pro hac vice*)
THE LANIER LAW FIRM
6810 FM 1960 West
Houston, TX 77069

*Attorneys for Plaintiff*
*The Real USFL, LLC*

Additional counsel on the inside page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE REAL USFL, LLC, a New York limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>FOX SPORTS, INC, a Delaware corporation; THE SPRING LEAGUE, LLC, a Delaware limited liability company; USFL ENTERPRISES, LLC, a Delaware limited liability company; FOX CORPORATION, a Delaware corporation; FOX SPORTS 1, LLC, a Delaware limited liability company; FOX SPORTS 2, LLC a Delaware limited liability company; | Case No. 2:22-cv-1350-JFW (MARx)<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:       April 18, 2022<br>Time:       1:30 p.m.<br>Crtrm:      7A<br>The Honorable John F. Walter<br>Trial Date: not set |

FOX SPORTS HOLDINGS, LLC a Delaware limited liability company; FOX SPORTS PRODUCTIONS, LLC a Delaware limited liability company; FOXCORP HOLDINGS, LLC a Delaware limited liability company; FOX MEDIA LLC, a Delaware limited liability company; FOX SPORTS INTERACTIVE MEDIA, LLC a Delaware limited liability company,

Defendants.

Joseph O. Slovacek (admitted *pro hac vice*)
slovacek@hooverslovacek.com
Hoover Slovacek LLP
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, TX 77056

Eric B. Halper (admitted *pro hac vice*)
ehalper@mckooolsmith.com
John C. Briody (admitted *pro hac vice*)
jbriody@mckoolsmith.com
Radu A. Lelutiu (admitted *pro hac vice*)
rlelutiu@mckoolsmithlcom.com
Laura Baron (admitted *pro hac vice*)
lbaron@mckoolsmith.com
MCKOOL SMITH P.C.
395 Ninth Avenue, 50th Fl.
New York, NY 10001

Thomas J. Eisweirth (admitted *pro hac vice*)
teisweirth@mckoolsmith.com
MCKOOL SMITH P.C.
600 Travis Street
Suite 7000
Houston, TX 77002

TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 1

    Defendants' Marks Should Be Canceled for Fraud: ......................................... 1

    Success on Plaintiff's False Advertising and False Association Claims Is a Certainty. ............................................................................................... 2

    The Real USFL Has Suffered Irreparable Injury. ............................................ 4

    Defendants' Delay Argument Is Meritless ....................................................... 6

    No One Is Harmed by Making Defendants Use their Own Name ................... 7

    Defendants Concede that No Bond Is Necessary ............................................ 9

    The American Classics Sales Were a Trademark Use. ................................... 9

    Defendants' Trademark Abandonment Defense Fails ................................... 10

    Defendants' Trademark Abandonment Defense Is Irrelevant: ...................... 11

    Defendants Are Liable under *Peter Luger* ..................................................... 11

    Defendants' Naked Licensing Theory Is Irrelevant ....................................... 11

    Defendants' Naked Licensing Theory Fails .................................................. 11

    The Real USFL's Reunions Were Trademark Uses ...................................... 12

    The Real USFL's Authorized History Was a Trademark Use ...................... 12

CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abdul-Jabbar v. General Motors Corp.*,
   85 F.3d 407 (9th Cir. 1996) ..................................................................................12

*AECOM Energy & Constr., Inc. v. Ripley*,
   No. 217CV05398RSWLSS, 2017 WL 4326373 (C.D. Cal. Sept. 28, 2017),
   aff'd sub nom., 748 F. App'x 115 (9th Cir. 2018) ..................................................3

*Arc of California v. Douglas*,
   757 F.3d 975 (9th Cir. 2014) ..................................................................................6

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*,
   289 F.3d 589 (9th Cir. 2002) ................................................................................12

*Exxon Corp. v. Humble Expl. Co.*,
   695 F.2d 96 (5th Cir. 1983) ....................................................................................2

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   314 F.2d 149 (9th Cir. 1963) ..................................................................................4

