David H. Bernstein (State Bar No. 336551)
  dhbernstein@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone:  (212) 909-6696. Fax: (212) 521-7696

Michael Schaper (admitted *pro hac vice*)
 mschaper@debevoise.com
Jared I. Kagan (admitted *pro hac vice*)
 jikagan@debevoise.com
Matthew J. Petrozziello (admitted *pro hac vice*)
 mjpetrozziello@debevoise.com
Marissa MacAneney (admitted *pro hac vice*)
mpmacaneney@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, NY 10022
Telephone:  (212) 909-6000.
Fax: (212) 909-6836

Keith J. Wesley (State Bar No. 229276)
  kwesley@egcfirm.com
Matthew L. Venezia (State Bar No. 313812)
  mvenezia@egcfirm.com
**ELLIS GEORGE CIPOLLONE O'BRIEN ANNAGUEY LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone:  (310) 274-7100  Fax:      (310) 275-5697

Patrick F. Philbin (admitted *pro hac vice*)
  pphilbin@egcfirm.com
Kyle T. West (admitted *pro hac vice*)
  kwest@ecgfirm.com
**ELLIS GEORGE CIPOLLONE O'BRIEN ANNAGUEY LLP**
1155 F Street, NW, Suite 750
Washington, D.C.  20004
Telephone:  (202) 249-6900
Fax:  (202) 249.6899

*Attorneys for Defendants USFL Enterprises, LLC, The Spring League, LLC, Fox Corporation, Fox Sports 1, LLC, Fox Sports 2, LLC, Fox Sports Holdings, LLC, Fox Sports Productions, LLC, Foxcorp Holdings, LLC, Fox Media LLC, and Fox Sports Interactive Media, LLC.*

Case No. 22-cv-01350-JFW-MAR

[PROPOSED] STATEMENT OF DECISION

1              UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

| | |
|---|---|
| 4   THE REAL USFL, LLC, a New York limited liability company, | CASE NO. 22-cv-01350-JFW-MAR |
| 6            Plaintiff, | **[PROPOSED] STATEMENT OF DECISION DENYING PLAINTIIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| 7       vs. | |
| 8 | |
| 9   FOX SPORTS, INC, a Delaware corporation; THE SPRING LEAGUE, LLC, a Delaware limited liability company; USFL ENTERPRISES, LLC, a Delaware limited liability company; FOX CORPORATION, a Delaware corporation; FOX SPORTS 1, LLC, a Delaware limited liability company; FOX SPORTS 2, LLC a Delaware limited liability company; FOX SPORTS HOLDINGS, LLC a Delaware limited liability company; FOX SPORTS PRODUCTIONS, LLC a Delaware limited liability company; FOXCORP HOLDINGS, LLC a Delaware limited liability company; FOX MEDIA LLC, a Delaware limited liability company; and FOX SPORTS INTERACTIVE MEDIA, LLC a Delaware limited liability company, | Hearing Date: April 18, 2022<br>Hon. Judge: John F. Walter |
|           Defendants. | |

On March 17, 2022, Plaintiff The Real USFL, LLC ("Plaintiff") filed an Amended Motion for Preliminary Injunction ("Mot."). Dkt. 71. On March 28, 2022, Defendants USFL Enterprises, LLC ("USFL Enterprises"), The Spring League, LLC ("TSL"), Fox Corporation, Fox Sports 1, LLC, Fox Sports 2, LLC, Fox Sports Holdings, LLC, Fox Sports Productions, LLC, Foxcorp Holdings, LLC, Fox Media LLC, and Fox Sports Interactive Media, LLC (together, "Defendants"), filed their Opposition ("Opp."). Dkt. 116. Plaintiff filed its Reply on April 6, 2022 (Reply"). Dkt. 119. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.   Plaintiff The Real USFL, LLC

Plaintiff is a limited liability company organized in February 2022 under the laws of New York. Wesley Decl., Ex. 12. Days after Plaintiff was organized, several individuals purported to assign to Plaintiff trademark rights in "United States Football League," which was used in connection with a professional football league that ceased play and operations in 1986 (the "Old League") and in the names of teams that played in the Old League (the "Old Teams"). Dillman Decl., Exs. 16–25; Mot. at 10–11; Ehrhart Decl., ¶ 4; Woods Decl., ¶ 6. By 1992, the United States Patent and Trademark Office ("USPTO") cancelled the hundreds of trademark registrations for the Old League and Old Team names and logos (the "Association Marks"), which were owned by a New York unincorporated association that operated the Old League (the "Association"). Wesley Decl., ¶ 16, Ex. 11.