*General Cigar Co., Inc. v. G.D.M. Inc.*,
   988 F.Supp. 647 (S.D.N.Y. 1997) ........................................................................11

*Greater Los Angeles Softball Ass'n v. Ryan*, No. CV1704404JFWPJWX,
   2017 WL 8292779 (C.D. Cal. Sept. 21, 2017) (Walter, J.) ...................... 5, 7, 8, 9

*Guess?, Inc. v. Tres Hermanos*,
   993 F.Supp. 1277 (C.D. Cal. 1997) .......................................................................7

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
   738 F.3d 1085 (9th Cir. 2013) ..............................................................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ...............................................................................................4

*In Re Paramount Pictures Corp.*,
   217 U.S.P.Q. (BNA) ¶ 292 (T.T.A.B. Mar. 1, 1983) ............................................9

*Int'l Elec. Co. v. Int'l Elec. Fence Co.*,
   181 F.2d 322 (9th Cir. 1950) ................................................................................10

McKool Smith Hennigan, P.C.
Los Angeles, CA

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

*Kingsmen v. K-Tel Int'l Ltd.*,
    557 F. Supp. 178, 183 (S.D.N.Y. 1983) ............................................................... 10

*LTTB LLC v. Redbubble, Inc.*,
    840 F. App'x 148 (9th Cir. 2021) ......................................................................... 9

*Macy's Inc. v. Strategic Marks, LLC*, No. 11-CV-06198-EMC,
    2016 WL 374147 (N.D. Cal. Feb. 1, 2016) ......................................................... 9

*Peter Luger Inc. v. Silver Star Meats Inc.*,
    2002 WL 1870066 (W.D. Pa. May 17, 2002) .................................................... 11

*San Diego County Credit Union v. Citizens Equity First Credit Union*,
    541 F.Supp.3d 1110 (S.D. Cal. 2021) ................................................................ 10

*Toho Co., Ltd. v. William Morrow and Co., Inc.*,
    33 F.Supp.2d 1206 (C.D. Cal. 1998) ............................................................ 5, 12

*Vans, Inc. v. Walmart, Inc.*, No. 8:21-cv-01876-DOC-KES,
    slip op. (C.D. Cal. Mar. 31. 2022) ....................................................................... 6

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
    758 F.3d 1069 (9th Cir. 2014) .............................................................................. 2

*Wetzel's Pretzels, LLC v. Johnson*,
    797 F. Supp. 2d 1020 (C.D. Cal. 2011) ........................................................... 6, 9

*Wood v. County of Alameda*, No. C 94 1557 TEH,
    1995 WL 705139 (N.D. Cal., Nov. 17, 1995) ..................................................... 9

**STATUTES**

15 U.S.C. § 1125(a) .................................................................................................. 2, 11

**OTHER AUTHORITIES**

H.R. REP. NO. 116-645, pt. D.1., at 17 (2020). .......................................................... 5

McCarthy on Trademarks and Unfair Competition § 20:58 (5th ed.) ....................... 2

McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.) ..................... 10

# ARGUMENT[1]

1. Just ten days ago—before an audience of 1.3 million people—a popular Fox morning news host described Fox's league by listing great players of the ***original*** USFL, like "Jim Kelly and Steve Young."[2] He then declared: "these ***same teams* are *back*.**"[3] In short, when they are not in court, Defendants masquerade as ***the original USFL*** and co-opt the legacy of the Real USFL owners as their own. Accordingly, Plaintiff's likelihood of success on the merits is exceptionally high.

2. Unable to engage the merits, Defendants deflect, asserting that (1) an injunction will hurt third parties; and (2) the Real USFL waited too long to sue. False. Any purported harm to third parties stems from Defendants' threats to shut down their league if they're enjoined. But, the Real USFL isn't seeking to enjoin their phony league—***all the league needs to do is rename itself and its teams***. Despite Defendants' protests, re-branding is a trivial exercise. *See* Grooms Decl., ¶¶ 3-8.