### 2.   Defendants

TSL owns a registered trademark in "USFL" for football entertainment and another registered trademark in "USFL" for apparel. Wesley Decl., ¶ 8, Exs. 3, 4. TSL's trademark registrations date back to their application date of March 2011. *Id.*; 15 U.S.C. § 1057(c). The USFL registration for apparel is "incontestable," which means that the registration is conclusive evidence of its validity and TSL's ownership.

1  [15 U.S.C. § 1115(b)](). TSL also owns trademark applications for the USFL team names
2  and logos, some of which have already been approved by the USPTO. Wesley Decl.,
3  ¶¶ 7, 9, Exs. 1, 2. On October 19, 2021, TSL granted an exclusive license to USFL
4  Enterprises to use its trademarks. Woods Decl., ¶ 10, Ex. 5.

5  　　　　　　　　　3.　　The 2022 USFL Season

6  　　　　On June 3, 2021, USFL Enterprises announced the launch of a professional
7  spring football league under the name United States Football League, or USFL (the
8  "New League"). Dillman Decl., Ex. 8. The June 3 press release posted on Fox Sports'
9  website characterized the New League's launch as a "return" and "relaunch" of the
10  USFL. *Id.* The press release also stated: "Initially launched in 1983, the USFL
11  originally was an upstart spring football league . . . . When relaunched next year, the
12  new USFL retains rights to key original team names." *Id.*

13  　　　　In the days and weeks that followed, Plaintiff's principals, notably Steven
14  Ehrhart, voiced objections to the New League in newspapers and to Defendants,
15  claiming that he and others affiliated with the Old League owned the Association
16  Marks. Ehrhart Decl., Ex. N; Woods Decl., Ex. 8; *see generally*, Mot. at 8–9; Ehrhart
17  Decl., ¶¶ 1–19; Dillman Decl., Exs. 13, 14, 15; Bernstein Decl., ¶¶ 6–12, Exs. 1–5;
18  Jordan Decl., ¶¶ 6–10; Woods Decl., ¶¶ 16–19. Defendants and their representatives
19  requested additional information about Mr. Ehrhart's purported trademark rights, but
20  Mr. Ehrhart did not provide the requested information and the parties did not
21  meaningfully engage. Bernstein Decl., ¶¶ 6–12, Ex. 1–5; Woods Decl., ¶¶ 16–19.
22  Sometime after Plaintiff's principals contacted Defendants, the June 3 Fox Sports
23  press release was revised to remove references to the "relaunch" of the USFL. Mot. at
24  8–9 n.2. The revised press release contained the following statement: "Although the
25  new USFL owns the USFL trademark and various team names, including the team
26  names that were abandoned after the 1980s USFL league shut down, the new USFL is
27  not associated or affiliated with that league or its owners." *Id.*
28  　　　　In the interim, USFL Enterprises invested "tens of millions" of dollars to

launch the New League, and secured agreements with national broadcasters, head coaches, hundreds of players, referees, and staff. Hale Decl., ¶¶ 11, 16, 21. The New League began its regular season on April 16, 2022, with several games already held during its inaugural week. *Id.*, ¶ 16, Ex. 6.

### 4.   Present Action

On February 28, 2022, Plaintiff filed its Complaint. Dkt. 1. On March 3, 2022, Plaintiff filed a Motion for a Preliminary Injunction, Dkt. 18; on March 17, 2022, Plaintiff filed an Amended Complaint and an Amended Motion. Dkt. 67, 71. Plaintiff noticed its Motion for April 18, 2022. Dkt. 71. Plaintiff alleges the following claims for relief: (1) Trademark Infringement (Lanham Act), (2) False Advertising (Lanham Act), (3) False Association (Lanham Act), (4) Unfair Competition, (5) False Advertising (Cal. Bus. & Prof. Code §§ 17500), (6) Trademark Infringement (California law), (7) Tortious Interference with Contract and/or Business Relations, (8) Trademark Cancellation, and (9) Declaratory Judgment. Dkt. 67.

## LEGAL STANDARD

An injunction is "an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 23 (2008). "A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

## DISCUSSION

Having considered all the evidence and arguments of the parties, the Court concludes that Plaintiff is not entitled to a preliminary injunction.