3. Defendants' assertions that the Real USFL unreasonably delayed filing suit are equally hollow. Defendants did not announce their decision to use the team marks until late *November 2021* or the date of the 2022 official league season until *January 2022*. In *December* 2021, Defendants' own lawyer said the former owner's involvement in the league was a "good idea." It was not until *Christmas week* 2021 that Defendants succeeded in intimidating American Classics and began threatening litigation against the Real USFL's members. Notwithstanding the Omicron COVID surge, Plaintiff filed its complaint only two months later.

4. **Defendants' Marks Should Be Canceled for Fraud:** Defendants do not deny that their USFL marks came from a fraudulent league run by felon Jamie Cuadra. Defendants also do not dispute that, if Cuadra's League was fake, their marks are invalid. Fraud on the USPTO defeats even purportedly "incontestable" trademarks.

---

[1] Terms defined in Plaintiff's opening brief shall have the same meaning herein.
[2] https://video.foxnews.com/v/6301702859001/#sp=show-clips (emphasis added).
[3] Declaration of M. Storm Byrd ("Byrd Decl."), Ex. 1.

McCarthy on Trademarks and Unfair Competition § 20:58 (5th ed.).Their *only* defense of the marks' validity is that the Real USFL did not plead Cuadra's fraud with specificity and "provided no evidence" for it. Defs.' Opp. [Dkt. No. 116] at 9:3-15. But Defendants ignore the *repeated direct quotes* from Cuadra's investor presentations in the Real USFL's opening brief and Amended Complaint. *See e.g.*, Pl's Mot. at 2, 6, and 16 (citing USPTO record). The Amended Complaint even includes *pictures* of the presentations from the USPTO records in which Cuadra falsely claimed that, among other things, his league had "Hall of Fame players and coaches."[4] These presentations—and Fox's continued attempts to impersonate the original USFL—prove that Cuadra lied to the USPTO, and that his marks (and Defendants') are invalid.

**5. Success on Plaintiff's False Advertising and False Association Claims Is a Certainty:** In the Ninth Circuit, trademark infringement and claims for false advertising and association are "distinct and require the application of separate tests." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014). A "district court abuse[s] its discretion … [if] it d[oes] not separately consider" those claims. *Id*. Defendants, citing a *Fifth Circuit* case, argue that all Plaintiff's Lanham Act claims rise or fall with trademark ownership. Defs.' Opp. at 17. But trademark ownership is not an element of these claims. Even if controlling precedent were not to the contrary, Defendants' case doesn't support their argument. The Lanham Act prohibits not only trademark infringement, but also "misrepresent[ing] the nature… of … [one's] commercial activities." 15 U.S.C. § 1125(a). In Defendants' case, *Exxon Corp. v. Humble Expl. Co.*, 695 F.2d 96, 103 (5th Cir. 1983), "the only basis for … [the plaintiff's second Lanham Act claim] was the use … of the mark[.]" Here, Defendants haven't just used the USFL marks; they have misrepresented the nature of their commercial activities

---

[4] Am. Compl. ¶ 38 (citing Reg. No. 4808689 file history Specimen (Mar. 24, 2011) and Response to Office Action (May 16, 2012) (Dillman Dec. Ex. 4 at 125, 161)).

by holding themselves out as a historic business with which they have no association. *AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115 (9th Cir. 2018). That is an entirely independent claim.

**6.** For example, less than two weeks ago, *after* Plaintiff filed its renewed motion, Brian Kilmeade, the host of Fox News' morning show, told his audience that "Herschel Walker and Doug Flutie and Jim Kelly and Steve Young" played in Fox's league and that "*these **same teams** are back.*" *Supra* note 2. He later added that the teams "*all have a history **they're looking to reclaim***." *Id.* A November 22, 2021 Fox News article said that Fox had rights to the "***USFL franchises from the mid-1980s***." Dillman Decl. [Dkt. No. 83], Ex. 26. During Fox's announcement that it would be using the original USFL team names, Fox's announcer said "I think we had a former President [*i.e.*, Donald Trump] that was part of" Fox's New Jersey Generals. Pl.'s Mot. at 9, n.3. The day it announced its league, Fox posted its video of Doug Flutie reminiscing about "***our*** days back in **the** USFL" superimposed with a banner saying "**THE** USFL IS BACK!", the obvious implication being that Fox's USFL was *the* USFL in which Mr. Flutie played. Am. Compl. at ¶¶ 50-51, n.19 (capitalization in original, emphasis added). Fox's press release likewise announced "the ***return*** of this innovative and ***iconic*** league." Dillman Decl., Ex. 8 (emphasis added). All of these statements are literally false. Fox does not own "the same teams" "from the mid-1980s." Its phony league is not the "iconic league." And its phony teams have no "history" at all, let alone a history with "Steve Young" or "a former President."