### A.   Likelihood of Success on the Merits

#### 1.   Plaintiff's Alleged Trademark Rights

To succeed on its claims for trademark infringement, Plaintiff must

demonstrate "that it owns a valid mark, that the mark was used without its consent, and that such unauthorized use is likely to cause confusion, mistake, or deception," *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009). Plaintiff contends it is the successor to the Association Marks, or, in the alternative, began using the Association Marks prior to Defendants' use, and that the New League infringes Plaintiff's trademark rights and deceives consumers into believing that the New League is affiliated with the Old League and Old Teams. Mot. at 11–25.

Plaintiff, however, has not submitted evidence demonstrating that it owns any trademark rights that would entitle it to relief. The evidence shows, and Plaintiff does not dispute, that the ***Association*** owned the Association Marks that Plaintiff now seeks to enforce. Wesley Decl., ¶ 16, Ex. 11. The Association Marks, however, were abandoned in 1986 when the Association stopped operating the Old League and stopped using the Association Marks, *see* 15 U.S.C. § 1127, and Plaintiff has not provided any evidence that the Association transferred its trademark rights before they were abandoned. In short, none of the evidence Plaintiff submits traces ownership of the abandoned Association Marks from the Association to Plaintiff or to its principals.

That does not end the Court's inquiry. Even if Plaintiff's principals did not formally acquire the Association Marks before they were abandoned, Plaintiff's principals could have independently established common law rights in the abandoned marks through new, continuous use in commerce of the marks. 15 U.S.C. § 1127 (trademark rights may be established through use in commerce). 3 McCarthy on Trademarks and Unfair Competition ("McCarthy") at § 17:1 ("Once held abandoned, a mark falls into the public domain and is free for all to use."); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007) ("Once abandoned, a mark returns to the public domain and may, in principle, be appropriated for use by other actors in the marketplace, in accordance with the basic rules of trademark priority."). The evidence

1   does not, however, demonstrate that Plaintiff's principals established common law

2   trademark rights that they could transfer to Plaintiff.

3                    2.        Plaintiff's Alleged Uses

4        To establish common law rights, Plaintiff is required to show continuous use in

5   commerce. *See* McCarthy § 16:9 ("To establish ownership of a mark, the prior user

6   must establish not only that at some date in the past it used the mark, but that such use

7   has continued to the present. Such a continuous use implies something more than

8   mere sporadic or de minimus sales."). Plaintiff identifies various "uses" of the

9   Association Marks by its principals, including (i) three pre-2011 media licenses, (ii)

10  pre-2011 "reunions", and (iii) modest apparel sales stemming from a July 2011

11  license. Mot. at 3–6. None of these "uses" created new trademark rights.

12       Plaintiff has produced no evidence showing that the media licenses and

13  reunions are anything more than sporadic, non-commercial uses that are insufficient

14  to establish trademark rights. *See Major League Baseball Props., Inc. v. Sed Non Olet*

15  *Denarius Ltd.*, 817 F. Supp. 1103, 1115, 1128–29 (S.D.N.Y. 1993) (old timer's games

16  did not constitute use in commerce for former team name), *vacated by settlement*, 859

17  F. Supp. 80, 80–81 (S.D.N.Y. 1994); *Silverman v. CBS Inc.*, 870 F.2d 40, 47–48 (2d

18  Cir. 1989) (sporadic licensing for documentary and educational programs were

19  "essentially non-commercial uses" that could not "rebut abandonment").

20       The film for which Plaintiff's principals allegedly licensed the Association

21  Marks (Mot. at 5–6) does not constitute a use in commerce because it was never

22  released. *Willpat Prods., Inc. v. Sigma III Corp.*, 227 F. Supp. 354, 355–57 (S.D.N.Y.

23  1964) (pre-release publicity insufficient to create trademark rights). And two of the

24  alleged licenses lacked quality control provisions, Ehrhart Decl., Ex. G, which makes

25  them "naked licenses" that constitute abandonment of any rights that were

26  purportedly licensed. *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516

27  (9th Cir. 2010) (absence of quality control provisions "supports a finding of naked

28  licensing."). Mr. Ehrhart's alleged oversight of the film license is far from the kind of

1  joint quality control mechanisms and monitoring that was found sufficient in *Hokto*
2  *Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir. 2013). Similarly,
3  Mr. Ehrhart's emails about the book, Dunek Decl., Ex. A, are, at best, the type of
4  "occasional[], informal[]" quality control measures deemed insufficient in
5  *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 597–98 (9th Cir.
6  2002).