**7.** Defendants' use of the USFL marks exacerbates their false statements. Indeed, Fox makes only token efforts to disassociate itself from the original USFL. For example, on Fox's online store for USFL merchandise, the only indication that Fox's goods don't come from the original league is a small banner that says "Welcome to the New United States Football League Shop." *See* Byrd Decl., Ex. 2 at 1. A reasonable consumer would assume that the *shop* is new, but the **league** is the original, because *none* of the products indicate that they are from a "new" USFL. *Id.*

8. Defendants' post-hoc rationalization that they are just "bringing back" the USFL "brand" is implausible. It certainly can't explain their repeated and highly specific—but utterly false—claims about the origins of their league. Even if statements about the "same *teams*" or "iconic *league*" could be interpreted as being about a "brand," rather than the original league, Defendants' argument fails. Neither consumers nor courts recognize a distinction between a "known brand" and the organization using it. Rather, consumers assume "some connection" between the two. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 155 (9th Cir. 1963). "When a newcomer takes [a 'known brand'] … and makes a use of it on [its own] … product … confusion … is likely to result." *Id.* at 159.

9. Finally, there is no merit to Defendants' argument that, because it does not compete with Fox's league, the Real USFL lacks standing to bring a false advertising or false association claim. Defendants cite only cases that pre-date the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014), which held that "*competition is not required.*" *Id.* (emphasis added). Even if competition were required, Mr. Bernstein threatened to squash American Classics, *because* it was competing with Defendants. Defendants' false claims to be the USFL are *the reason* the Real USFL doesn't *currently* offer any competing goods or services. A "competitor who is forced out of business by a defendant's false advertising" is the paradigmatic false advertising plaintiff. *Id.* at 134. The Real USFL can sell its merchandise again only if Defendants are enjoined.

10. **The Real USFL Has Suffered Irreparable Injury:** Defendants do not dispute that the Real USFL members *are* the original USFL owners and had been selling USFL merchandise, organizing USFL reunions, and conducting other activities to preserve the league's legacy for decades. Defendants' threats and claims to be the original USFL have forced a halt to all of these activities. Moreover, Defendants are devaluing and tarnishing the USFL legacy by turning it into little more than a minor league with salaries less than the NFL practice squads. The original

USFL retained top-talent who became Hall of Fame players by offering contracts for millions of dollars. Supp. Argovitz Decl., ¶¶ 2-3. Fox's league pays its players $45,000, which won't attract NFL-level talent. *Id*. at ¶ 4, Exs. B-C. The average NFL salary is well over 60 times greater. *Id*. at ¶¶ 5-6, Exs. D-E. In short, original USFL players are *literally and figuratively* in a totally different league than Defendants'. Nevertheless, Defendants contend that, because they purportedly can compensate the Real USFL for lost t-shirt sales, they need not be enjoined from appropriating the USFL's identity. That is not how the law works.