7         Plaintiff also relies on a July 2011 license provided by Mr. Ehrhart to the
8  clothing company American Classics. Mot. at 4. The parties disagree as to whether
9  American Classics' sale of apparel bearing the names and logos of the Old League
10 and Old Teams established trademark rights.

11        First, Mr. Ehrhart disclaimed any ownership of the marks he was purporting to
12 license by striking a representation that the Licensor was "the owner of the rights
13 being granted to the Licensee." Ehrhart Decl., Ex. H.

14        Moreover, to establish trademark rights through use, the products must
15 "indicate the source of the goods." 15 U.S.C. § 1127. If "customers perceive a design
16 only as pleasing ornamentation, then the design does not serve as a trademark."
17 McCarthy § 3:4. In determining whether use is ornamental or source-identifying, the
18 Court considers factors such as "the size, location, dominance and significance of the
19 alleged mark." *In re Pro-Line Corp.*, 28 U.S.P.Q.2d 1141, 1142 (TTAB 1993).
20 Plaintiff has not demonstrated that American Classics' display of large images of the
21 names and logos of the Old League and Old Teams on apparel was source-identifying
22 rather than primarily ornamental. *In re Greater Anchorage, Inc.*, No. 77561929, 2011
23 WL 810198, at *2 (TTAB Feb. 14, 2011) ("The larger the display relative to the size
24 of the goods, the more likely it is that consumers will not view the ornamental matter
25 as a mark."); *In re Dimitri's Inc.*, 9 U.S.P.Q.2d 1666, 1667 (TTAB 1988) (use of
26 "SUMO" in large lettering on apparel supported finding of ornamental use).

27        Regardless of whether American Classics' use was ornamental, TSL's
28 trademark registration for USFL has priority over American Classics' sale of USFL

1   apparel. Wesley Decl., ¶¶ 7, 10; Ehrhart Decl., Ex. H. Thus, even if American

2   Classics' license could establish trademark rights, Defendants own senior rights in the

3   USFL mark. *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1111 n.3

4   (9th Cir. 2010) (for registered mark, "the date the ITU application was filed becomes

5   the applicant's constructive-use date[, which] gives the applicant priority-of-use over

6   anyone who adopts the mark after the constructive-use date" (citing 15 U.S.C.

7   § 1057(c)). Plaintiff's reliance on *Kingsmen v. K-Tel Int'l Ltd.*, 557 F. Supp. 178, 183

8   (S.D.N.Y. 1983), a case in which the plaintiff continuously used registered marks to

9   collect royalties before the defendants' use, is therefore inapposite. Reply at 10.

10      In any event, the relief Plaintiff seeks—an injunction against the New League

11   from using the USFL and team trademark rights it has registered and applied for in

12   connection with its professional spring football league (Dkt. 71)—goes well beyond

13   the scope of Plaintiff's purported rights and use in connection with apparel.

14      Plaintiff relies on *AECOM Energy & Constr., Inc. v. Ripley*, No. 17-cv-05398,

15   2017 WL 4326373, at *1 (C.D. Cal. Sept. 28, 2017), *aff'd sub nom.*, *AECOM Energy*

16   *& Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115 (9th Cir. 2018)

17   "*AECOM*"), and *Peter Luger v. Silver Star Meats Inc.*, No. CIV.A.01-1557, 2002 WL

18   1870066, at *2 (W.D. Pa. May 17, 2002) ("*Peter Luger*"), to support its arguments

19   that Defendants misappropriated the Association Marks and that an injunction is

20   warranted even if the Association Marks were abandoned. Mot. at 12–13, 22–23.

21   Those cases are inapplicable.

22      The plaintiff in *AECOM* purchased a defunct entity and its trademark rights.

23   2017 WL 4326373, at *1. The plaintiff continuously used the marks in promotional

24   materials and therefore did not abandon the marks. *Id.* at *4. The court held that the

25   defendant intentionally sought to steal the name and goodwill the plaintiff had

26   purchased and steal the plaintiff's business. *Id.* at *6–7. Similarly, in *Peter Luger*, the

27   plaintiff purchased all of the trademarks and goodwill of a meat company. 2002 WL

28   1870066, at *12, *15. Because the plaintiff continuously used the trademark rights in

1  transitioning to a new brand name and there was "evidence that the brand and trade
2  dress may be reintroduced," the court concluded that the plaintiff had not abandoned
3  its trademark rights. *Id.* at 12–15.