**11.** The purpose of the Lanham Act is the "prevention of confusion, particularly as it affects the public in truth and accuracy." *Greater Los Angeles Softball Ass'n v. Ryan*, No. CV1704404JFWPJWX, 2017 WL 8292779, at *8 (C.D. Cal. Sept. 21, 2017) (Walter, J.). "[T]ruth and accuracy" are not served by letting Defendants claim to be the original USFL. *Id*. Even if Defendants think they can better monetize the USFL brand, they have no right to take it. No one has a right to someone else's property because they think they would put it to better use. Congress wrote the presumption of irreparable harm into the Lanham Act because "the damages occasioned by trademark infringement are by their very nature irreparable[.]" H.R. REP. NO. 116-645, pt. D.1., at 17 (2020). In Congress' view "evidence … demonstrating consumer confusion or loss of control over the brand" is enough to merit an injunction. *Id.* at 19. Here there is both. Defendants claim the right to stop the Real USFL from using its members' marks, so that Fox can use them. *Supra* ¶¶ 4-5, 9. Plaintiff's loss of control over the USFL brand is complete. Not surprisingly, consumer confusion abounds. Pl.'s Mot. at 8; Dillman Decl. at Exs. 9-10.

**12.** Finally, a strong showing on the likelihood of success on the merits raises a presumption of irreparable harm. *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F.Supp.2d 1206, 1210 (C.D. Cal. 1998). Here, there is a near certainty of liability, because, among other things, Defendants have publicly and repeatedly claimed to *be* the original USFL. *Supra* ¶¶ 6-7; Pl.'s Mot. at 7-8. Defendants have no plausible basis

for claiming the Team Marks, Pl.'s Mot. at 14-15, and Defendants don't seriously dispute that their League Mark registrations were obtained through fraud. *Supra* ¶ 4.

**13. Defendants' Delay Argument Is Meritless:** Alleged delay in seeking preliminary relief "is but a single factor … in evaluating irreparable injury; courts are 'loath to withhold relief solely on that ground.'" *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (quoting *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984)). Deferring litigation even for a "full year" is appropriate when pursuing "good faith settlement negotiations." *Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1029 n.4 (C.D. Cal. 2011); *Vans, Inc. v. Walmart, Inc.*, No. 8:21-cv-01876-DOC-KES, slip op. at 23-24 (C.D. Cal. Mar. 31. 2022) (granting preliminary injunction despite the plaintiffs' eight-month "delay") (Byrd Decl., Ex. 5). The "delay" Defendants claim is no basis to withhold relief here.

**14.** First, Defendants' "delay" arguments use the wrong reference point. Mr. Bernstein's December 23, 2021, demands and the shutting down of American Classics' sales are what occasioned this suit. Before Fox's Christmas 2021 threats, the Real USFL's members were free to continue using the marks they created while attempting to amicably resolve this dispute. After Defendants threatened litigation against American Classics and the Real USFL members personally for using the marks they created, the former owners retained litigation counsel and, notwithstanding the Omicron surge, filed suit two months later. There was no delay.

**15.** Second, delay is "not particularly probative in the context of ongoing, worsening injuries." *Arc of California*, 757 F.3d at 990. True, the Real USFL became aware of Fox's league shortly after it was announced, but Defendants didn't announce their the team names and logos—or even the league's schedule—for another *five to seven months*, on November 22, 2021. Dillman Decl., at Ex. 26.

**16.** Moreover, even after the team name announcement, avoiding litigation seemed possible. When Mr. Strauss contacted Ms. Jordan, shortly after the team name announcement, she responded that the former USFL owner's involvement would be

a "good idea." Strauss Decl. [Dkt. No. 80], at ¶ 3. Although Ms. Jordan does not recall that statement, she does not deny making it. Jordan Decl. [Dkt. No. 105], at ¶ 7. Indeed, she recalls the conversation with Mr. Strauss as "friendly," and admits to suggesting a meeting with her client. *See id.* at ¶ 6. Thus, at least until December 23, 2021, when Fox escalated by threatening American Classics, the Real USFL's members believed that a solution without litigation was possible.

17. Finally, the near certainty of success on the merits outweighs any delay. *Supra* ¶¶ 6-7, 12; Pl.'s Mot. at 7-8; *See Guess?, Inc. v. Tres Hermanos*, 993 F.Supp. 1277, 1286 (C.D. Cal. 1997) ("Given the strength of Plaintiff's claim… denial on [delay] alone would be excessive[].").