4      Unlike the plaintiffs in *AECOM* and *Peter Luger*, neither Plaintiff nor its
5  principals claim to have purchased the Association Marks from the Association.
6  Although Plaintiff offers statements that "the USFL's [former] owners . . . elected
7  [Mr. Ehrhart] to carry on the USFL's business" (Ehrhart Decl., ¶ 5), Plaintiff provides
8  no evidence that the Association Marks were assigned to Mr. Ehrhart or to any of
9  Plaintiff's principals, such that they in turn could assign those rights to Plaintiff.
10  *Compare Int'l Elec. Co. v. Int'l Elec Fence Co.*, 181 F.2d 322, 323 (9th Cir. 1950)
11  (parties retained trademark rights they jointly owned and continuously used after
12  abandoning corporation), *with Lathigee v. Wynn Operator, LLC*, No. 2:11-CV-1243,
13  2011 WL 6182097, at *1–2 (D. Nev. Dec. 13, 2011) (because party "had no rights to
14  the trademark," it could not transfer those rights).

15      Furthermore, as discussed above, Plaintiff's principals did not continuously use
16  the Association Marks in commerce in a manner sufficient to establish or maintain
17  common law rights. *Compare Greater L.A. Softball Ass'n v. Ryan*, No. CV 17-04404,
18  2017 WL 8292779, at *8 (C.D. Cal. Sept. 21, 2017) (plaintiff submitted
19  "overwhelming evidence" that it "continually used the mark in commerce"), *with Art
20  Attacks Ink, LLC v. MGA Entm't, Inc.*, No. 4CV1035J, 2004 WL 7333800, at *7 (S.D.
21  Cal. Sept. 8, 2004) ("sporadic and inconsistent" use of mark was insufficient to
22  generate trademark rights); *see also Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d
23  402, 444 (E.D. Pa. 2009) (distinguishing *Peter Luger* in case where plaintiff "cease[d]
24  its business activities and its exploitation of the market").

25      3.  Plaintiff's Remaining Claims

26      The Court similarly finds that Plaintiff has failed to establish a likelihood of
27  success on its remaining causes of action. With respect to the claims sounding in false
28  advertising (Claims 2–5), a subsequent adopter of an abandoned mark may be liable

Case No. 22-cv-01350-JFW-MAR

*to a former owner* for use in a misleading or confusing manner. *See* 578539 B.C., Ltd. v. Kortz, No. CV 14-04375, 2014 WL 12572679, at \*9 (C.D. Cal. Oct., 16, 2014) (holding failure to guard against confusion "subjects [the adopter] to liability *to the former owner of the mark*") (quoting Restatement (Third) of Unfair Competition § 30 cmt. a (1995)). But ***Plaintiff*** is not a former owner of any trademarks.

Additionally, Plaintiff has not demonstrated that Defendants have engaged in false or misleading statements. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (false advertising under 15 U.S.C. § 1125(a)); *Marco Bicego S.P.A. v. Kantis*, No. 17-cv-00927, 2017 WL 2651985, at \*3 (N.D. Cal. June 20, 2017) (false association under 15 U.S.C. § 1125(a)); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1149 (N.D. Cal. 2010) (prohibited advertising under California's Unfair Competition Law); *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1091 (C.D. Cal. 2015) (false advertising under California's False Advertising Law). Defendants are promoting a "return" of the USFL brand to which they own trademark rights, not a return of the Old League or Old Teams. Mot. At 8–9; Opp. at 17–18. In addition, Defendants have taken steps to disclaim any affiliation with the Old League or Old Teams. Opp. at 17–19; Hale Decl., ¶ 10. This evidence does not support that Defendants are disseminating falsehoods.

Nor is the Court persuaded that Jamie Cuadra's references to the Old League's "historical legacy" in trademark applications, Reply at 1–2, are likely to carry Plaintiff's "heavy burden of demonstrating that a trademark should be cancelled" on the basis of fraud. *Accredability, LLC v. Accreditsoft*, No. CV 18-5969, 2019 WL 4137409, at \*3 (C.D. Cal. May 19, 2019) (citation omitted). A trademark can only be cancelled if a plaintiff shows either (i) a false representation of fact in the application, (ii) the registrant's knowledge or belief that the representation was false, (iii) intent to induce reliance, (iv) reasonable reliance, and (v) damages, or if the mark is used in a "deliberate and blatant" misrepresentation of the source of the goods. *Cyclone USA, Inc. v. Dealer Servs., LLC*, No. 03–0992, 2007 WL 9662337, at \*25–34 (C.D. Cal.