18. **No One Is Harmed by Making Defendants Use their Own Name:** The "requested injunction does not preclude [Defendants] from organizing a sporting event," selling athletic apparel, or affect any other part of Defendants' league, ***except the name***. *Greater Los Angeles Softball Ass'n*, 2017 WL 8292779 at *8. If Defendants used their own names and logos, this whole controversy would end.

19. Even though Plaintiff is *not* asking the Court to enjoin Defendants' league, Defendants' declarants spend dozens of pages describing purported harm if that occurs. *See generally* [Dkt. Nos. 103, 104, 106-111]. But on the difficulty of using their own name—what the Plaintiff actually requests—Defendants' declarant James Hale, a *finance* executive, spends only two conclusory paragraphs. He avers that it would be "extraordinarily difficult" to obtain non-USFL "equipment" and "signage". Hale Decl. [Dkt. No. 111], at ¶¶ 23, 26. The only explanation Mr. Hale offers for these "extraordinar[y] difficult[ies]" is a generic reference to "supply chain issues plaguing the global economy." *Id.* at ¶ 23.

20. Mr. Hale fails to address numerous options for Defendants to continue their league under their own name. For example, Mr. Hale does not say whether he has inquired with any of Defendants' suppliers about their ability to replace or rebrand equipment. Nor does Mr. Hale say whether he has inquired with competing suppliers.

7
REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

With no basis in fact, Mr. Hale simply assumes that nothing is available from *any* supplier *indefinitely*, because of "global" "supply chain issues." *Id.* Finally, Mr. Hale does not explain why *all* of the equipment and signage he lists is necessary to avert the purported harms. For example, Mr. Hale suggests that Defendants *need* branded "*practice* jerseys, footballs, sideline gear, coaches' gear, hats, ball bags, ball boys' gear, chain crew gear, chain sets, down markers, [and] pylons." *Id.* at ¶ 23 (emphasis added). Little, if any, of that is necessary or would even be noticed by the fans if it were generic rather than branded. If Defendants believe that they can only start their league with warehouses full of branded equipment, their extravagance, not the requested injunction, will be the source of any harm.

21. "[S]upply chain issues" also can't plausibly stand in the way of Defendants designing new logos or graphics for their broadcasts. Nor do Defendants explain why the current graphics and "player biographies" can't be reused with new team names and logos inserted. *See* Miller Decl., at ¶¶ 8-11.

22. In all events, Defendants' worries about "global" "supply chain issues" are unfounded. The Real USFL has identified a supplier that can meet Defendants' needs for branded football equipment immediately. Grooms Decl., at ¶¶ 1, 4-7. At a minimum, the Court should order Fox to *delay* the start of the league or cease using the Real USFL's marks as soon as new equipment becomes available.

23. Finally, even if Fox's league couldn't proceed, the injunction should still issue. First, many of the claimed harms are to Fox's business partners who would be infringing the marks and thus liable in their own right. For example, NBC's broadcasts will be infringing no less than Fox's broadcasts. Defendants' manufacturers of USFL branded equipment and signage are likewise infringers.

24. Furthermore, any harm to innocent third parties would flow from Fox breaching its contracts with them if it elected to shut down its league. Presumably, Fox would pay them appropriate compensation if it is enjoined and chooses not to proceed under its own name. Defendants' "losses due to contractual obligations"

don't enter into the balance of hardships analysis. *Greater Los Angeles Softball Ass'n, 2017 WL 8292779, at \*8*. The same goes for persons who may lose employment opportunities. Even if an injunction may cause some people to "lose their employment, it is Defendants who brought on those risks" and Defendants should compensate them accordingly. *Wetzel's Pretzels*, 797 F. Supp. 2d at 1029.

25. **Defendants Concede that No Bond Is Necessary:** Defendants' claim of injury is further undermined by their failure to request a bond. Since Defendants don't request a bond, the Court should not require one. *Wood v. County of Alameda*, No. C 94 1557 TEH, 1995 WL 705139, at \*17 (N.D. Cal., Nov. 17, 1995).