1  Nov. 8, 2007). Plaintiff's assertions do not establish either of these bases.

2      With respect to its claim for tortious interference (Claim 7), Plaintiff has not

3  identified any *valid* contract because Mr. Ehrhart never owned trademark rights to

4  license in the first place. *See Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 32

5  (N.D. Cal. 2000) (in absence of valid contract, plaintiff could not state tortious

6  interference claim). Nor has Plaintiff identified evidence of a wrongful act committed

7  by Defendants to disrupt prospective business relationships. *Name.Space, Inc. v.*

8  *Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015)

9  ("A tortious interference with prospective economic advantage claim . . . requires that

10  the defendant's conduct be wrongful by some legal measure other than the fact of

11  interference itself.") (citation omitted). Cease and desist letters from Defendants'

12  representatives, *see* Amended Complaint at ¶ 114, do not meet the wrongful act

13  requirement. *Sparrow LLC v. Lora*, No. CV-14-1188, 2014 WL 12573525, at *4

14  (C.D. Cal. Dec. 4, 2014).

15      **B.    Remaining *Winter* Factors**

16          1.    Irreparable Harm

17      Because Plaintiff has failed to demonstrate a likelihood of success on the

18  merits, Plaintiff is not entitled to a rebuttable presumption of irreparable harm. *Icleen*

19  *Entwicklungs-Und Vertiebsanstalt v. Blueair AB*, No. CV 21-2236, 2021 WL

20  6104397, at *12 (C.D. Cal. Oct. 4, 2021). Moreover, the Court "need not consider the

21  remaining preliminary injunction factors" given that Plaintiff has failed to

22  demonstrate a likelihood of success on the merits. *Advertise.com, Inc. v. AOL Advert.,*

23  *Inc.*, 616 F.3d 974, 982 (9th Cir. 2010). The Court, however, also finds that Plaintiff

24  has not met its burden of demonstrating irreparable harm or that the balance of

25  equities and public interest favor an injunction. *See Diversified Silicone Prods. Corp.*

26  *v. Elastapro Silicone Sheeting LLC*, No. CV 20-2010, 2020 WL 4390380, at *3–4

27  (C.D. Cal. May 19, 2020) ("likelihood of irreparable injury is an absolute

28  requirement").

Plaintiff baldly contends that, absent an injunction, it will suffer "loss of control over business reputation and damage to goodwill." Mot. at 24 (quoting *Adidas Am. v. Sketchers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018)). According to Plaintiff, Defendants are "tarnishing the USFL legacy" by failing to retain "top-talent." Reply at 4–5. But Plaintiff has not presented any supporting evidence. Plaintiff was formed just prior to the filing of this lawsuit, and has not presented evidence that it is engaged in any business activity (other than minor, online apparel sales by its principals). Accordingly, there is no evidence that Plaintiff has a business reputation or goodwill that is capable of being harmed, and Plaintiff's arguments to the contrary are speculative. *See Titaness Light Shop, LLC v. Sunlight Supply Inc.*, 585 Fed. App'x 390, 391 (9th Cir. 2014) (vacating injunction where asserted harms to goodwill and reputation were "conclusory and speculative"). Even if the Old League's "legacy" were at risk, Plaintiff presents no evidence that it is the successor to the Old League's rights.

Plaintiff also cites to the loss of its American Classics apparel licensing income, Mot. at 10, 23, and emphasizes that "the shutting down of American Classics' sales are what occasioned this suit." Reply at 6. But the loss of royalty income cannot support a finding of irreparable harm. *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended ... are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (citation omitted); *Cotter v. Desert Palace, Inc.*, 880 F.2d 1142, 1145 (9th Cir. 1989) ("Injuries compensable in monetary damages are 'not normally considered irreparable.'") (citation omitted). American Classics has tracked its royalty payments pursuant to the purported license with Mr. Ehrhart. Bernstein Decl., ¶ 12, Ex. 6. To the extent Plaintiff prevails on its claims, it can be adequately compensated with money damages.