26. **The American Classics Sales Were a Trademark Use:** Defendants' claim that American Classics' sales were not a trademark use is wrong. *First*, Defendants' argument is inconsistent with their admission that the USFL is a "known brand." The cases dealing with logos of "known brands" on t-shirts all hold that the logos are source identifying. *See* Pl. Mot. at 15 (citing cases involving Macy's and Mork & Mindy); *see also In Re Paramount Pictures Corp., 217 U.S.P.Q. (BNA) ¶ 292 (T.T.A.B. Mar. 1, 1983) (Star Trek)*. Even when a brand is abandoned, consumer perceptions don't change. Indeed, courts reject the argument that "abandonment … inform[s] … whether a consumer would view the disputed marks purely as ornamental rather than also source-identifying." *Macy's Inc. v. Strategic Marks, LLC, No. 11-CV-06198-EMC, 2016 WL 374147, at \*5 (N.D. Cal. Feb. 1, 2016)*. Thus, even if the USFL team marks had been abandoned—which they weren't—consumers would still view the team logos on American Classics' shirts as source identifying, because they were a "known brand." By contrast, Defendants' t-shirt case, *LTTB LLC v. Redbubble, Inc.*, 840 F. App'x 148, 149 (9th Cir. 2021), dealt with a generic pun that was not associated with any "known brand." *Id.* at 151, n.2. Any American consumer would assume that a t-shirt with a giant swoosh came from Nike. The same is not true of unfamiliar text.

27. *Second*, Defendants' argument is disingenuous. The basis for the cease

and desist letter to American Classics was that consumers perceived the American Classics logos as identifying *Defendants* as the source. Brown Decl., Ex. F. Only after Defendants realized that American Classics' logos pre-date Fox's logo registrations did they take the position that consumers would see them as purely ornamental.

28. *Third*, if logos on the front of shirts were not a trademark use, Defendants' own evidence of use for their 2011 USFL marks would be insufficient, providing another reason why their marks are invalid. *See* Dillman Ex. 4 at 131. Defendants' current sales of USFL apparel also would not qualify as a trademark use. *See Id.*, Ex. 29. Indeed, American Classics' shirts have a *stronger* claim to trademark use than Defendants' shirts, because American Classics shirts included a "TM" by the logos, as its contract expressly required. Supp. Brown Decl., at ¶¶ 3-5. Neither Defendants' 2011 specimens, nor their shirts sold today include a "TM." Byrd Decl., Exs. 3-4.

29. **Defendants' Trademark Abandonment Defense Fails:** Abandonment is a disfavored defense on which Defendants bear the burden of proof by clear and convincing evidence. McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.). "[E]ven a single instance of use" defeats abandonment. *San Diego County Credit Union v. Citizens Equity First Credit Union*, 541 F.Supp.3d 1110, 1126 (S.D. Cal. 2021). Moreover, the dissolution of the original USFL entity is irrelevant. Even when a "corporation was abandoned" its former owners retain the right to use its trademarks and goodwill. *Int'l Elec. Co. v. Int'l Elec. Fence Co.*, 181 F.2d 322, 323 (9th Cir. 1950). For example, in *Kingsmen v. K-Tel Int'l Ltd.*, the court held that a band's members had "no more abandoned their right to protect the name of [their band] … than have The Beatles." 557 F. Supp. 178, 183 (S.D.N.Y. 1983). Here, Defendants cannot meet their burden of proof because they do not dispute that, even decades after the original USFL ceased play, the former owners continued to use the marks. For example, just as in *Kingsmen*, Mr. Ehrhart continued to receive licensing royalties on behalf of the league and people *unaffiliated with the league* continued to come to him as the USFL's representative for permission to use the league's marks.