1    Plaintiff's delay between learning of the New League's launch and seeking
2    injunctive relief also weighs heavily against granting a preliminary injunction. *See*
3    *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1080, 1090
4    (C.D. Cal. 1999) (delay in seeking injunctive relief "further demonstrates the lack of
5    any irreparable harm"); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d
6    1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary
7    injunction implies a lack of urgency and irreparable harm."). Pre-litigation discussions
8    do not excuse such a delay. *See* *Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*, No.
9    SACV 11-0313, 2011 WL 2269991, at *3 (C.D. Cal. June 9, 2011) (pre-suit
10   discussions did not justify delay). Unlike in *Wetzel's Pretzels, LLC v. Johnson*, 797 F.
11   Supp. 2d 1020, 1029 n.4 (C.D. Cal. 2011), there is no evidence that the parties were
12   engaged in extensive settlement negotiations.

13   Plaintiff asserts that "there was no delay" because the timing should be
14   measured from Defendants' announcement of team names on November 22, 2021, or
15   Defendants' December 23, 2021 letter to American Classics. Reply at 6. But Plaintiff
16   was aware of the conduct it now alleges to be actionable—USFL Enterprises' launch
17   of the New League and use of "original team names" (Dillman Decl., Ex. 8)—since
18   early June 2021. Ehrhart Decl., ¶ 17. Indeed, Mr. Ehrhart, one of Plaintiff's principals,
19   spoke out publicly against the New League that very week. Ehrhart Decl., Ex. N; Hale
20   Decl., Ex. 1. Plaintiff's awareness of the allegedly infringing activities is the time
21   from which to measure Plaintiff's delay. *See* *Contender Partners, LLC v. Azteca Int'l*
22   *Corp.*, 2008 WL 11334492, at *24 (C.D. Cal. May 19, 2008) (measuring plaintiff's
23   delay from the time plaintiff "first became aware of" allegedly infringing show); *Li v.*
24   *Home Depot USA Inc.*, 2013 WL 12120065, at *3 (C.D. Cal. Jan. 7, 2013) (three-
25   month delay after plaintiff "appear[ed] to have known of" alleged infringement
26   "implies a lack of urgency and irreparable harm."). Plaintiff, however, waited
27   approximately nine months—after the New League hired players and was about to
28   begin playing games—to seek injunctive relief. Woods Decl., ¶¶ 19–20. This delay

1  undermines any claim that Plaintiff faces imminent, irreparable harm.

2              2.    Balance of the Equities

3       The assignment of weight to alleged harms is within this Court's sound

4  discretion. *W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012)

5  (affirming court's discretion in finding harms resulting from injunction outweighed

6  plaintiff's alleged harms). Plaintiff asserts that the equities favor an injunction

7  because Defendants "are not innocent infringers." Mot. at 24. Defendants contend that

8  Plaintiff's nine-month delay and minimal alleged harm, coupled with Defendants'

9  substantial investment, tips the scales against an injunction. Opp. at 21–23.

10      The Court agrees with Defendants. Defendants face a disproportionate harm if a

11  preliminary injunction is entered. Unlike in *Greater L.A. Softball*, Defendants are not

12  seeking to usurp an activity that Plaintiff "has invested significant time, money, and

13  resources to promote and operate" because Plaintiff is not operating any business, let

14  alone a football league. 2017 WL 8292779, at *8. Rather, it is Defendants who

15  invested in acquiring intellectual property rights, contracts with national broadcasting

16  companies, players, stadiums, coaches, ticket and concession vendors, etc. *See* Hale

17  Decl., ¶¶ 11–21. The New League has already launched, has already played its first

18  games, and has already scheduled the rest of its season.

19      Plaintiff's assertion that an injunction would cause only a name change that

20  could be remedied with new jerseys, (Reply at 7–9), is belied by the disruption an

21  injunction would cause. Rather than cause a simple name change, the injunction

22  would effectively stop New League play in the middle of the 2022 football season

23  while Defendants attempt to change the entire identity of the New League and the

24  New League's teams, jeopardizing Defendants' longstanding investments and

25  threatening the viability of the New League itself. Hale Decl., ¶¶ 22–29. Plaintiff's

26  purported ability to outfit the New League players with jerseys, Reply at 1, 8, does not

27  address the need to reproduce footballs, sideline gear, coaches' gear, hats, ball bags,

28  ball boys' gear, chain crew gear, chain sets, down markers, pylons, signage, digital

1  assets, and fan apparel that Defendants spent months and millions of dollars

2  developing and producing. Hale Decl., at ¶¶ 23, 26. At the other end of the spectrum,

3  Plaintiff faces loss of modest royalty income while this matter is litigated. The

4  potential harms therefore weigh against a preliminary injunction.