**30. Defendants' Trademark Abandonment Defense Is Irrelevant:** Even if Defendants could prove temporary abandonment, it wouldn't matter. After abandonment, "resumed use … establish[es] a second priority date for rights to the trademark." *General Cigar Co., Inc. v. G.D.M. Inc.*, 988 F.Supp. 647, 659 (S.D.N.Y. 1997) (internal citation omitted). At a minimum, the American Classics license "establish[ed] a second priority date" prior to Fox's. *See id.* Moreover, Defendants' argument that Mr. Ehrhart lacked authority to sign the American Classics license is also irrelevant. *Id.* Mr. Ehrhart had been elected by his fellow owners to represent the USFL, but even as Defendants admit, if the marks were abandoned, they were "free for *anyone* to adopt"—including Mr. Ehrhart. Defs.' Opp. at 10 (emphasis added).

**31. Defendants Are Liable under *Peter Luger*:** Defendants dismiss *Peter Luger Inc. v. Silver Star Meats Inc.*, 2002 WL 1870066 (W.D. Pa. May 17, 2002), as distinguishable because the marks in *Peter Luger* were assigned to an operating company prior to the alleged abandonment, whereas the original USFL ceased play and (according to Defendants) abandoned its marks. *See* Defs.' Opp. at 10-11. This is a distinction without a difference. The Lanham Act bars deception regarding the nature of "commercial activities." 15 U.S.C. § 1125(a). Consumers are still deceived and the Real USFL is harmed by Defendants' actions.

**32. Defendants' Naked Licensing Theory Is Irrelevant:** Defendants claim that the agreements Mr. Ehrhart entered into with Mr. Dunek for his films are so-called "naked" licenses, because they lack express quality control provisions. Defs.' Opp. at 15. Even if the Dunek agreements were naked licenses—which they weren't—the Real USFL still has priority over Fox. Both Dunek agreements were signed *before* the American Classics license which included express quality control provisions, reestablishing the Real USFL's rights, with priority before Fox's. *Supra* ¶ 29; Brown Decl., Ex. A.

**33. Defendants' Naked Licensing Theory Fails:** "[T]he proponent of a naked license theory faces a stringent standard of proof," which Defendants can't

possibly satisfy. *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002) (citation omitted). Express quality control provisions are not required. See *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir. 2013). Control is adequate "where 'the particular circumstances of the licensing arrangement' suggest that the public will not be deceived." *Hokto*, 738 F.3d at 1098.

34. The controls exercised by Mr. Ehrhart were more than sufficient for a film that hasn't been produced yet. Mr. Ehrhart has been a critical resource in "getting the project[s] off the ground," on whom Mr. Dunek has relied heavily for connections with former USFL players and the owners of the USFL film archives. Dunek Decl., Ex. A. Mr. Dunek also provided Mr. Ehrhart updates on the status of the film and expressly requested that Mr. Ehrhart give feedback on the trailer. *Id.*

35. **The Real USFL's Reunions Were Trademark Uses:** There is no dispute that the Houston Gamblers reunions were commercial uses of the marks. Pl.'s Mot. at 4-5. These uses pre-date Defendants' fraudulent 2011 registration application. Defendants seem to argue that sports reunions are *per se* not trademark uses. That is inconsistent with Defendants' own numerous applications for trademarks for organizing events. *See e.g.*, Dillman Decl., Ex. 4 at 1. Moreover, the district court opinion on which Defendants rely for this anomalous rule of law was vacated by the court that issued it and the Ninth Circuit has called it a "poor authority." *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 411 (9th Cir. 1996).

36. **The Real USFL's Authorized History Was a Trademark Use:** Paul Reeths' book made more than nominative use of the USFL marks because it featured the USFL logo prominently on the cover and included a forward by Mr. Ehrhart endorsing the book. *See e.g.*, *Toho*, 33 F.Supp.2d at 1211 (prominent display of mark is not nominative).

## CONCLUSION

For the foregoing reasons, the Real USFL respectfully requests that the Court grant its motion for a preliminary injunction.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: April 4, 2022 | **MCKOOL SMITH HENNIGAN, P.C.** |
| 3 | | By: */s/ Kirk D. Dillman* |
| 4 | | Kirk D. Dillman |
| 5 | | *Attorneys for Plaintiff The Real USFL, LLC* |