5      Plaintiff's delay reinforces this conclusion. During the nine months between the

6  date Plaintiff learned of the New League's launch and the filing of this lawsuit, it was,

7  or should have been, apparent that Defendants were investing "tens of millions of

8  dollars" into the New League and its inaugural game. *Id.*, ¶¶ 11, 21. *See Edge Games,*

9  *Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d 1101, 1118 (N.D. Cal. 2010) (finding equities

10 favored defendant where plaintiff delayed seeking injunction while defendant heavily

11 invested in project); *Desert Prot. Council v. U.S.D.I.*, No. 12cv1281, 2012 WL

12 13175866, at *5 (S.D. Cal. Sept. 28, 2012) (plaintiff's delay during defendant's

13 investment weighed against injunction).

14          3.   Public Interest

15     Plaintiff argues that a preliminary injunction would further the public interest

16 because Defendants have engaged in deceptive behavior similar to the defendant in

17 *AECOM*. Mot. at 24–25. As discussed above, Plaintiff has not demonstrated that

18 Defendants engaged in such conduct, which involved defendants who intentionally

19 "t[ook] over the entire [] brand" the plaintiff purchased and passed off prior

20 "accomplishments as [its] own." *AECOM*, 2017 WL 4326373, at *9. And in contrast

21 to the defendant in *AECOM*, Defendants are not primarily competing in the same

22 consumer space because Plaintiff is not actively involved in any football league. *Id.* at

23 *4. *See also Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 155–

24 61 (9th Cir. 1963) (holding that use of trademark by fellow alcohol companies would

25 cause confusion but use for goods and services "unrelated to" plaintiff's use would

26 not). To the extent Plaintiff and Defendants compete for the same consumers, such

27 competition would be limited to modest apparel sales.

28     Moreover, the Court finds that Defendants have identified numerous, concrete

harms that a preliminary injunction would inflict on the public. Defendants submitted several declarations detailing the harm that a preliminary injunction would cause to hundreds of stakeholders, including: (i) business in the Birmingham area, which would lose substantial revenue,[1] (ii) business partners of Defendants, including NBC, Ticketmaster, concession vendors, and apparel distributors[2]; and (iii) players and staff who are counting on the New League for employment.[3] These harms are not simply "losses due to contractual obligations." Reply at 8.

The Court assigns greater weight to the public's interest in promoting job security and local businesses, *see Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1115 (E.D. Cal. 2013) ("public interest in providing economic benefits to [industry] and communities" is "compelling"), and ability to view or attend spring football games, *Regents of U.C.L.A. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 521 (9th Cir. 1984) (recognizing public interest in nationwide broadcast of popular football game), than any alleged confusion with Plaintiff's interests. This calculus is made easier by Defendants' efforts to eliminate any confusion by adding disclaimers to its press statements. Mot. at 9 n.2. When considered against Plaintiff's assertion that certain apparel sales opportunities would be lost, the public interest prong weighs against a preliminary injunction.

For all of the foregoing reason, Plaintiff's Motion for a Preliminary Injunction is denied.

DATED: April _____, 2022

_____
HON. JOHN F. WALTER
UNITED STATES DISTRICT JUDGE

---

[1] Stephens Decl., ¶¶ 8, 13; Waggoner Decl., ¶¶ 15–16; Hallman Decl., ¶¶ 6, 8, 9; Hale Decl., ¶¶ 31–32, 34, 36; Snider Decl., ¶¶ 7–13; McAdory Decl., ¶¶ 6–7.
[2] Declaration of Jon Miller (Mar. 26, 2022) ¶¶ 7–15; Woods Decl., ¶ 19; Hale Decl., ¶¶ 31, 36; Stephens Decl., ¶¶ 5, 9, 12–14; Waggoner Decl., ¶¶ 5–17; Hallman Decl., ¶¶ 5–9; Snider Dec. ¶¶ 7–13; McAdory Decl., ¶¶ 6–11.
[3] McAdory Decl., ¶ 7; Hallman Decl., ¶ 8; Hale Decl., ¶¶ 33–34.

Case No. 22-cv-01350-JFW-MAR
[PROPOSED] STATEMENT OF DECISION